**CIVILLE & TANG, PLLC**
SUITE 200, 330 HERNAN CORTEZ AVENUE
HAGÅTÑA, GUAM 96910
TELEPHONE: (671) 472-8868
FACSIMILE: (671) 477-2511

*Attorneys for Shell Guam, Inc.*



**FILED**
DISTRICT COURT OF GUAM

AUG 2 6 2005

MARY L.M. MORAN
CLERK OF COURT

## IN THE DISTRICT COURT OF GUAM

|  |  |
|---|---|
| ANTHONY J. ADA,<br><br>        Plaintiff,<br><br>     vs.<br><br>SHELL GUAM, INC.,<br><br>        Defendant.<br><br>SHELL GUAM, INC.,<br><br>        Counterclaim<br>        Plaintiff,<br><br>     vs.<br><br>ANTHONY J. ADA,<br>        Counterclaim<br>        Defendant. | CASE NO. CV00-00012<br><br><br><br><br><br>**SHELL GUAM, INC.'S OPPOSITION TO MOTION TO FILE THIRD AMENDED COMPLAINT** |

# TABLE OF CONTENTS

I.    RELEVANT FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   RULE 16 ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.   Untimely Under Scheduling Order . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  RULE 15 ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      A.   Bad Faith . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
      B.   Undue Delay . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
      C.   Prejudice to Shell . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
      D.   Futility . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
             1.   Fuel Commissions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
             2.   Citibank Discount Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
             3.   Shell Serve Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
             4.   Lucky 7 Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

IV.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

# TABLE OF AUTHORITIES

<u>Cases</u>

*Acri v. International Ass'n of Machinists & Aerospace Workers,*
781 F.2d 1393 (9th Cir. 1986), *cert. denied,* 479 U.S. 816
(1986) and 479 U.S. 821 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*California v. Neville Chemical Co.,*
213 F.Supp.2d 1142 (C.D.Cal. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Chevron U.S.A. Inc. v. El-Khoury,*
2002 WL 31256160, at *3 (C.D.Cal. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Coleman v. Quaker Oats Co.,*
232 F.3d 1271 (9th Cir. 2000), *cert. denied,* 533 U.S. 950 (2001) . . . . . . . . . . . . . . . . 3

*DiPace v. Goord,* 308 F.Supp.2d 274 (S.D.N.Y.2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Dowcraft Corp. v. Smith,* No. 01-CV-0816E(SR),
2004 WL 626801, at *1 (W.D.N.Y. Feb. 17, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Forstmann v. Culp,* 114 F.R.D. 83 (M.D.N.C.1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Griggs v. Pace Am. Group Inc.,* 170 F.3d 877 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Johnson v. Mammouth Recreations, Inc.,* 975 F.2d 604 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . 3

*Johnson v. American Airlines, Inc.,* 834 F.2d 721 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . 11-12

*Lockheed Martin Corp. v. Network Solutions, Inc.,*
194 F.3d 980 (9th Cir.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Milanese v. Rust-Oleum Corp.,* 244 F.3d 104 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Navarro v. Microsoft Corp.,*
214 F.R.D. 422, 423-24 (N.D. Tex 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Parker v. Columbia Pictures Industries,*
204 F.3d 326 (2nd Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Rent-A-Center, Inc. v. 47 Mamaroneck Ave. Corp.*,
   215 F.R.D. 100 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Robinson v. The Town of Colonie*, 1993 WL 191166,
   1993 U.S. Dist. Lexis 7464 (N.D.N.Y.1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Roth v. Garcia Marquez*, 942 F.2d 617 (9th Cir. 1991)
   (quoting *DCD Programs, Ltd. v. Leighton*,
   833 F.2d 183 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Royal Ins. Co. v. Southwest Marine*, 194 F.3d 1009 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . 6

*S & W Enterprises, L.L.C. v. South Trust Bank of Alabama, NA*,
   315 F.3d 533 (5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Stoner v. New York City Ballet Co.*, No. 99 Civ. 0196(BSJ),
   2002 WL 523270, at *14 n. 10 (S.D.N.Y. Apr. 8, 2002) . . . . . . . . . . . . . . . . . . . 12

*Watson ex rel. Watson v. Beckel*, 242 F.3d 1237 (10th Cir.2001) . . . . . . . . . . . . . . . . . . . . . . 12

**Statutes**

15 U.S.C. § 2801, *et seq*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**Rules**

*Federal Rules of Civil Procedure*
   Rule 15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-4, 6-7, 10
   Rule 16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-4, 6-7

**Other Authority**

Moore's Federal Practice 3rd § 15.14[1] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Shell opposes Ada's motion to file a Third Amended Complaint. Trial in this matter is scheduled to begin on November 9, 2005.

## I.     RELEVANT FACTS.

Ada is an operator of two Shell service stations and convenience stores on Guam, one in Barrigada and one in Mangilao. He operates these stations pursuant to Agency Sales Agreements for each station. Copies of each Agency Sales Agreement are attached at **Exhibits 1(a)-(d)** to the Declaration of Philip Stalker filed August 19, 2005 in Support of Shell Guam, Inc.'s Motion to Modify Preliminary Injunction ("8/19/05 Stalker Decl."). By 1999, the relationship between Shell and Ada had become an unhappy one. In February 1999, Shell and Ada negotiated an agreement that the Agency Sales Agreements for the two stations would terminate on February 29, 2000. *See*, Amendment of Agency, 8/19/05 Stalker Decl. **Exs. 2(a) and (b)**. For reasons that are in dispute, Ada had a change of heart and, just before the agreed upon expiration date, he filed a nine-count complaint alleging causes of action under the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. § 2801, *et seq.*, as well as various state law claims.[1] Ada did not allege a state law breach of contract claim, and none of the facts relating to the alleged breach of contract claims which Ada now seeks permission to add by way of amendment were included in his original complaint. On March 17, 2000, Ada obtained a Preliminary Injunction prohibiting Shell from "terminating the Agency Sales Agreements between the parties...." At all times since entering into the Agency Sales

---

[1]The counts were: Count 1 - Unlawful Termination of Petroleum Franchise under PMPA; Count 2 - Injunction against termination of Franchise; Count 3 - Fraudulent Inducement; Count 4 - Intentional Misrepresentation; Count 5 - Negligent Misrepresentation; Count 6 - Breach of Duty or Good Faith and Fair Dealing; Count 7 - Deceptive Trade Practice Violation; Count 8  Estoppel.

1

Agreements, Ada has been in possession of the stations and has been compensated in accordance with the Agency Sales Agreements and amendments thereto. *See*, Stalker Supplemental Declaration ¶ 9 ("Stalker Supp. Decl.") filed herewith, and Excerpts from Deposition Transcript of Anthony Ada ("Ada Tr.").

Ada was initially paid a commission on final sales of .18 cents per gallon, which was eventually raised to .21 cents per gallon. Stalker Supp. Decl. ¶ 5. In March 1996, Ada and Shell entered into a written agreement to modify Ada's commission for fuel from a cents-per-gallon model to a management fee-plus-reimbursement-model. Stalker Supp. Decl. ¶ 5. Ada has been on the reimbursement model ever since and Shell is current to him on payments under the reimbursement model. *Id.,* ¶ 9.

The petroleum business on Guam is extremely competitive. In order to increase sales and promote brand loyalty, Shell has initiated various promotional programs over the years. Among these programs are the Lucky 7, Shell Serve and Citibank Discount programs which are referenced in ¶ 44 of the proposed amended complaint. Shell strongly encourages all operators to participate in these promotional programs, but participation is voluntary. Stalker Supp. Decl. ¶ 10. Ada has been, by his own agreement, a participant in each of these three programs. *Id.* ¶ 11.

## II.     RULE 16 ANALYSIS

**A.     Untimely Under Scheduling Order.** The deadline for filing a motions to amend pleadings expired years ago. *See,* Third Scheduling Order filed June 27, 2003, ¶ 4. Ada's reliance on Moore's Federal Practice 3rd § 15.14[1] for the proposition that the Court should permit amendment after the deadline set in the pretrial order does set out the correct standard in this Circuit. Because the motion to amend was brought well after the deadline set for amendments in the

2

Scheduling Order, the motion is governed by Rule 16 of the Federal Rules of Civil Procedure, not

Rule 15.

> Generally, Federal Rule of Civil Procedure 15(a) liberally allows for amendments to pleadings. In this case, however, the district court correctly found that it should address the issue under Federal Rule of Civil Procedure 16 because it had filed a pretrial scheduling order that established a timetable for amending the pleadings, and the deadline had expired before Jeney, Gentile, and Coleman moved to amend. *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-09 (9th Cir.1992). Under Rule 16(b), Jeney, Gentile, and Coleman must show good cause for not having amended their complaints before the time specified in the scheduling order expired. See *id.* at 608-09. This standard "primarily considers the diligence of the party seeking the amendment." *Id.* at 609.

*Coleman v. Quaker Oats Co.,* 232 F.3d 1271, 1294 (9th Cir. 2000), *cert. denied*, 533 U.S. 950

(2001); *see also Parker v. Columbia Pictures Industries*, 204 F.3d 326, 340 (2nd Cir. 2000) (noting

and discussing that several circuits, including the Ninth Circuit, "have ruled that the Rule 16(b)

"good cause" standard, rather than the more liberal standard of Rule 15(a), governs a motion to

amend filed after the deadline a district court has set for amending the pleadings," and adopting for

the Second Circuit the good cause standard, rather than the lenient standard of Rule 15(a), for

motions to amend brought after a scheduling order deadline).[2]

As stated in *Johnson v. Mammouth Recreations, Inc.*, 975 F.2d 604 (9th Cir. 1992),

> Johnson discusses at length the liberal amendment policy of Federal Rule of Civil Procedure 15(a). Mammoth Recreations does not dispute that Rule 15's policy favoring amendments is applied liberally by us. Ascon

---

[2]     Ada notes that the amended Scheduling Order made no direct mention of a deadline for amending pleadings. It was, of course, unnecessary to address the deadline for amending pleadings because the deadline had passed. The reference in the amended Order to "good cause" for amending pleadings merely incorporates the standard imposed by the Ninth Circuit and other federal courts on amending pleadings after the deadline for amending pleadings has passed in a scheduling order.

3

Properties, Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir.1989); DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185-87 (9th Cir.1987). Under Rule 15(a), leave to amend should be granted as a matter of course, at least until the defendant files a responsive pleading. After that point, leave to amend should be granted unless amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay. Id.

Nonetheless, Rule 15 does not provide the standards by which we consider Johnson's motion to amend to add Mammoth Mountain Ski Area, Inc. as a defendant. Once the district court had filed a pretrial scheduling order pursuant to Federal Rule of Civil Procedure 16 which established a timetable for amending pleadings that rule's standards controlled. Rule 16 provides in part:

> (b) [The district court] ... shall, after consulting with the attorneys for the parties and any unrepresented parties, by a scheduling conference, ... enter a scheduling order that limits the time
>> (1) to join other parties and to amend the pleadings; (2) to file and hear motions; and
>>
>> (3) to complete discovery.
>> ....

The order shall issue as soon as practicable but in no event more than 120 days after filing of the complaint. A schedule shall not be modified except by leave of ... [the district court] upon a showing of good cause.

Thus, Johnson's ability to amend his complaint was governed by Rule 16(b), not Rule 15(a). *See Forstmann v. Culp,* 114 F.R.D. 83, 85 (M.D.N.C.1987) (party seeking to amend pleading after date specified in scheduling order must first show "good cause" for amendment under Rule 16(b), then, if "good cause" be shown, the party must demonstrate that amendment was proper under Rule 15); *see also Financial Holding Corp. v. Garnac Grain Co.,* 127 F.R.D. 165, 166 (W.D.Mo.1989) (same).

*Johnson v. Mammoth Recreations, Inc.,* 975 F.2d at 607-608; *see also Rent-A-Center, Inc. v. 47 Mamaroneck Ave. Corp,* 215 F.R.D. 100, 103 (S.D.N.Y. 2003) ("Pursuant to Rule 16(b), with its mandatory language ('shall not be modified'), this motion must be denied unless [the proponent] demonstrate[s] good cause for not having claimed all of the attorneys' fees to which they were

4

entitled when they filed the original amended answer and counterclaim.")

Prejudice to the party opposing the modification may also support a denial of the motion, but the focus is on the moving party's reasons for seeking modification, and if the party was not diligent, the inquiry should end. "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end." *Johnson,* 975 F.2d. at 609.

As noted above, a finding of good cause depends on the diligence of the moving party. "In other words, the movant must show that the deadlines cannot be reasonably met despite its diligence. *Robinson v. The Town of Colonie,* 1993 WL 191166, 1993 U.S. Dist. Lexis 7464 (N.D.N.Y.1993). 'If [a] party was not diligent, the [good cause] inquiry should end." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir.1992).'" *Rent-A-Center, Inc. v. 47 Mamaroneck Ave. Corp.*, 215 F.R.D. 100, 104 (S.D.N.Y.,2003). Ada has wholly failed to explain why it could not have set forth a breach of contract claim at the time the lawsuit was filed, or at least much earlier in the lawsuit, and has, therefore, failed to establish good cause. *See S & W Enterprises, L.L.C. v. South Trust Bank of Alabama, NA*, 315 F.3d 533, 536 & n.3 (5th Cir. 2003) (noting, in affirming district court's denial of motion to amend complaint to add interference with contract claim, that plaintiff wholly failed to explain why it could not have set forth a claim of tortious interference with a contract at the time its lawsuit was filed in 1998); *Navarro v. Microsoft Corp.,* 214 F.R.D. 422, 423-24 (N.D. Tex 2003) (stating that "[t]he party seeking to amend the pleadings must show that the deadlines cannot reasonably be met despite due diligence in attempting to do so," and holding that plaintiffs' pointing to the fact that the claims involve the same facts and same method of proof

5

does not help plaintiffs because "the fact that the two claims involve the same facts is further evidence that the Plaintiff could have brought this claim at any time since the filing of this lawsuit"); *see also Royal Ins. Co. v. Southwest Marine*, 194 F.3d 1009, 1016-17 (9th Cir. 1999) (record showed new allegations could have been included in original complaint).

The Ninth Circuit does not look favorably on delayed motions to amend when the facts and theory have been known to the party seeking the amendment since the beginning of the action.

> Although leave to amend is liberally granted under Fed.R.Civ.P. 15(a), undue delay, bad faith in seeking amendment, or undue prejudice to the party opposing amendment are grounds for denying leave to amend. Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); M/V American Queen, 708 F.2d at 1492; Roberts v. Arizona Board of Regents, 661 F.2d 796, 798 (9th Cir.1981). We have also noted that late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action. M/V American Queen, 708 F.2d at 1492; Stein v. United Artists Corp., 691 F.2d 885, 898 (9th Cir.1982).

*Acri v. International Ass'n of Machinists & Aerospace Workers,* 781 F.2d 1393, 1398 (9th Cir. 1986), *cert. denied,* 479 U.S. 816 (1986) and 479 U.S. 821 (1986); *see also Coleman v. Quaker Oats Co.*, 232 F.3d at 1295 (citing and quoting *Acri* for proposition "that even under the liberal Rule 15 standard 'late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action'").

## III.   RULE 15 ANALYSIS.

Even assuming that the Court concludes that Ada has shown "good cause" under Rule 16 – which he has not, Ada must also satisfy the standards of Rule 15 since he is the party seeking the amendment. *See Forstmann v. Culp,* 114 F.R.D. 83, 85 (M.D.N.C.1987) (party seeking to amend

6

pleading after date specified in scheduling order must first show "good cause" for amendment under Rule 16(b), then, if "good cause" be shown, the party must demonstrate that amendment was proper under Rule 15) (cited in *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d at 607 -608.). "'Four factors are commonly used to determine the propriety of a motion for leave to amend. These are: bad faith, undue delay, prejudice to the opposing party, and futility of amendment.'" *Roth v. Garcia Marquez*, 942 F.2d 617, 628 (9th Cir. 1991) (quoting *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987)); *see also Griggs v. Pace Am. Group Inc.*, 170 F.3d 877, 880 (9th Cir. 1999) (district court determines the propriety of a motion to amend by evaluating four factors: bad faith, undue delay, prejudice to the opposing party, and futility).

    **A.**   **Bad Faith**.    The amendment is being sought in bad faith; Ada is asserting claims he knows are specious. As discussed more fully below, Ada admits that his fuel commission has never been linked to the price of fuel, so he has no basis for claiming unpaid commissions.

> Q.   Am I correct there was never an agreement by Shell to pay you more than 21 cents per gallon when your commission was based on sales per gallon? I'm sorry, a commission per gallon sold?
>
> A.    A written agreement, no.
>
> Q.   Did you ever have an oral agreement that you would be paid more than 21 cents a gallon?
>
> A.    It was a trust that they would ask -- as the prices went up that I trusted that they would be adjusted accordingly. The 21 cents.
>
> Q.   Did you ever have a discussion with Shell about that?
>
> A.    No.

7/18/05 Ada Tr. at 26:19-25-27:1-6.

7

Ada also knows that he has either been paid exactly what Shell agreed to pay him regarding the promotional programs, or that all he has to do is submit appropriate paperwork to Shell to get reimbursement regarding those promotional programs. What the amendment is really about is that Ada is afraid that he will get to trial and not be able to prove any damages based on the claims now in the complaint. Ada has belatedly realized that, even assuming that the agreement between the parties to end their relationship was ineffective, he has not been damaged since he has remained in possession of the stations pursuant to the preliminary injunction. *See Chevron U.S.A. Inc. v. El-Khoury*, 2002 WL 31256160, at *3 (C.D.Cal. 2002) ("Defendant cannot logically claim actual damages on the basis of PMPA violations, since, by virtue of the parties' 'standstill agreement and the stay order issued by this Court, Defendant has remained in possession at all times and his franchise has not actually been terminated."). Faced with the possibility of not having any damages to present at trial, Ada now seeks to file a third amended complaint adding a count for breach of contract for matters not raised in the complaint and which have no connection to the other allegations in the complaint, and which have no basis in fact. This is bad faith.

**B.     Undue Delay.**     One readily apparent reason for denying the motion is based on undue delay. This case has been pending for over five years. Each of the matters raised in the breach of contract claim have been in effect for years, *i.e.*, the reimbursement vs. cents per gallon compensation model went into effect in March, 1996, the Citibank discount program went into effect April 24, 2000, the Lucky 7 loyalty promotional program went into effect in March, 2002, the Shell Serve promotional program went into effect in January 15, 2004. Stalker Supp. Decl. ¶ 12. Certainly Ada could have brought these claims at some point in the past five years rather than waiting until trial was just a little over two months away.

8

Ada's representation that there has been no undue delay in bringing the requested amendment since "the damages calculations relating to these claims have been provided to Shell in expert witness reports on January 10 and July 7, 2005," *Memo P&A at 4*, is not accurate.  In the January 7, 2005 report by Ada's expert, Roger Slater ("Slater"), the only damage claim possibly relevant to the amendment now being sought was Slater's opinion that Shell owed Ada $332,256 for "dollar differential damages," based on a theory that Shell should have made proportional increases in the commission paid to Ada on fuel sales as the price of fuel rose at the pump.  No mention was made at all regarding claim for the Shell Serve, Lucky 7 and Citibank Discount programs (collectively "promotional claims") now raised in the proposed amendment.  The breach of contract claims relating to the promotional claims, which amount to at least $260,000, were not raised in any manner until Slater submitted a supplemental report on July 7, 2005. *See* Slater Supp. Report at 6.

Even assuming that Ada has breach of contract claims relating to fuel reimbursement or promotional activities, and Shell denies Ada has any such claims, Ada could have and should have brought those claims long before now.  His effort to add them at this late date should be denied.

      **C.**     **Prejudice to Shell.**   Trial is scheduled to begin on November 9, 2005, which is just over two months away.  It would be highly prejudicial to Shell to permit Ada to amend his complaint at this late date. At the very least the amendment would necessitate additional discovery and motion practice. In the seven weeks since Shell first learned of the promotional claims, Shell has not had adequate time to conduct discovery on these claims and it has not had an opportunity to request documents relating to these claims.  The supplemental Slater report, which for the first time raised the claims relating to the promotional programs, was produced last month shortly before Ada's

9

deposition. As a result, Shell's examination on these topics was not detailed since the promotional claims had just surfaced and did not appear to bear any relevance to issues raised in the complaint. If Shell is required to defend against those claims, it will need to conduct further depositions of Ada, and possibly of other individuals who have knowledge of those claims. This need to reopen discovery is sufficient to show prejudice under Rule 15. *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir.1999) ("A need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend the complaint.").

An amendment of the pleading would be a further prejudice to Shell since it may want to assert counterclaims against Ada relating to the alleged breaches of contract based on additional costs Shell has incurred as a result of Ada's refusal to comply with the procedures for the promotional activities. *See, e.g., General Electric Company v. Advance Stores Company, Inc.*, 285 F.Supp.2d 1046, 1052 (N.D. Ohio 2003) (denying motion to amend complaint to include another defendant where inclusion of the new defendant would introduce new issues or counterclaims).[3]

A third way in which Shell will be prejudiced by amendment at this late date is that, following the additional discovery, Shell would need an opportunity to file appropriate motions for summary judgment. There just is not sufficient time to do this prior to trial without imposing undue hardship on Shell. *Dowcraft Corp. v. Smith*, No. 01-CV-0816E(SR), 2004 WL 626801, at *1

---

[3]    "If the plaintiff expands its case by adding new theories or claims, it cannot complain if the defendant seeks to do the same by averring new counterclaims." *Pereira v. Cogan,* No. 00 CIV. 619(RWS), 2002 WL 1822928, *4 (S.D.N.Y. Aug. 7, 2002); *see also Digital Privacy, Inc. v. RSA Sec., Inc.*, 199 F.Supp.2d 457, 459 n. 2 (E.D.Va. 2002) (defendant entitled to include five new counterclaims in its answer to the amended complaint), *appeal dismissed*, 56 Fed. Appx. 497 (Fed. Cir. 2003).

10

(W.D.N.Y. Feb. 17, 2004) (motion to file amended counterclaim more than two years after case file and after discovery deadline and deadline for summary judgment motions denied, court finding that if it "were to grant the defendants' motion, discovery would have to be re-opened and this case - which is presently ready for the scheduling of a trial date – would be further delayed, "that defendants offered no reason why they waited more than two years to add claim which appeared based on facts they had in their possession when they filed their answer and counterclaims and that, "[i]n any event, defendants' proposed amendment would both prejudice plaintiff and delay this action beyond what is reasonable in light of the stage of the litigation").

If the complaint is amended now, Shell will have to complete discovery and prepare and file a motion for summary judgment during the months of September and October. This will prejudice Shell by infringing on time Shell would otherwise use to prepare for trial. It will also prejudice Shell by requiring Shell to do work on this claim at the same time that Shell is in trial with Ada's counsel on another matter, which is scheduled for trial on September 19, 2005.

**D.     Futility.** The Court is not required to permit an amendment if the amendment would be futile. In determining whether an amendment would be futile, the Court is not bound by the four corners of the complaint but can consider outside matters. In *Johnson v. American Airlines, Inc.*, 834 F.2d 721, 724 (9th Cir. 1987), the Ninth Circuit held that "courts have discretion to deny leave to amend a complaint for 'futility,' and futility includes the inevitability of a claim's defeat on summary judgment." *See Roth v. Garcia Marquez*, 942 F.2d 617, 628-29 (9th Cir. 1991) (citing and quoting *Johnson* for proposition that "futility" includes the inevitability of defeat on summary judgment and affirming district court's denial of motion to amend complaint because claim would be defeated at summary judgment); *California v. Neville Chemical Co.*, 213 F.Supp.2d 1142, 1145

11

(C.D.Cal.,2002) ("A proposed amendment is futile if the new claim could be defeated by a motion to dismiss or a motion for summary judgment. *Johnson v. American Airlines, Inc.*, 834 F.2d 721, 724 (9th Cir.1987).").[4]

Each of the specific matters which Ada alleges as part of his breach of contract claim, *see* Proposed Third Amend Complaint ¶ 44, are inevitably subject to dismissal on a motion for summary judgment, to wit:

1.      **Fuel Commissions.**  The alleged breach based on Shell's alleged failure "to pay Ada a commission on each gallon of gasoline sold at his stations, and instead imposing on Ada a monthly expense reimbursement," Proposed Amended Complaint, ¶ 44, is a patently absurd claim which would be disposed of by way of summary judgment.  The reimbursement model, which has been in effect since 1996,  is a mutually agreed upon change in the manner in which Ada was compensated for fuel sales.  Instead of being paid on a cents-per-gallon basis, and paying the costs of operating the stations out of his own pocket, Shell and Ada agreed in writing that Shell would pay

---

[4] Courts in other jurisdictions are in accord.  *See, e.g.,  Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110-111 (2d Cir.2001) ("[W]here ... the parties have fully briefed the issue whether the proposed amended complaint could raise a genuine issue of fact and have presented all relevant evidence in support of their positions .... the court may deny the amendment as futile when the evidence in support of plaintiff's new claim creates no triable issue of fact and the defendant would be entitled to judgment as a matter of law under Fed.R.Civ.P. 56(c)."); *Watson ex rel. Watson v. Beckel,* 242 F.3d 1237, 1239-40 (10th Cir.2001) ("A proposed amendment is futile if the complaint, as amended, would be subject to dismissal for any reason, including that the amendment would not survive a motion for summary judgment." );  *DiPace v. Goord*, 308 F.Supp.2d 274, 279 (S.D.N.Y.2004) (where parties submitted evidence outside the pleadings in connection with a motion to amend, the court judged the proposed pleading based on whether it could survive a motion for summary judgment); *Stoner v. New York City Ballet Co.,* No. 99 Civ. 0196(BSJ), 2002 WL 523270, at \*14 n. 10 (S.D.N.Y. Apr. 8, 2002) (denying motion to amend where the claim might survive a motion to dismiss, but would "immediately be subject to dismissal on a motion for summary judgment").

12

Ada a monthly management fee and either directly pay or reimburse Ada for the costs of operating the station. *See*, Amendment to Agency Sales Agreements, 8/19/05 Stalker Decl. **Ex. 2(a) and (b)**. Shell has faithfully paid Ada the agreed upon amount of reimbursement under this agreement.

> Q. Is Shell current in its payments to you under the reimbursement agreement?
>
> A. Under that reimbursement agreement, yes.

Ada Tr., 7/18/05 at 101.

Although not seemingly mentioned in the proposed amended complaint, the other manner in which Ada's expert claims Ada was injured in relation to the commission on fuel sales was the what Slater termed a "dollar differential claim," which he valued at about $375,000. This is an utterly baseless claim, created out of whole cloth by Ada's expert. The basis for this claim is Slater's conclusion that, if Ada had stayed on a cents-per-gallon commission model instead of switching to a reimbursement model, and if the cents per gallon commission had gone up proportionally to the rise in the pump price of fuel, Ada would have received more money. This claim, which is not now part of the complaint, would be ripe for disposal by way of summary judgment if added now. First, Ada agreed to switch to the reimbursement model, so there has been no breach of contract based on a failure to pay him on a cents per gallon basis. Second, even when the fuel commission Shell paid to Ada was based on the cents-per-gallon model, it was never linked to the pump price of the fuel. Stalker Supp. Decl. ¶ 5; 7/18/05 Ada Depo Tr. at 106:14-17. Ada was initially paid a commission of .18 cents per gallon, which later went up to .21 cents per gallon. The cents per gallon was based on an estimate of how much it would cost to provide Ada with a certain level of income per station. The amount of the commission did not rise or fall with the pump price,

13

and the pump price was not a consideration in setting the commission. Stalker Supp. Decl. ¶ 5. Clearly, there is no basis for this claim and allowing Ada to add this as a claim at this late date would be futile.

        **2.     Citibank Discount Program.** Ada's claims for the breach of contract relating to the Citibank Visa card discount promotion, which is not now part of the complaint, would certainly be dismissed by way of summary judgment if added by amendment. Ada agreed to participate in this program, and Shell has abided by the terms of each program regarding compensation to be paid to Ada. Stalker Supp. Decl. ¶ 13. Under this program, customers who pay for fuel using a Citibank credit card are given a discount on their fuel purchase. *Id.* at 14. Shell reimburses operators for the amount of the discount. *Ibid.* Shell is not in breach of its oral agreement with Ada regarding this program. In order to receive the reimbursement, the operator is required to submit a request for reimbursement together with certain documentation giving evidence of the transaction. *Id.* at 15. Ada has been reimbursed in the past when he submitted reimbursement requests, but in recent years he has refused to submit reimbursement requests. *Id.* at 16. Shell has repeatedly asked Ada to submit his reimbursement requests, but Ada has refused to submit the requested paperwork. *Id.* at 16. All other operators submit reimbursement requests and receive prompt reimbursement; only Ada fails to request reimbursement on a regular basis. Among other things, this claim would be subject to the affirmative defense of failure to mitigate damages. It is difficult to imagine a more classic case of failure to mitigate — all Ada has to do is submit properly documented reimbursement requests and he will be reimbursed the discount difference. Rather than permitting Ada to file a complaint on this claim, Ada should be required to first submit the required paperwork and reimbursement request.

A second component of Ada's claims regarding the Citibank discount program relate to charges he is assessed by his bank, of .25 cents per transaction and a small percent on the amount of the transaction. These charges actually do not have anything to do with the Citbank Visa discount program, but are instead charges levied by Mr. Ada's bank – the Bank of Guam. Stalker Supp. Decl. ¶ 18. Shell does not have any control over these charges. *Ibid.* When Shell and Ada agreed to switch to a reimbursement model, Shell agreed to reimburse Ada $235 per month for card fees at the Barrigada station, and $180 a month for card fees at the Mangilao station. *See*, Sheet 1 attached to Amendment To Agency Sales Agreement. *Id.*, ¶ 19. Shell has faithfully reimbursed Ada in these amounts each month, and this is these are the only amounts for which Shell is required to reimburse Ada on card fee charges. *Ibid.* Shell has also repeatedly suggested to Ada that he negotiate a better deal with his bank to reduce the card fee or obtain a waiver of the .25 cent transaction cost, but Ada has refused to do this. There is no merit in Ada's claims on this issue, and they would be immediately subject to summary judgment, thus Amendment would be futile and is not required.

        **3.**     **Shell Serve Program.** Shell Serve is a promotional program under which customers who pull up to a self-serve pump nevertheless have their gas pumped by a station attendant. This program, which was agreed to by all operators including Ada, may require operators to hire an additional employee per shift. The theory behind the program is that the Shell Serve offering will attract more customers into Shell stations to buy fuel (which is good for Shell), and that this will in turn translate into more business at the station's convenience store, which is a great benefit to the operator, since the primary source of income to operators is derived from are their convenience store sales. Stalker Supp. Decl. ¶ 21.

15

At the time the Shell Serve Program was instituted, Shell told the operators that, if the program created a loss for them (as a result of needing to hire additional staff), that Shell would consider reimbursing some of the additional staff costs. Stalker Supp. Decl. ¶ 22. Shell made no promise to reimburse any costs unless the additional cost was justified. Shell repeatedly told Ada that it needed to see his monthly profit and loss statements to determine if he was legitimately incurring additional staffing costs, or whether he was overstaffed in some areas. *Ibid.* This was not an onerous requirement since Ada is required to provide Shell with an unaudited income statement and balance sheet by the 15th day of each month. See, Agency Sales Agreements ¶ 5(d).

Ada has only provided Shell with a breakdown of costs for the employees he claims to have hired because of the Shell Serve program; he has not provided Shell with his complete profit and loss statement and Shell has not been able to ascertain whether Ada has legitimately incurred extra cost because of this program. *See*, Ada 7/18 Depo Tr. at 156:9-10 ("Q. Do you provide any information relating to your staff cost? A. Not on an ongoing basis. Q Not since 2000 and 2001? A. I think -- yeah, somewhere thereabouts." Ada has consistently refused to provide Shell with the information required to determine whether he should receive reimbursement from Shell for costs relating to the program.

> Q. And did you ever submit your P&L's to Shell to show them that this program wasn't working for you after the lawsuit was filed? Actually, it started in 2002, so since 2002?
>
> A. Shell knew that it wasn't working as far as C-store purchases because we print a receipt of the sale and we staple it to the Lucky 7 card, and we submit it to them so they can review it and see if there was any C-store purchases made.
>
> Q. I'm sorry, you didn't answer my question. Did you provide profit and loss statements to Shell showing that this program was hurting

16

you?

> MR. PIPES: I think Mr. Ada answered your question. He gave Shell the information from which they could –

> > MS. TANG: That was not my question.

> > MR. PIPES: -- they could determine --

> > MS. TANG: My question was, did you submit P&L's to Shell?

> > THE WITNESS: If it's an P&L that you're asking --

> > MS. TANG: Yeah.

> > THE WITNESS: -- no.

7/26/05 Ada Tr. 45:23-46:1-20.

    **4.**    **Lucky 7 Program.** The Lucky 7 is a loyalty program which rewards customer with Lucky 7 stamps when they buy fuel. The customers paste the stamps on a card, and when the card is filled it can be redeemed for $7.00 of fuel or merchandise from the Shell convenience store. Because the Lucky 7 program is intended to benefit both Shell and the operators by increasing fuel and convenience store sales, there is a cost sharing component to this program. When a customer redeems a Lucky 7 card for fuel or convenience store purchases, the operator sends the redeemed card to Shell and Shell pays the operator $5.25 for each redeemed card; the operator bears $1.75 of the redemption price. Stalker Supp. Decl. ¶ 25.

    Ada complains that he has not gotten reimbursed and that, when he does get reimbursed, he only gets $5.25 per card instead of $7.00. This claim is subject to dismissal by way of summary judgment. Ada agreed to participate in this program, and the terms were known to him when he made this agreement. Ada Tr. 26:19-25-27:1-6. Ada has complained to Shell about the program

17

and Shell has asked Ada to produce his profit and loss statements to verify that he is not making money on the program. Ada has refused to produce these statements. Stalker Supp. Decl. ¶26. If Ada is not happy with the program he should either drop out of it or talk to Shell about modification of terms.

## IV. CONCLUSION

Ada's motion to amend his complaint two months before trial should be denied for lack of good cause and as untimely under FRCP 16. It should further be denied under FRCP 15 for reasons of bad faith, undue delay, prejudice to Shell and futility of amendment as set forth in more detail above.

In the alternative, if the Court allows Ada to amend his complaint to raise breach of contract actions, Shell asks that the amendment be allowed only on the condition that: (1) Shell be permitted to file any counterclaims it has regarding such breach of contract claims; (2) Ada be required to immediately provide Shell with all documents supporting his new breach of contract claims; (3) Shell be permitted to conduct additional discovery of Ada, including taking the deposition of Ada and any witnesses relevant to the breach of contract claims and a requesting additional documents.

Respectfully submitted this 26th day of August, 2005.

CIVILLE & TANG, PLLC

By     **G. PATRICK CIVILLE**
        *Attorneys for Shell Guam, Inc.*

18