CIVILLE & TANG, PLLC
SUITE 200, 330 HERNAN CORTEZ AVENUE
HAGÅTÑA, GUAM 96910
TELEPHONE: (671) 472-8868
FACSIMILE: (671) 477-2511

*Attorneys for Shell Guam, Inc.*



FILED
DISTRICT COURT OF GUAM
AUG 2 6 2005
MARY L.M. MORAN
CLERK OF COURT

## IN THE DISTRICT COURT OF GUAM

| | | |
|---|---|---|
| ANTHONY J. ADA, | ) | CASE NO. CV00-00012 |
|    Plaintiff, | ) | |
| vs. | ) | |
| SHELL GUAM, INC., | ) | |
|    Defendant. | ) | DECLARATION OF G. PATRICK CIVILLE IN SUPPORT OF SHELL GUAM, INC.'S OPPOSITION TO MOTION TO FILE THIRD AMENDED COMPLAINT |
| SHELL GUAM, INC., | ) | |
|    Counterclaim Plaintiff, | ) | |
| vs. | ) | |
| ANTHONY J. ADA, | ) | |
|    Counterclaim Defendant. | ) | |

I, **G. PATRICK CIVILLE**, state as follows:

1.   I am one of the attorneys representing Shell Guam, Inc. ("Shell") in this lawsuit. This declaration is based upon matters within my own knowledge, and if called upon to testify, I will testify as set forth herein.

2.   Attached hereto are true and correct copies of the following exhibits in support of the Opposition to Motion to File Third Amended Complaint:

Exhibit A: Pages 26, 27, 101, 106 and 156 of the Deposition Transcript of Anthony Ada taken on July 18, 2005

Exhibit B: Pages 45 and 46 of the Deposition Transcript of Anthony Ada taken on July 26, 2005

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 26th day of August, 2005.

By: _____
G. PATRICK CIVILLE

# EXHIBIT A

UNITED STATES DISTRICT COURT

DISTRICT OF GUAM

ANTHONY J. ADA,                )   Case No. CV00-00012
                               )
                Plaintiff,     )
                               )
        vs.                    )   COPY
                               )
SHELL GUAM, INC., et al.,      )
                               )
                Defendant.     )

### DEPOSITION OF ANTHONY J. ADA

Taken on Behalf of the Defendant

BE IT REMEMBERED That, pursuant to the Federal Rules of Civil Procedure, the deposition of **ANTHONY J. ADA** was taken before Cecille A. Flores, a Certified Shorthand Reporter, on Monday, the 18th day of July 2005, at 9:00 a.m. in the offices of Civille & Tang, Suite 200, 330 Hernan Cortez Avenue, Hagatna, Guam.

Flores Court Reporting
Suite 2E, Jugo Building
618 Route 8
Barrigada, Guam
Tel: (671) 734-1041 * Fax: (671) 734-1045

Case 1:00-cv-00012    Document 137    Filed 08/26/2005    Page 4 of 17

1   A   Up until September.

2   Q   That's when it went to 21 cents per gallon?

3   A   Yes.

4   Q   When it went up to 21 cents per gallon, that was the
5   only agreement you had for compensation for fuel sales until
6   you went to the reimbursement?

7   A   It stayed that way, yes.

8   Q   It stayed at 21 cents for both stations?

9   A   (Witness nodded head.)

10  Q   Until it went to the reimbursement plus management
11  fee model?

12  A   Yes.

13  Q   Has it been at the reimbursement plus management fee
14  model ever since?

15  A   Yes.

16  Q   Ever since it changed to the reimbursement model and
17  management fee; is that correct?

18  A   (Witness nodded head.)

19  Q   Am I correct there was never an agreement by Shell
20  to pay you more than 21 cents per gallon when your commission
21  was based on sales per gallon?  I'm sorry, a commission per
22  gallon sold?

23  A   A written agreement, no.

24  Q   Did you ever have an oral agreement that you would
25  be paid more than 21 cents a gallon?

1    A    It was a trust that they would ask -- as the prices
2 went up that I trusted that they would be adjusted
3 accordingly. The 21 cents.
4    Q    Did you ever have a discussion with Shell about
5 that?
6    A    No.
7    Q    So would I be correct in saying that no one from
8 Shell ever specifically agreed orally or in writing that you
9 would be given more than 21 cents a gallon if fuel prices
10 went up?
11   A    Again, like I said, it was a trust. When I was told
12 that it was not uncommon for someone to make $100,000 at the
13 station, I figured that it would be something that Shell
14 would look at.
15   Q    Did you also expect, then, that if fuel prices went
16 down that your commission - if you were on a cents per gallon
17 commission - that that would go down if fuel prices went
18 down?
19   A    I never gave that any thought.
20                    (Exhibit D24 marked.)
21   Q    Tony, I'll hand you Exhibit D24. It's dated July 9,
22 1996. It appears to be from Jim Arenovski and Romeo
23 Teodisio. It's a notice of management training courses with
24 a second page containing an outline of those courses. Do you
25 recall receiving this document at some point in mid 1996?

1     A     That's my understanding.

2     Q     And you maintain your position as operator all the
3  way through until the present day?

4     A     Yes.

5     Q     At the time that your lawyer got the restraining
6  order for you, you were still under the reimbursement plus
7  management fee model; is that correct?  For both stations?

8     A     Yes.

9     Q     That has remained in place also up to the present
10  day?

11    A     Yes.

12    Q     Has that been modified in any way?

13    A     The amount given to me?

14    Q     Yes.

15    A     It has not been modified.

16    Q     Is Shell current in its payments to you under the
17  reimbursement agreement?

18    A     Under that reimbursement agreement, yes.

19    Q     Is there any other reimbursement agreement that
20  they're not current under?

21    A     Well, the promotions that Shell has implemented
22  since 2000.

23    Q     You feel they owe you some money for those
24  promotions; is that right?

25    A     Yes.

1  mean?
2      A    I guess Shell would take a look and see how much I
3  made for the year and -- and adjust for the financial goals
4  that we had discussed, I guess.
5      Q    Do you recall talking to anyone at Shell about that?
6      A    No.
7      Q    Do you recall, was this lump sum paid to you because
8  in '94 you had not met the financial goals that you and Shell
9  had set?
10     A    I believe it was along those lines.
11     Q    So they were trying to help you out?
12     A    (Witness nodded head.)  Based on what we had talked
13 about.  I guess on the business plan.
14     Q    Do you recall Shell ever saying anything that that
15 lump sum payment was in any manner linked to the price of
16 gasoline?
17     A    No.
18     Q    I'm handing you what's been marked as Exhibit D44.
19                    (Exhibit D44 marked.)
20          It's also been an exhibit in depositions that your
21 attorney took.  This is a letter of reference for you signed
22 by Darrel Dela Paz; is that correct?
23     A    Yes.
24     Q    Dated January 14, 2000.  This was about a month or
25 three weeks before you filed your complaint against Shell; is

1    A    No.

2    Q    Did you provide them with a cost of breakdown of
3  your cashier or attendant on a monthly basis?

4    A    No.

5    Q    Did you provide Shell with the cost of your
6  supervisors on a monthly basis?

7    A    No.

8    Q    Did you provide Shell with the cost of your overtime
9  on a monthly basis?

10   A    No.

11   Q    Did you provide them with any FICA or tax
12 information regarding the payroll other than what was
13 produced in this lawsuit since 2000, 2001?

14   A    No, these are all fixed amounts.  Shell knows what
15 they are.  They didn't change.  They weren't gonna change it
16 so that's where it stayed at.

17   Q    Has your staff - when I say staff, that includes
18 bookkeeper, cashiers, supervisors every time - has that
19 changed at all between 2000 and the present time?

20   A    No.

21   Q    So it's remained the same amount constantly every
22 month?

23   A    As -- well, it cannot be constant because sometimes
24 people don't show up for work and sometimes people quit so it
25 changes and -- but I -- I've been pretty much confined to

# REPORTER'S CERTIFICATE

     I, Cecille A. Flores, a Certified Shorthand Reporter, hereby certify that **ANTHONY J. ADA** personally appeared before me at the time and place set forth in the caption hereof; that at said time and place I reported in stenotypy all testimony adduced and other oral proceedings had in the foregoing matter; that thereafter my notes were reduced to typewriting under my direction; and the foregoing transcript, pages 1 to 186, both inclusive, constitutes a fuel, true, and correct record of such testimony adduced and oral proceedings had and of the whole thereof.

     Witness my hand at Barrigada, Guam this 15th day of August 2005.

_____
Cecille A. Flores
Certified Shorthand Reporter
CSR No. FL-OR-EC-A197NA

NOTARY PUBLIC'S CERTIFICATE

HAGATNA    ) ss

      I, Cecille A. Flores, Notary Public in and for Guam, do hereby certify that on the 18th day of July, 2005 at the hour of 9:00 a.m. there appeared before me **ANTHONY J. ADA** at the law offices of Civille & Tang, Suite 200, 330 Hernan Cortez, Guam 96910. The witness herein, produced to give his deposition in the within-numbered Case No. 00-00012; that prior to examination the witness was by me duly sworn upon his oath; that thereafter the transcript was prepared by me or under my supervision, and the original deposition transcript was presented to Mr. Pipes' office for the deponent's review, corrections, if any, and execution.

      I further certify that I am not a relative, employee, attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, and that I am not directly or indirectly interested in the matters in controversy.

      In testimony whereof, I have hereunto set my hand and seal of Court this 15th day of August, 2005.

_____
Cecille A. Flores

# EXHIBIT B

```
 1                    UNITED STATES DISTRICT COURT
                           DISTRICT OF GUAM
 2

 3    ANTHONY J. ADA,              )   CIVIL CASE NO. CV00-00012
                                   )
 4              Plaintiff,          )
                                   )
 5        vs.                       )
                                   )              CONTINUED
 6    SHELL GUAM, INC., et al.,    )           DEPOSITION OF
                                   )           ANTHONY J. ADA
 7              Defendants.         )            JULY 26, 2005
                                   )
 8    _____)

 9
              The continued deposition of Anthony J. Ada, called
10    by Defendant Shell Guam, Inc., pursuant to Notice and
      pursuant to the Federal Rules of Civil Procedure, taken at
11    the law offices of Civille & Tang, PLLC, Suite 200, 330
      Hernan Cortez Avenue, Hagåtña, Guam, on Tuesday, the 26th day
12    of July, 2005, at the hour of 9:40 o'clock a.m.

13         That at said time and place, there transpired the
      following:
14

15

16                       A P P E A R A N C E S:

17    For the Plaintiff          Richard Pipes, Esq.

18
      For the Defendants         CIVILLE & TANG, PLLC
19                               By:  G. Patrick Civille, Esq.
                                      Joyce C.H. Tang, Esq.
20

21    Also Present: Philip Stalker, Shell Guam, Inc.
                    Lee Knapp, Videographer
22

23

24

25    DISK                                              COPY
      ENCLOSED
```

1    A.    I didn't want anymore trouble.
2    Q.    Okay. And did you ever, did it ever -- and wasn't
3 it also stated at the meeting that if you participated, there
4 would be more people and more traffic, hence more -- more
5 sales for C-store, wasn't that one of the reasons for this
6 promotion?
7    A.    That was part of the sales pitch.
8    Q.    Was that an incentive for you at all?
9    A.    By this time, I'm cooperating, right?
10   Q.    Okay.
11   A.    So I said, okay, let's see.
12   Q.    Okay; and -- Did customers sometimes redeem Lucky 7
13 programs at the C-store?
14   A.    Customers rarely redeem Lucky 7 in the C-store.
15        MR. PIPES:  We're about past the one hour now.
16 Do you have a --
17        MS. TANG:  No, I'm closing up. Can I just have
18 one minute?
19        MR. PIPES:  You have a final question you want
20 to ask him?
21        MS. TANG:  Yeah; okay.
22 BY MS. TANG:  (Continuing)
23   Q.    And did you ever submit your P&L's to Shell to show
24 them that this program wasn't working for you after the
25 lawsuit was filed? Actually, it started in 2002, so since

ANTHONY J. ADA: JULY 26, 2005

```
 1   2002?
 2       A.   Shell knew that it wasn't working as far as C-store
 3   purchases because we print a receipt of the sale and we
 4   staple it to the Lucky 7 card, and we submit it to them so
 5   they can review it and see if there was any C-store purchases
 6   made.
 7       Q.   I'm sorry, you didn't answer my question.
 8            Did you provide profit and loss statements to Shell
 9   showing that this program was hurting you?
10            MR. PIPES:  I think Mr. Ada answered your
11   question.  He gave Shell the information from which they
12   could –
13            MS. TANG:  That was not my question.
14            MR. PIPES:  -- they could determine --
15            MS. TANG:  My question was, did you submit
16   P&L's to Shell?
17            THE WITNESS:  If it's an P&L that you're
18   asking --
19            MS. TANG:  Yeah.
20            THE WITNESS:  -- no.
21            MS. TANG:  Okay, thank you.  Okay, we're done.
22            THE VIDEOGRAPHER: Okay, the time is --
23            MR. PIPES:  I don't have any questions.
24            MR. CIVILLE:  Sorry.
25            MS. TANG:  Oh, I'm sorry.
```

ANTHONY J. ADA: JULY 26, 2005

```
 1                    REPORTER'S CERTIFICATE
 2
 3        I, Cecilia F. Flores, Stenotype Reporter, do hereby
 4   certify the foregoing 47 pages to be a true and correct
 5   transcript of the stenographic shorthand notes and audio
 6   recording taken by me in the within-entitled and numbered case
 7   at the time and place as set forth herein.
            Dated at Hagåtña, Guam, this 1st day of August, 2005.
 8
 9
10                              _____
11                                    Cecilia F. Flores
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

ANTHONY J. ADA: JULY 26, 2005

```
 1                          CLERK'S CERTIFICATE
 2  SUPERIOR COURT OF GUAM           ) ss
 3          I, Cecilia F. Flores, Special Deputy Clerk, Superior
 4  Court of Guam, do hereby certify that on the 26th day of July
 5  2005, at the hour of 9:40 a.m., there appeared before me
 6  Anthony J. Ada at the Law Offices of Civille & Tang, PLLC,
 7  Suite 200, 330 Hernan Cortez Avenue, Hagåtña, Guam 96910, the
 8  witness herein, produced to give his deposition in the within-
 9  entitled and numbered Civil Case No. CV00-00012, in the United
10  States District Court; that prior to examination the witness
11  was by me duly sworn upon his oath; that thereafter the
12  transcript was prepared by me or under my supervision, and the
13  original deposition transcript was presented to Mr. Pipe's
14  office for the deponent's review, corrections, if any, and
    execution.
15          I further certify that I am not a relative, employee,
16  attorney or counsel of any of the parties, nor a relative or
17  employee of such attorney or counsel, and that I am not
18  directly or indirectly interested in the matters in
19  controversy.
20          In testimony whereof, I have hereunto set my hand and
21  seal of Court this 1st day of August, 2005.
22
23                          _____
                            SPECIAL DEPUTY CLERK, SUPERIOR COURT OF GUAM
24
25
```

ANTHONY J. ADA: JULY 26, 2005