**CIVILLE & TANG, PLLC**
SUITE 200, 330 HERNAN CORTEZ AVENUE
HAGÅTÑA, GUAM 96910
TELEPHONE: (671) 472-8868
FACSIMILE: (671) 477-2511

*Attorneys for Shell Guam, Inc.*



FILED
DISTRICT COURT OF GUAM
AUG 26 2005
MARY L.M. MORAN
CLERK OF COURT

## IN THE DISTRICT COURT OF GUAM

| | | |
|---|---|---|
| ANTHONY J. ADA, | ) | CASE NO. CV00-00012 |
| Plaintiff, | ) | |
| vs. | ) | |
| SHELL GUAM, INC., | ) | |
| Defendant. | ) | **SUPPLEMENTAL DECLARATION OF PHILIP STALKER** |
| SHELL GUAM, INC., | ) | |
| Counterclaim Plaintiff, | ) | |
| vs. | ) | |
| ANTHONY J. ADA, | ) | |
| Counterclaim Defendant. | ) | |

I, **PHILIP W. STALKER,** state as follows:

1. I make this supplemental declaration based upon my personal knowledge of the facts stated herein.

2. I am the President and Finance Director of Shell Guam, Inc. ("Shell").

3. This declaration is based upon my personal knowledge or information I learned from a review of Shell documents kept and maintained in the regular course of Shell's business.

4.  In 1993 Shell entered into an Agency Sales Agreement with the plaintiff Anthony Ada ("Ada"), under which Ada became an agent-operator of Shell's station in Mangilao, Guam. This Agreement was for one year and was renewed in 1995 for a period of five years. In 1995 Shell also entered into a separate Agency Sales Agreement with Ada for Ada to be an agent-operate for the Shell station in Barrigada, Guam. The Barrigada Agreement was for a one year period, and was thereafter renewed for a period of five years. True and correct copies of the two Mangliao and two Barrigada Agency Agreements are attached as **Exhibits 1(a)-(d)** to my declaration dated 8/19/05.

5.  Initially Ada was paid a cents per gallon commission of fuel sales and he kept his convenience store proceeds, except for 15% of gross store sales which he paid to Shell as rent. Under this cents-per-gallon model, Ada paid most of the operating expenses for the stations. During the time that Ada was on the cents-per-gallon model, he was initially paid a fuel commission .18 cents per gallon, which was later raised to .21 cents per gallon. The commission was based on what it how much fuel commission Ada would need to be paid in order to provide him with a target income when coupled with his anticipated earnings from the convenience stores. The fuel commissions were never linked to the pump price of the fuel.

6.  Ada complained to Shell that he was not meeting his earning targets and in March 1996 Shell and Ada entered into a Amendment to Agency Sales Agreement for each station under which Ada switched to a "reimbursement model." True and accurate copies of the Amendment to Agency Sales Agreements are attached hereto to my 8/19/05 Declaration as **Exhibits 2(a) and (b).** Under the reimbursement model, Shell agreed that, in lieu of a fuel commission, it would pay Ada a monthly management fee to operate the stations and to reimburse him for an agreed upon list of monthly operating expenses, which were attached to Amendment to Agency Sales Agreements as Sheet 1.

7. As part of the reimbursement model, Shell agreed to pay the utilities (power and water) on the stations, and those utilities were then billed and paid directly by Shell.

8. Ada has been on the reimbursement model since March 1996, and Shell has been reimbursing his operational expenses, as set forth in Sheet 1 to Exhibits 2(a)&(b) since that time. Shell has been directly paying the power and water utility expenses on the stations since that time.

9. At all times since entering into the Agency Sales Agreements, Ada has been in possession of the stations and has been compensated in accordance with the Agency Sales Agreements and amendments thereto. Shell is current in its payments to Shell under the Amendment to Agency Sales Agreement.

10. The petroleum business on Guam is extremely competitive. In order to increase sales and promote brand loyalty, Shell has initiated various promotional programs over the years. Among these programs are the Lucky 7, Shell Serve and Citibank Discount programs which are referenced in ¶ 44 of the proposed amended complaint. Shell strongly encourages all operators to participate in these promotional programs, but participation is voluntary.

11. Ada has voluntarily participated in the Lucky 7, Shell Serve and Citibank Discount promotional programs.

12. Each of the matters raised in the breach of contract claim have been in effect for years, i.e. the reimbursement vs. cents per gallon compensation model went into effect in March, 1996, the Citibank discount program went into effect April 24, 2000, the Lucky 7 loyalty promotional program went into effect in March, 2002, the Shell Serve promotional program went into effect in January 15, 2004.

13. Ada agreed to participate in these programs, and Shell has abided by the terms of each program regarding any compensation was to have received.

14. Under the Citibank Discount program, customers who pay for fuel using a Citibank credit card are given a discount on their fuel purchase. Shell reimburses operators for the amount of the discount.

15. In order to receive the reimbursement, the operator is required to submit a request for reimbursement together with certain documentation giving evidence of the transaction.

16. Ada has been reimbursed in the past when he submitted reimbursement requests, but in recent years he has refused to submit reimbursement requests. Shell has repeatedly asked Ada to submit his reimbursement requests, but Ada has refused to submit the requested paperwork. All other operators submit reimbursement requests and receive prompt reimbursement; only Ada fails to request reimbursement on a regular basis.

17. Mr. Ada complains about bank fees he is charged on credit card transactions. Bank fees are items that Shell reimburses to Ada, based on a monthly fixed reimbursement agreement that has been in place since 1996. This amount is adjusted by the parties upon review of a profit and loss statement ("P&L") prepared by Ada and submitted to Shell on monthly basis. From 1996 through mid-1999, Ada submitted monthly P&Ls to Shell. However, since 1999, Ada has refused to provide these P&Ls to Shell. The importance of the P&Ls is that it allows Shell to review an operator's monthly operating expenses, to determine whether a particular expense was increased that would justify an increase in the reimbursement, and to negotiate adjustments of the monthly reimbursement of expenses. In this case, if the number of credit card users is increased due to a promotion or a trend in consumer spending, then Shell and Ada would review the P&Ls and the charges from the bank to determine whether the reimbursement to Ada should be increased to cover the merchant fees.

18. Shell has requested the P&Ls for over 5 years and in the course of discovery. Ada has refused to produce them. His excuse was that he stopped preparing them in 2000. However, in

a subsequent deposition of his sister Angela Ada Corpuz, she testified that she has information in her Quickbooks accounting program that can generate a Quickbooks P&L simply by pushing a button. The bank charges complained of by Mr. Ada do not have anything to do with the Citbank Visa discount program, but are instead charges levied by Mr. Ada's bank. Shell does not have any control over these charges, and has encouraged Ada to negotiate a better deal with his bank or switch his business to a bank which gives him better rates.

19. The only contractual agreement Shell has with Ada regarding bank fees is that, when Shell and Ada agreed to switch to a reimbursement model, Shell agreed to reimburse Ada $235 per month for card fees at the Barrigada station, and $180 a month for card fees at the Mangilao station. This is shown on Sheet 1, under "card fees", attached to Amendment To Agency Sales Agreement as Exhibits 2(a)& (b) to my Declaration of 8/19/05. Shell has reimbursed Ada these agreed upon amounts each month. These are the only amounts for which Shell is required to reimburse Ada on card fee charges.

20. The transaction fees are assessed on each credit transaction on Ada's account with the Bank of Guam. Shell had no idea that Ada had been paying these charges until July 2005. These transaction charges were first brought to Shell's attention in July 2005, when Slater submitted his expert's report. Had Shell known about the transaction expense through the submission of monthly P&Ls, Shell would have told Ada that other banks, i.e., Bank of Hawaii, did not charge a transaction charge, and Ada could have reduced and saved a substantial amount of money.

21. The Shell Serve Program was agreed to by all operators, including Ada. Shell recognized that the program might require operators to hire an additional employee per shift in order have an attendant available to pump gas at the self-service islands. The theory behind the program was that the Shell Serve offering would attract more customers into Shell stations to buy fuel (which

would be good for Shell), and that this would in turn translate into more business at the station's convenience store, which would be a great benefit to the operator since it would increase convenience store profits.

22. At the time the Shell Serve Program was instituted, Shell told the operators that, if the program created a loss for them (as a result of needing to hire additional staff), that Shell would consider reimbursing some of the additional staff costs. Shell made no promise to reimburse any costs unless the additional cost was justified.

23. Shell has repeatedly told Ada that it needed to see his monthly profit and loss statements to determine if he was legitimately incurring additional staffing costs, or whether he was overstaffed in some areas. This was not an onerous requirement since Ada is required to provide Shell with an unaudited income statement and balance sheet by the 15th day of each month.

24. Ada has only provided Shell with a breakdown of costs for the employees he claims to have hired because of the Shell Serve program; he has not provided Shell with his complete profit and loss statement and Shell has not been able to ascertain whether Ada has legitimately incurred extra cost because of this program.

25. The Lucky 7 is a loyalty program which rewards customer with Lucky 7 stamps when they buy fuel. Because the Lucky 7 program is intended to benefit both Shell and the operators by increasing fuel and convenience store sales, there is a cost sharing component to this program. When a customer redeems a Lucky 7 card for fuel or convenience store purchases, the operator sends the

///

///

///

redeemed card to Shell and Shell pays the operator $5.25 for each redeemed card; the operator bears $1.75 of the redemption price. This is the agreement Ada made when he began participating in the program.

26. Ada has complained about the program and said that he has not made money on the program. Shell has asked Ada to provided P&L statements to verify that he was actually not making money on the program. Ada has refused to provide this information.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 19th day of August, 2005.

By: _____
**PHILIP W. STALKER**