**CIVILLE & TANG, PLLC**
SUITE 200, 330 HERNAN CORTEZ AVENUE
HAGÅTÑA, GUAM 96910
TELEPHONE: (671) 472-8868
FACSIMILE: (671) 477-2511

*Attorneys for Shell Guam, Inc.*



**FILED**
DISTRICT COURT OF GUAM

SEP - 1 2005

**MARY L.M. MORAN**
**CLERK OF COURT**

## IN THE DISTRICT COURT OF GUAM

ANTHONY J. ADA,

      Plaintiff,

    vs.

SHELL GUAM, INC.,

      Defendant.

SHELL GUAM, INC.,

      Counterclaim
      Plaintiff,

    vs.

ANTHONY J. ADA,
      Counterclaim
      Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. CV00-00012

**MEMORANDUM OF POINTS AND**
**AUTHORITIES IN SUPPORT OF**
**SHELL GUAM, INC.'S MOTION**
**FOR SUMMARY JUDGMENT**

**ORIGINAL**

# TABLE OF CONTENTS

Page(s)

I. RELEVANT FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. LEGAL STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III. FEDERAL LAW CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A. No Genuine Issues of Fact in Dispute to support Ada's
       Claim That Dispute Is Subject to PMPA . . . . . . . . . . . . . . . . . . . . . . 4

        1. Ada does not buy fuel or set fuel prices . . . . . . . . . . . . . . . . . 5
        2. Ada operates free of market risks . . . . . . . . . . . . . . . . . . . . . 5

    B. PMPA language in Agency Agreements was inserted in
       error and does not control the nature of the relationship . . . . . . . . . . . 7

    C. This Court Retains Supplemental Jurisdiction After Dismissal
       of Federal Law Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

IV. STATE LAW CLAIMS

    A. Fraud Claims --Counts III & IV . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        1. Misrepresentation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
        2. Misrepresentation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
        3. No intention to defraud . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
        4. There is no evidence of justifiable reliance . . . . . . . . . . . . . . . 12
        5. No damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    B. Negligent Misrepresentation Claim . . . . . . . . . . . . . . . . . . . . . . . . . 13

V. NO BREACH OF COVENANT OF GOOD FAITH
   AND FAIR DEALING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

VI. CLAIM UNDER GUAM CONSUMER PROTECTION ACT . . . . . . . . . . . . . . . 15

VII. SHELL CANNOT BE ESTOPPED FROM DENYING . . . . . . . . . . . . . . . . . . 19
    INAPPLICABILITY OF PMPA

VIII. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# TABLE OF AUTHORITIES

## Cases

*Albingia Versicherungs A.G. v. Schenker Intern. Inc.,*
344 F.3d 931, 937 -938 (9th Cir. 2003), *opinion amended
and superseded on other grounds on denial of rehearing,*
350 F.3d 916 (9th Cir. 2003), *cert. denied,* 541 U.S. 1041 (2004) ................. 8-10

*Aguon v. Gutierrez,* 2002 Guam 14, ¶ 9 ........................................... 16

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242, 106 S. Ct. 2505 (1986) .......................................... 3-4

*Automatic Comfort Corp. v. D & R. Service, Inc.,*
620 F. Supp. 1349 (D. Conn. 1985) ........................................... 5, 7

*Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.,*
826 P.2d 710, 6 Cal.Rptr.2d 467 (Cal. 1992) ................................... 14

*Cates Construction, Inc. v. Talbot Partners,*
980 P.2d 407, 86 Cal.Rptr.2d 855 (Cal. 1999) ................................. 13

*Celotex Corp. v. Catrett,*
477 U.S. 317, 106 S. Ct. 2548 (1986) .......................................... 3

*Chodos v. West Publishing Co.,*
292 F.3d 992 (9th Cir. 2002) ................................................. 13

*Crogan v. Metz,* 303 P.2d 1029 (Cal. 1956) ...................................... 13

*Estate of Hall v. HAPO Fed. Credit Union,*
869 P.2d 116 (Wash.Ct.App.1994) ............................................ 19

*Executive Software North America, Inc. v. U.S. Dist. Court for
Cent. Dist. of California,* 24 F.3d 1545 (9th Cir. 1994) .......................... 10

*Farm Stores, Inc. v. Texaco, Inc.,*
763 F.2d 1335, 1339 (11th Cir. 1985) ......................................... 4-6

*Foley v. Interactive Data Corp.,*
   47 Cal.3d 654, 254 Cal.Rptr. 211, 765 P.2d 373 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Fox v. Pollack,*
226 Cal.Rptr. 532 (Ct.App.1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Guam v. Marfega Trading Co., Inc.,*
1998 Guam 4, ¶¶ 10-11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Hemlani v. Flaherty,* 2003 Guam 17, ¶ 9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*International Ass'n of Machinists and Aerospace Workers,*
*Local Lodge 964 v. BF Goodrich Aerospace Aerostructures Group,*
387 F.3d 1046 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Johnson v. Mobil Oil Corp.,*
553 F.Supp. 195, 200 (D.C.N.Y. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Lim v. The. TV Corp. Int'l,*
121 Cal.Rptr.2d 333 (Ct.App.2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*MacDonald v. Texaco, Inc.,*
713 S.W.2d 203, 205 (Tex. Ct. App. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Mannan v. G.S.W. Petroleum,*
594 S.W. 2d 222 (Tex. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Matsushita Elec. Indust. Co. v. Zenith Radio Corp.,*
475 U.S. 574, 586 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Miller v. Bristow,*
739 F. Supp. 1044 (D.S.C. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Mitsui Mfrs. Bank v. Superior Court,*
212 Cal.App.3d 726, 260 Cal.Rptr. 793 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Mobil Oil Guam, Inc. v. Young Ha Lee,*
2004 WL 1305314, *5 -6, 2004 Guam 9, ¶ 24 (Guam 2004) . . . . . . . . . . . . . . . . . . . . . . . 10

*Musick v. Burke,*
913 F.2d 1390 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Parker PPA v. Della Rocco, Jr.,*
252 F.3d 663 (2d Cir.2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Park v. Mobil Oil Guam, Inc.,*
  Superior Court of Guam Case No. CV0884-00 (Jan. 12, 2001) . . . . . . . . . . . . . . . . . . . . . 16

*Pasadena Live, LLC v. City of Pasadena,*
  8 Cal.Rptr.3d 233, 237 (Cal. Ct. App. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Pension Trust Fund for Operating Engineers v. Federal Ins. Co.,*
  307 F.3d 944 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Pro Sales, Inc. v. Texaco, U.S.A.,*
  792 F.2d 1394 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Robinson v. Shell Oil Co.,*
  519 U.S. 337, 117 S. Ct. 843, 136 L.Ed.2d 808 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Sigmon v. Widenshouse Service, Inc.,*
  638 F.Supp. 810 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Solomon v. North American Live and Cas. Ins. Co.,*
  151 F.3d 1132 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Storek & Storek, Inc. v. Citicorp Real Estate, Inc.,*
  122 Cal.Rptr.2d 267 (Cal.App. 1 Dist., 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Sun Valley Gasoline v. Ernst Enterprises, Inc.,*
  711 F.2d 138 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Transpacific Export Co. v. Oka Towers Corp.,*
  2000 Guam 3 ¶ 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Diebold, Inc.,*
  369 U.S. 654, 82 S. Ct. 993 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Von Grabe v. Sprint PCS,*
  312 F.Supp.2d 1285 (S.D. Cal. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Wilhelm v. Pray,* 186 Cal.App.3d 1324, (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Wilkinson v. Jones,* 2004 WL 1728593, *5,
  2004 Guam 14, ¶ 18 (Guam Terr., 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**Statutes**

15 U.S.C. § 2801, *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

28 U.S.C. § 1367 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

28 U.S.C. § 1447 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

28 U.S.C. § 1447(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

5 GCA § 32101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

5 GCA § 32103(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

5 GCA § 32103(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 18

5 GCA § 32108 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

6 GCA § 5106(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

20 GCA § 2120 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

California Civil Code § 3294 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Guam Civil Code § 3294 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**Rules**

Rule 56(c), Federal Rules of Civil Procedure Rule . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**Other Authority**

1 Witkin, Summary of Cal. Law (2003 supp.) Contracts, § 743, p. 449 . . . . . . . . . . . . . . . . . 14

## I.    RELEVANT FACTS

Shell Guam, Inc. ("Shell") is Guam corporation. Among other activities on Guam, Shell operates a network of service stations. In 1993 Shell entered into an Agency Sales Agreement with Anthony Ada ("Ada"), under which Ada became an operator of Shell's station and convenience store in Mangilao, Guam. This Agreement was for one year and was renewed in 1995 for a period of five years. In 1995 Shell also entered into a separate Agency Sales Agreement with Ada for Ada to operate a second station, this one in Barrigada, Guam. The Barrigada Agreement was for a one year period, and was thereafter renewed for a period of five years. Copies of each Agency Agreement are attached at **Exhibits 1(a)-(d)** to the Declaration of Phil Stalker in Support of Motion for Summary Judgment ("Stalker MSJ Decl.") filed herewith.

Due to a misinterpretation of law on Shell's part, each of the four Agency Agreements contained an opening paragraph, stating that the contract was a franchise agreement under the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. § 2801, *et seq.* The language varied slightly from contract to contract, but essentially provided as follows:

THIS AGREEMENT IS A FRANCHISE UNDER THE PETROLEUM MARKETING PRACTICES ACT ("PMPA"), 15 U.S.C. 2801 ET SEQ. THE TERM OF THIS FRANCHISE IS FOR A PERIOD OF NOT MORE THAN FIVE YEARS AS STATED IN SCHEDULE 2(A). SHELL MAY FAIL TO RENEW THE FRANCHISE RELATIONSHIP AT THE CONCLUSION OF THE INITIAL TERM BY NOTIFYING AGENT, IN ACCORDANCE WITH THE PROVISIONS OF 2804 OF THE PMPA, OF SHELL'S INTENTION NOT TO RENEW THE FRANCHISE RELATIONSHIP. THE PROVISIONS OF 2802 OF THE PMPA, LIMITING THE RIGHT OF A FRANCHISOR TO FAIL TO RENEW A FRANCHISE RELATIONSHIP ARE NOT APPLICABLE TO THIS TRIAL FRANCHISE.

The two service stations were built by Shell, paid for by Shell and Shell installed, owns and maintains all tanks, pumps, and equipment at the stations relating to the sale of fuel. Stalker MSJ Decl. ¶ 5; Agency Agreements § 7. Shell delivers fuel to the stations, Agreements §4(a); it does not sell the fuel to Ada. Stalker MSJ Decl. ¶ 6; Agreements 4(a). Ada collects the money from the fuel sales and remits the money, in full, to Shell. *Id.* ¶ 7; and Agreements §5(a). Ada is paid a commission for selling fuel. Initially, Ada was paid a commission on fuel sales of .18 cents per gallon, which in April 1993 was raised .21 cents per gallon. Stalker MSJ Decl. ¶ 8 and Ex.1(a),

-1-

Amend. #002 to Agency Agr. 2/23/93. Ada also operates a convenience store ("C-store")at each location. *Agreements § 3.* Ada is responsible for the operations of these stores, including the purchase of inventory, and he keeps all proceeds from the C-store sales except for 15% of gross sales[1] which he pays to Shell as rent on the stores.

In March 1996, Ada and Shell entered into a written agreement to modify Ada's commission for fuel from a cents-per-gallon model to a management fee-plus-reimbursement-model. Stalker MSJ. Decl. ¶ 9, and Exs 2(a) and (b). Under the reimbursement model, Shell agreed to pay Ada an agreed upon fixed sum every month to cover operational expenses for each station[2]. *Id.,* Sheet 1. Ada has been on the reimbursement model since March 1996 and Shell is current to him on payments under the reimbursement model. *Id.,* ¶ 9.

Beginning in 1996, Ada's performance as an operator began to deteriorate and Shell became dissatisfied. Stalker MSJ Decl. ¶ 14. In early 1999 Shell sought to end the relationship. *Ibid.* Under the Second Mangilao Agreement, the Agency Sales Agreement on the Mangilao station was scheduled to expire in February 1999. *Ibid.* In January 1999, just before the a Mangilao agreement expired, James Hammond, a Shell representative, met with Ada and discussed how Shell and Ada could amicably part ways. Among other things, Ada said that he didn't want to be perceived as a failure in the community, and that he wanted time make the transition to a new job. *Ada gave* Shell several options of how their relationship could be brought to a close. Among other things, Ada suggested that Shell could extend the Mangilao agreement one year and shorten Barrigada agreement one year so that the two agreements would terminate at the same time. A handwritten summary of Ada's concerns and suggested solutions was prepared by Mr. Hammond. Stalker MSJ Decl., Ex. 3.

---

[1]This amount varied from 17% to 15%, and appears at slightly different places in the Agreements. Since 1996 the amount has been fixed at 15% as shown on Sheet 2 attached to the 3/1/96 Amendment To Agency Sales Agreements, Stalker MSJ Decl. Exs. 2(a) and (b).

[2]Shell agreed to reimburse Ada as agreed upon amount for staff costs, assistant manager, accountant, bank fees, card fees, insurance, security, licenses, utilities (electricity, water, telephone), uniforms, stationery, maintenance, gardening, trash, cleaning, advertising and 4% gross receipts tax. Utilities are actually billed directly to paid directly by Shell. Stalker MSJ Decl. ¶ 10.

-2-

Shell accepted Ada's suggestion to extend the Mangilao agreement and shorten the Barrigada agreement by one year each. An agreement captioned Amendment of Agency was drafted by Shell and signed by Ada on March 25, 1999, reflecting the parties' agreement that the Mangilao agreement would be extended and the Barrigada agreement would be shortened so that the two agreements, and Shell's relationship with Ada, would terminate simultaneously on February 29, 2000. *See* Amendment of Agency, *supra*, and Hammond Decl. ¶ 5. In November, 1999, Ada unexpectedly notified Shell that he wanted to renew the agreements on the stations. *See 11/22/99 Ltr from Ada,* Stalker MSJ Decl., Ex 5. Shell responded that it was not going to renew the agreements. *See 12/10/99 Ltr. from Shell,* Stalker MSJ Decl. Ex 6.

On February 2, 2000 Ada filed suit just before the Amendment of Agency Agreement expired. On March 17, 2000, Ada obtained a Preliminary Injunction prohibiting Shell from "terminating the Agency Sales Agreements between the parties...." At all times since entering into the Agency Sales Agreements, Ada has been in possession of the stations and has been compensated in accordance with the Agency Sales Agreements and amendments thereto. Stalker MSJ Decl ¶ 20; Ada Depo 7/18/05 Depo TR 101:16-18.

## II.    LEGAL STANDARD

Summary judgment is proper under Rule 56(c) of the Federal Rules of Civil Procedure Rule "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c). The moving party, in this case Shell, bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 2514 (1986). On those claims on which Ada has the burden of proof, Shell meets its burden simply by pointing out the absence of evidence to create a genuine issue of material fact to support Ada's claim. *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990). Shell does not have to disprove Ada's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S. Ct. 2548 (1986). Although the Court views the facts in the manner most favorable to the non-moving party, *United States v. Diebold, Inc.*, 369 U.S. 654,

655, 82 S. Ct. 993, 994 (1962), the mere existence of some alleged factual dispute between the parties is not sufficient to overcome an otherwise properly supported motion for summary judgment. *Anderson, supra.* 477 U.S. 248-49. To defeat Shell's summary judgment motion, Ada must affirmatively set forth facts showing that there is a genuine issue on which a reasonable jury could find in its favor. *Id.* at 252. The non-movant must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby,* 477 U.S. at 249-50.

## III. FEDERAL LAW CLAIMS

**A.    No Genuine Issues of Fact in Dispute to support Ada's Claim That Dispute Is Subject to PMPA.**    Although Ada alleges in Counts I and II of the SAC that his relationship with Shell was that of a franchisee under the PMPA, in fact his relationship was that of an agent; Ada was neither a franchisor nor a dealer as those terms are used in the PMPA. Accordingly, Shell is entitled to summary judgment as a matter of law on Counts I and II of the SAC.

In 1978 Congress enacted the Petroleum Marketing Practices Act, 15 U.S.C. §§ 2801, et seq., ("PMPA") "to govern the termination of franchise relationships for the sale of motor fuel." *Farm Stores, Inc. v. Texaco, Inc.,* 763 F.2d 1335, 1339 (11th Cir. 1985). The PMPA applies to Guam. *See,* 15 U.S.C. § 2808(19).

The PMPA's termination and nonrenewal restrictions and requirements apply only to franchises and franchise relationships as defined in the PMPA.

Congress intended the PMPA to apply only to the franchise relationship between a "refiner," "distributor," or "retailer" of motor fuels under a brand name. Unless the parties meet the statutory definition of one of these terms, there is no coverage under the PMPA and general contractual principles govern.

*Farm Stores, Inc.,* 763 F.2d at 1339-40.

To come within the ambit of the PMPA the parties must come within the relevant statutory definitions. In this case, it is undisputed that Shell Guam, Inc., is a "distributor" as defined in the

-4-

PMPA. Ada is quite clearly not a "distributor."[3] Equally clear is that Ada does not fall within the statutory definition of "retailer." To come within the provisions of the PMPA and its definition of a "retailer" Ada must be a "purchaser" of motor fuel. See *Sigmon v. Widenhouse Service, Inc.*, 638 F. Supp. at 810 ("What is at issue is whether the plaintiff falls within the statutory definition of a 'retailer.' To come within the provisions of the PMPA and its definition of a 'retailer' the plaintiffs must be a 'purchaser' of motor fuel. 15 U.S.C. § 2801(7)").

      **1.**     **Ada does not buy fuel or set fuel prices.**     A dealer purchases the fuel it sells, either directly from an oil company or from a middleman. Stalker MSJ Decl. ¶ 13. A dealer must pay for the fuel which is delivered to the station, and the fuel them becomes the dealer's. *Ibid.*

With respect to the two stations Ada operates, there is no genuine dispute regarding the fact that Ada does not buy fuel from Shell. Shell delivers fuel to the stations operated by Ada, but does not charge him for the fuel, and title to the fuel is never transferred to the Ada. *Id.* ¶ 6. The fuel continues to be carried on Shell's inventory, and the transfer from the tank farm to the stations Ada operates is recorded as a stock transfer, i.e. the movement of Shell's fuel inventory from one Shell location to another. *Ibid.* Ada sells the fuel at a price set by Shell, Agreements ¶ 5(a)(1) ("Agent will charge from price to price for the motor fuel as Shell determines from time to time"), and is required to remit to Shell all proceeds from the sale of the fuel. Ada is paid a commission for the fuel sales, which since March 1996 has consisted of a monthly management fee and reimbursement of agreed upon operational expenses. *Id.*, ¶ 8-11, Ex 2(a) and (b).

Under the express language approach, it has been held that a party is not a "retailer" if it does not "purchase" the motor fuel from the refiner or distributor. In *Farm Stores, Inc.*, the plaintiff,

---

[3]Courts have generally considered the term "distributor" to be limited to middlemen rather than dealers selling to the public at retail. *Farm Stores, Inc.*, 763 F.2d at 1341; *Miller v. Bristow,* 739 F. Supp. 1044, 1048-49 (D.S.C. 1990) (examining cases and concluding that "courts are in agreement that Congress intended to include within the definition of 'distributor' only a middleman and not one who sells products to the public at retail"). In *Automatic Comfort Corp. v. D & R. Service, Inc.*, 620 F. Supp. 1349, 1354 (D. Conn. 1985), the court explained:

> Defendant is not a distributor. Though it receives gasoline in a narrow sense of the word, as the custodian while the gasoline is stored for retail sale at the station, it does not sell gasoline to its own accounts.... The contemplation of Congress was that a distributor was a middle man, a jobber, not an alter ego retailer.

like Ada in this case, did not pay for the gasoline inventory until it was sold, take title, bear the risk of loss of the gasoline (except for its own carelessness), retain any funds from the sale of the gasoline to motorists, or set the price or assume the market risk in fluctuations in gasoline prices. *See, Farm Stores, Inc.*, 763 F.2d at 1340. The court concluded that it was "obvious" that the "consumer is the purchaser of the gasoline," Ibid., not an agent operator like Ada.

   **2.**  **Ada operates free of market risks.** Ada is not subject to any market risks in the sale of fuel. The two service stations were built by Shell, paid for by Shell and Shell installed owns and maintains all tanks, pumps, and equipment at the stations relating to the sale of fuel. Stalker MSJ Decl. ¶ 5, Agreements §2 & 7. He is paid an agreed upon management fee and reimbursement of operational expenses at each station. *See, Amendment to Agency Sales Agreements, supra.* Ada's commission from the sale of fuel does not even depend on the volume of fuel he sells, nor is it dependent on the price of the fuel. Stalker MSJ ¶ 12, Ada 7/7/05 Depo TR 132:5-13. The risk of economic loss due to depressed prices ( admittedly not a current worry) and reduced sales volume also remain with Shell since Shell is only paid as, and at the price that, the gasoline is sold to motorists. *See, Farm Stores, supra.* at 763 F.2d at 1345. Shell pays the tax due on the sale of the fuel at Ada's stations. *See*, Agreements ¶ 5(e) ("Shell will pay the Gross Receipts Tax (GRT) due on the sale of its motor fuel."). The only risk Ada takes with respect to the sale of fuel is liability for excess losses "of stock." *See*, Agency Agreements § 5(a)(5). Ada has never been assessed any charges for excessive stock losses. Stalker MSJ Decl. ¶ 21.

  Ada does bear the market risks with respect to the convenience store operations, and he pays Shell rent of 15% of gross sales "of other petroleum products [i.e. non-fuel], equipment, sundries, food, and all other items sold on the premises." Convenience store and non-fuel sales do not fall within the scope of the PMPA. *Pride v. Exxon Corp.*, 911 F.2d 251, 254 (9th Cir. 1990) (sale of unbranded gasoline); *see also Gelb v. Amoco Oil Co.*, 29 F.3d 1050, 1057 (6th Cir. 1994) (because PMPA only regulates the termination of "motor fuel marketing" franchises, the termination of a non-gas franchise does not implicate the PMPA preemption clause). The court in *Farm Stores* addressed this issue and concluded that "there is absolutely no basis for assuming that Congress intended the

PMPA to benefit independent grocers or carwash operators. 763 F.2d at 1345 (quoting *Johnson v. Mobil Oil*, 553 F.Supp. at 200) ("[t]he PMPA, which protects franchisees only with respect to the sale of motor fuel".)

**B.     PMPA language in Agency Agreements was inserted in error and does not control the nature of the relationship.**    Ada claims that the Agency Sales Agreements are subject to the PMPA based on certain language which is found in each of the Agency Sales Agreements. That language appears in upper case at the beginning of each of the four Agency Sales Agreements, as described in more detail in § 1 above, and began with the sentence "THIS AGREEMENT IS A FRANCHISE [OR TRIAL FRANCHISE] UNDER THE PETROLEUM MARKETING PRACTICES ACT ("PMPA"), 15 U.C.C. [SIC] 2801 ET SEQ." The Termination and Non-Renewal provisions found at ¶ 15 of the Agreements also tracks the language of the PMPA. Despite these provisions, when read as a whole it is indisputably clear that Ada was an agent operator and not a dealer.    The Agreements in dispute are entitled "Agency Sales Agreement" and throughout the documents Ada is referred to as the "Agent."    The PMPA language and the language describing Ada as an agent are inconsistent but, in any case, do not control a court's determination of whether the agreement and relationship is covered by the PMPA. *See Automatic Comfort, Corp.*, *supra.* at 620 F. Supp. at 1354-55. It would appear that the parties inadvertently contractually incorporated portions of the PMPA in the Agreements. This, however, is not sufficient to create a cause of action under the PMPA. *See Sigmon v. Widenshouse Service, Inc.*:

> Plaintiffs argue that this reference in the contract to the PMPA is an important revelation as to its relationship with the defendant, and perhaps even dispositive of that relationship. *The Court finds this language inconclusive at best, it is the relationship established by the entire contract and the subsequent performance of it that is relevant to the PMPA's application. This provision's inclusion in the contract could have been included due to inadvertence, hard bargaining by the plaintiffs or a variety of other reasons beside evidencing an intent to be governed by the PMPA. The Court did consider this contract reference in determining the PMPA applicability, but however free the parties are to incorporate by reference statutory provisions as terms of their contract, they do not possess the same freedom to create statutory coverage and thus federal jurisdiction.* (emphasis added)....

... If Congress intended the type of relationship in this case to be covered by the PMPA, its inclusion must lie within Congress. Cf. Sedima S.P.R.L. v. Imrex, Co., Inc., 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) (Supreme Court unwilling to correct RICO statute as correction must lie with Congress).

*Sigmon*, 638 F. Supp. at 813.

## C.     This Court Retains Supplemental Jurisdiction After Dismissal of Federal Law Claims

Assuming the Court determines that the relationship between Shell and Ada is not a franchise relationship withing the meaning of the PMPA and therefore grants Shell's motion for summary judgment as to Counts I and II of the SAC, the Court has the discretion to retain jurisdiction and grant summary judgment on the state law claims. *See Albingia Versicherungs A.G. v. Schenker Intern. Inc.,* 344 F.3d 931, 937 -938 (9th Cir. 2003), *opinion amended and superseded on other grounds on denial of rehearing,* 350 F.3d 916 (9th Cir. 2003), *cert. denied,* 541 U.S. 1041 (2004).

In *Albingia Versicherungs A.G. v. Schenker Intern. Inc.,* the court discussed the relationship between the federal removal statute and the supplemental jurisdiction statute, and their effect on the district court's exercise of jurisdiction over state claims after a dismissal of the federal claims. *See id.* at 937. There, a case stating both federal and state law claims was removed from state court to federal court. The district court "had a basis of original jurisdiction because of the federal question raised by [the plaintiff's] Warsaw Convention claim." *Id.* at 936. The removal of the case to federal court "was without question proper at the time it was accomplished, because of the Warsaw Convention claim, so the district court plainly had supplemental jurisdiction at the time [of removal] over the state law claims." *Id.* The district court held in a summary judgment order that the Warsaw Convention did not apply and consequently dismissed the Warsaw Convention claim. *Id.* On appeal, the Ninth Circuit rejected the argument that once dismissing the Warsaw claim for which removal was premised, the district court lost jurisdiction to decide the state law claims. *Id.* In analyzing the issue, the Ninth circuit acknowledged the well-settled rule that under the prior version of the removal statute, 28 U.S.C. § 1447,[4] "a federal district court retains 'the power to hear claims that would not [have been] independently removable after the basis for removal jurisdiction is

---

[4] The present removal statute was a result of amendment in 1988. *See Albingia,* 344 F.3d at 937 n.14.

dropped from the proceeding." *Albingia*, 344 F.3d at 937. The court found that this rule survived notwithstanding the amendment to section 1447(c).

The Ninth Circuit indicated that confusion on the issue was prompted by the language of the amended section 1447(c). Under 28 U.S.C. § 1447(c) as amended, a district court must remand a case "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction. . . ." *Albingia*, 344 F.3d at 937 (quoting 28 U.S.C. § 1447(c)). Title 28 U.S.C. § 1367, which governs supplemental jurisdiction, "says that district courts 'shall have' jurisdiction over the non-federal claims forming part of the same case or controversy, which they 'may decline to exercise' under denoted circumstances." *Albingia*, 344 F.3d at 937 (quoting 28 U.S.C. § 1367(c)). In analyzing the issue of the district court's discretion to retain jurisdiction under section 1367 *vis-à-vis* the mandatory removal language of section 1447(c), the court explained:

> Here is how we reconcile the "may decline to exercise" language of the supplemental jurisdiction statute with the "shall be remanded" language of the procedure after removal statute: if state law claims are asserted as part of the same case or controversy with a federal claim, the district court has discretion to exercise supplemental jurisdiction over the remaining state law claims and the mandatory remand provision of the procedure after removal statute does not apply.

*Id.* The court further clarified that once the district court accepts supplemental jurisdiction, it need not necessarily decline jurisdiction over the state claims. The Ninth Circuit agreed with the Second Circuit's reasoning in *Parker PPA v. Della Rocco, Jr.*, 252 F.3d 663 (2d Cir.2001), that "section 1447(c) does not mean that if the federal claim drops out, the district court must remand; it means that if there is no jurisdiction-federal question, supplemental, diversity, or otherwise-the district court must remand the removed case rather than dismissing it." *Id.* The Ninth Circuit adopted this interpretation, explaining that "our cases already bear this out." *Id.* The court stated:

> [N]ow we hold explicitly what, . . . we have held implicitly: . . . Section 1447(c) does not mean that if a facially valid claim giving rise to federal jurisdiction is dismissed, then supplemental jurisdiction is vitiated and the case must be remanded. Once supplemental jurisdiction exists, it remains, subject to the discretionary provision for remand in section 1441.

*Id.* Here, the SAC alleged a claim for violation of the PMPA, over which this court had subject matter jurisdiction. The Court clearly has supplemental jurisdiction over the state claims. The

question of whether a gas station operator alleges a federal cause of action under the Petroleum Marketing Practices Act definitional section is a question which goes to the merits of the action and is not a dismissal on the basis of subject matter jurisdiction. *Sun Valley Gasoline v. Ernst Enterprises, Inc.*, 711 F.2d 138, 140 (9th Cir. 1983) ("The ability of Sun Valley to allege a claim that comes within the definitional reach of the PMPA is a matter that goes to the merits of the action."); *Pro Sales, Inc. v. Texaco, U.S.A.*, 792 F.2d 1394, 1398 (9th Cir. 1986) (same). In accordance with *Albingia*, because a dismissal of the PMPA claims in this action on the ground that a franchise relationship does not exist under the PMPA is a decision on the merits, the Court has discretion to retain supplemental jurisdiction over the Guam law claims. *See generally, Albingia*, 344 F.3d at 937-38. The Court therefore has the jurisdiction to render summary judgment on those claims.[5]

## IV. STATE LAW CLAIMS

**A.    Fraud Claims --Counts III & IV**. The SAC alleges two state law causes of action involving permutations of fraud, to wit: Count III, Fraudulent Inducement, and; Count IV, Intentional Misrepresentation. The elements of fraud are: "(1) a misrepresentation; (2) knowledge of falsity (or scienter); (3) intent to defraud to induce reliance; (4) justifiable reliance; and (5) resulting damages." *Transpacific Export Co. v. Oka Towers Corp.*, 2000 Guam 3 ¶ 23. The tort of intentional misrepresentation has the same elements as fraud. *See Lim v. The. TV Corp. Int'l*, 121 Cal.Rptr.2d 333, 339 (Ct.App.2002). There are no facts in issue which would support a finding in Ada's favor as to the 2nd, 3rd, 4th and 5th elements of fraud. Under Guam law, "The absence of any of these required elements will preclude recovery." *Trans Pacific Export Co. v. Oka Towers Corp.*,

---

[5]    The exercise of discretion in this case to retain the local law claims would further the underlying objectives of accommodating values of "economy, convenience, fairness, and comity." *Executive Software North America, Inc. v. U.S. Dist. Court for Cent. Dist. of California*, 24 F.3d 1545, 1557 (9th Cir. 1994). Remanding the claims to the local courts at this stage, where even after five years of on-going litigation Ada has not produced evidence to withstand summary judgment on his local claims, would result in an unwarranted waste of further judicial resources. Moreover, considering the rigorous nature in which the parties have prosecuted this case in this Court, a decision on the state claims would not be unfair to the parties and, in fact, would be of particular convenience to the parties. Additionally, the majority of Ada's local claims are not novel questions of local law. *See e.g. Hemlani v. Flaherty*, 2003 Guam 17, ¶ 9 (discussing claims for fraud, negligent and intentional misrepresentation); *Transpacific Export Co. v. Oka Towers Corp.*, 2000 Guam 3 (analyzing a fraud claim); *Mobil Oil Guam, Inc. v. Lee*, 2004 Guam 9, ¶ 24 (analyzing a claim of equitable estoppel); *see Guam v. Marfega Trading Co., Inc.*, 1998 Guam 4, ¶¶ 10-11 (ruling on the Deceptive Trade Practices Act; *Mobil Oil Guam, Inc. v. Young Ha Lee*, 2004 Guam 9 (addressing claims alleging violations of the PMPA).

2000 Guam 3, ¶ 23; Wilkinson v. Jones 2004 WL 1728593, *5, 2004 Guam 14, ¶ 18 (Guam Terr.) (Guam Terr.,2004); *see also, Wilhelm v. Pray,* 186 Cal.App.3d 1324, (1986).

    **1.**    **Misrepresentation**. Shell does not dispute that it incorrectly included language in the Agency Sales Agreements indicating that the agreements were Trial Franchise or Franchise Agreements within the meaning of the PMPA.

    **2.**    **Knowledge of falsity.** There are no genuine issues of fact to suggest that, at the time Shell made these representations, it knew them to be false. The only evidence on this issue is that Shell always intended Ada to be an agent operator and that it thought the PMPA language was required by law. Stalker MSJ Depo. TR 123:1-25. The fact that Shell was mistaken in its belief that the PMPA language needed to be included in the Agency Sales Agreements, without any other evidence of knowledge of falsity, cannot sustain a finding of the critical element of scienter.

    **3.**    **No intention to defraud**. There is no evidence to support Ada's contention that Shell included this language with the intention of defrauding Ada. Ada admits that Shell provided him with drafts of the Agency Sales Agreements before he was asked to sign them, Ada 7/7/05 Depo TR 68:4-8, that he chose not to have a lawyer review them, Ada 7/7/05 Depo TR 68:16-18 that he did not discuss the terms with Shell. Ada 7/7/05 Depo TR 69:1-7. Shell's president has testified that Shell erroneously believed that the PMPA language was required, notwithstanding the fact that Ada was going to be an agent operator and not a dealer. Stalker Depo TR 126-127. Given that the inclusion of the PMPA language had the effect of making it more difficult for Shell to terminate the Agency Sales Agreements, there is no reason why Shell would include this language especially since Ada has testified that he had no idea what the PMPA was when he signed any of the Agency Sales Agreements, Ada 7/7/05 Depo TR 110:1-3; 112:13-16, and Ada did not ask for any negotiations. *Id.*, 112:2-5. Ada has no evidence that Shell acted with the requiste scienter needed to prove the fraud allegations. *See, e.g., Vucinich v. Paine, Webber, Jackson & Curtis, Inc.,* 739 F.2d 1434, 1436 (9th Cir. 1984) (stating in a securities fraud case that "[a] plaintiff, however, must offer more than conclusory allegations, and if the defendant presents

affidavits or other evidence establishing a lack of scienter, the plaintiff must come forward with some affirmative showing. *See Vaughn v. Teledyne, Inc.*, 628 F.2d 1214, 1220 (9th Cir.1980).").

**4.     There is no evidence of justifiable reliance.**     In his deposition testimony, Ada indicated that he did not know what the PMPA was at the time he signed any of the four Agency Agreements, Ada 7/7/05 Depo TR 112:13-16,  he did not pay any particular attention to the PMPA language, *id.*, 112:17-24, and he did not ask Shell any questions about the PMPA language, Absent even the most perfunctory effort to understand the Agreement, there is no evidence to suggest that Ada relied on the PMPA representations in making the decision to enter into the Agreements. *See, In re Lau Capital Funding, Inc.,*  321 B.R. 287, 303 (Bankr. C.D.Cal.,2005) ("To the extent that the Trustee argues that Trevino's representation that he intended to pursue the 18 customer relationships was fraudulent, the provisions of the contract itself make this theory untenable. As Judge Carter noted in *Baymiller v. Guarantee Mutual Life Co.,* 2000 WL 33774562 (C.D.Cal.2000), "there cannot be reasonable reliance upon misrepresentations or a failure to disclose that are contradicted by the express language of the . . . contract." While Lau may have relied on the intention expressed by Trevino to pursue the relationships, that reliance was not justified in light of the contractual provisions giving HSA such broad discretion.").

**5.     No damages.**     There are no genuine issues of fact supporting Ada's claims for damages. It is undisputed that Ada has at all times relevant to his claims been in possession of the stations and continued to operate them on the same terms as before the lawsuit was filed. Stalker MSJ Decl. ¶ 20. Ada continues to operate the stations pursuant to the reimbursement model he agreed to in March 1996, Id. ¶ 19, and Ada admits that Shell is current in payments to him under the reimbursement model.  In light of these uncontroverted facts, Ada has not been damaged. *See Chevron U.S.A. Inc. v. El-Khoury,* 2002 WL 31256160, at *3 (C.D.Cal. 2002) ("Defendant cannot logically claim actual damages on the basis of PMPA violations, since, by virtue of the parties' 'standstill agreement and the stay order issued by this Court, Defendant has remained in possession at all times and his franchise has not actually been terminated."). There are no genuine issues of fact in dispute to support the fifth element of fraud.

**B.    Negligent Misrepresentation Claim.**  Ada also alleges, as Count V, the state law claim of Negligent Misrepresentation. The elements of a cause of action for negligent misrepresentation are: "(1) a misrepresentation of a past or existing material fact; (2) without reasonable grounds for believing it to be true; (3) with intent to induce another's reliance on the fact misrepresented; (4) ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed, and (5) damages." *Fox v. Pollack,* 226 Cal.Rptr. 532, 537 (Ct.App.1986). The elements for negligent misrepresentation are the same as those for intentional misrepresentation, with the exception of the scienter requirement. For the reasons set forth in the above discussion regarding the intentional representation claim, summary judgment should be granted on the negligent misrepresentation claim.

## V.    NO BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

In Count VI of the SAC, Ada claims a breach of the covenant of good faith and fair dealing. It appears that this is a tort claim given that punitive damages are sought.[6]    There is no independently cognizable tort claim for breach of the implied covenant of good faith and fair dealing and the tort claim alleged in Count VI should be dismissed.

"By now it is well established that a covenant of good faith and fair dealing is implicit in every contract." *Cates Construction, Inc. v. Talbot Partners*, 980 P.2d 407, 415, 86 Cal.Rptr.2d 855, 864 (Cal. 1999); *see also Chodos v. West Publishing Co.*, 292 F.3d 992, 996 (9th Cir. 2002) ("California law, like the law in most states, provides that a covenant of good faith and fair dealing is an implied term in every contract."). "The essence of the implied covenant is that neither party to a contract will do anything to injure the right of the other party to receive the benefits of the contract." *Cates Construction, supra.* However, "[b]ecause the covenant of good faith and fair dealing essentially is a contract term that aims to effectuate the contractual intentions of the parties, 'compensation for its breach has almost always been limited to contract rather than tort remedies.'"

---

[6]Title 20 GCA § 2120 authorizes punitive damages "[i]n an action for breach of an obligation not arising from contract." Formerly codified as Section 3294 of the Guam Civil Code, *see* 20 GCA § 2120, Source, this section was borrowed from Section 3294 of the California Civil Code. California courts have held that under Section 3294 punitive damages "may not be granted in an action based on a breach of contract even though the defendant's breach was wilful or fraudulent." *Crogan v. Metz*, 303 P.2d 1029, 1033 (Cal. 1956); *see also Von Grabe v. Sprint PCS*, 312 F.Supp.2d 1285, 1308-09 (S.D. Cal. 2003) ("It is well settled that, under California law, a plaintiff may not recover punitive damages for breach of an obligation arising out of a contract.").

*Cates*, 980 P.2d at 416, 86 Cal.Rptr.2d at 865 (quoting *Foley v. Interactive Data Corp.*, 765 P.2d 373, 389, 254 Cal.Rptr. 211, 227 (Cal. 1988). Currently, California courts "recognize[] only one exception to that general rule: tort remedies are available for a breach of the covenant in cases involving insurance policies." *Ibid.; see also Pension Trust Fund for Operating Engineers v. Federal Ins. Co.* 307 F.3d 944, 955 (9th Cir. 2002) ("Generally, no cause of action for the tortious breach of the implied covenant of good faith and fair dealing can arise unless the parties are in a 'special relationship' with 'fiduciary characteristics.' *Mitsui Mfrs. Bank v. Superior Court,* 212 Cal.App.3d 726, 730, 260 Cal.Rptr. 793 (1989) (relying on *Foley v. Interactive Data Corp.,* 47 Cal.3d 654, 692-93, 254 Cal.Rptr. 211, 765 P.2d 373 (1988)). Thus, the implied covenant tort is not available to parties of an ordinary commercial transaction where the parties deal at arms' length. *Mitsui*, 212 Cal.App.3d at 733, 260 Cal.Rptr. 793.

Even if Ada's claim were viewed as a contract claim, for which punitive damages would not be available, there could not, as a matter of law, be a breach of the implied covenant because the Agency Sales Agreements authorized the non-renewal by Shell. "[A]n implied covenant of good faith and fair dealing cannot contradict the express terms of a contract." *Storek & Storek, Inc. v. Citicorp Real Estate, Inc.,* 122 Cal.Rptr.2d 267, 276 (Cal.App. 1 Dist.,2002) (citing *Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.,* 826 P.2d 710, 728, 6 Cal.Rptr.2d 467, 485(Cal. 1992); *see also Pasadena Live, LLC v. City of Pasadena,* 8 Cal.Rptr.3d 233, 237 (Cal. Ct. App. 2004) (" 'The implied covenant of good faith and fair dealing is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated by the contract.' (1 Witkin, Summary of Cal. Law (2003 supp.) Contracts, § 743, p. 449.)."); *Solomon v. North American Live and Cas. Ins. Co.*, 151 F.3d 1132, 1137 (9th Cir. 1998) ("*Carma* made equally clear that a party cannot be held liable on a bad faith claim for doing what is expressly permitted in the agreement."). "[P]arties can contract explicitly to engage in activities that might otherwise be forbidden by the implied covenant of good faith." *Solomon*, 151 F.3d at 1137.

In this case Shell did not renew the agreements as expressly authorized by the agreements. **Cite Agreements, sections etc.** As was the case in *Solomon*, "[b]oth terminations [non-renewals] were performed pursuant to express terms of the contract. As such, both prohibit a bad faith claim as a matter of law." *Solomon*, 151 F.3d at 1137.

## VI.    CLAIM UNDER GUAM CONSUMER PROTECTION ACT

Shell is entitled to summary judgment on Ada's claim under Guam's Deceptive Trade Practices-Consumer Protection Act, 5 GCA §32103(c), et seq. First, the claim is barred by the statute of limitations. *See,* Shell's Answer, Seventh Affirmative Defense. Under 5 GCA § 32121, actions under this Act must be brought within three years of "the date on which the . . . deceptive act or practice . . . occurred or . . . [was] discovered, or in the exercise of reason able diligence should have discovered . . . ." 5 GCA § 32121. It is undisputed that the last Agency Agreement became effective on February 1, 1996. The initial complaint by Ada was filed on February 2, 2000, which was more than three years from the date of the alleged deceptive practice. Ada's claim can only be timely if the court finds that Ada, despite due diligence, did not know about the claim until a later date. There are no facts to suggest due diligence on Ada's part. To the contrary, he admits that he scarcely read the Agreements, that he failed to have the documents reviewed by an attorney and that he didn't ask Shell any questions about the Agreements. Such indifference falls well below the threshold of due diligence. Had Ada simply read the documents, he would have noted the repeated references to him as "agent," the language that "neither party is obligated to renew this Agreement," *see,* Agreement 15(b), and the provisions that he did not buy the fuel from Shell, *see,* agreements § 4(a), and that he was required to sell the fuel at the price set by Shell, Agreements § 5(a). All of these factors should have alerted him to the fact that his relationship with Shell did not fall within the coverage of the PMPA.

The Guam Deceptive Trade Practices - Consumer Protection Act ("DTPA") is found in Title 5 GCA § 32101, *et seq.* Section 32110(a) requires that notice be given prior to the filing a lawsuit seeking damages for actions in violation of the Act. The notice requirement provides:

> As a prerequistite to filing a suit seeking damages under this chapter by a consumer
> not represented by the Attorney General, a consumer shall give written notice to the

> person at least thirty days before the filing of the suit advising the person, in reasonable detail, of the consumer's specific complaint and the amount of actual damages and expenses, including attorneys' fees, if any, reasonably incurred by the consumer in asserting the claim against the party . . . .

Title 5 GCA § 32110(a).

Ada's DTPA must be dismissed for failure to comply with the notice requirement as set forth by statute. Guam Superior Court cases have interpreted section 32110(a) strictly in conformance with the plain language of the statute. In *Park v. Mobil Oil Guam, Inc.*, Superior Court of Guam Case No. CV0884-00 (Jan. 12, 2001),[7] the plaintiff did not give pre-suit notice of the action prior to filing the complaint as required under section 32110(a). The defendant, Mobil Oil, requested dismissal of the plaintiff's claim alleging a violation of the DTPA based on the defect in notice. In granting Mobil's motion, the court looked to the plain language of the statute, and found that "[t]he plain language uses the term 'prerequisite.' The term prerequisite denotes that the required act must come first. The Court finds that the language is clear. . . . [T]he Court finds that a failure to comply with the thirty (30) day pre-filing notice results in a dismissal of the suit until such time as the party comes into compliance with the Act." *Id.*

While there is no stated legislative intent regarding section 32110(a) of Guam's DTPA, courts may look to other provision of the statute to discern legislative intent. *See International Ass'n of Machinists and Aerospace Workers, Local Lodge 964 v. BF Goodrich Aerospace Aerostructures Group*, 387 F.3d 1046, 1051 (9th Cir. 2004) ("In analyzing a statutory text, we do not look at its words in isolation. . . . Thus, we look not only to 'the language itself, [but also to] the specific context in which that language is used, and the broader context of the statute as a whole.'") (quoting *Robinson v. Shell Oil Co.,* 519 U.S. 337, 341, 117 S. Ct. 843, 136 L.Ed.2d 808 (1997)); *cf. Aguon v. Gutierrez,* 2002 Guam 14, ¶ 9 (stating that in interpreting local statutes, the "statute's context includes looking at other provisions of the same statute and other related statutes.") (citations omitted). It is evident that the local legislature similarly found the notice requirement to promote settlement and resolution of the claim prior to the filing of a lawsuit. This is manifest from the

---

[7] The Decision and Order is attached as Exhibit [A].

provisions of the notice statute which allows for the inspection of goods during the 30 day period, and which contemplates offers of settlement. *See* 5 GCA § 32110(a), (c).

Here, Ada filed its suit on February 23, 2000. Ada did not send Shell any notice advising Shell of his complaint until May 24, 2001. The state specifically requires that notice be sent prior to the filing of a "suit" seeking damages under the DTPA. As was determined by the Guam Superior Court in *Park v. Mobil Oil, supra*, the provisions of the notice requirement should be read in accordance with their plain meaning. There is no doubt that this suit seeks damages for violation of the Act. Ada was therefore required, under section 32110(a), to send the required notice, and a failure to send the required notice mandates a dismissal of Ada's claim and precludes Ada from recovering under the DTPA. By failing to give the required notice prior to filing suit, at which time Ada clearly knew of the facts giving rise to his DTPA claim, Ada has undermined the patent purposes of the statute to encourage the settlement of DTPA claims prior to the filing of a lawsuit.

Furthermore, Ada is not protected under the DTPA and therefore cannot claim damages under the statue. Shell previously filed a motion to dismiss on April 16, 2002, seeking dismissal of the DTPA claim for a failure to state a claim under Rule of Civil Procedure 12(b)(6). In the motion to dismiss, Shell argued that Ada is not a consumer under the DTPA. Shell argued that the purpose of the DTPA is to protect "consumers," and Ada is not a "consumer" as contemplated by the Act, but rather, Ada was an agent.

The Court declined to dismiss Ada's DTPA claim, finding that the facts were not sufficiently developed to enable the Court to make a determination at that time of whether Ada's activities with regard to *non-fuel* products could be "characterized as 'business use' or 'commercial use'" within the definition of a "business consumer" under the Act. Order, p. 5 (Apr. 16, 2002). Notably, the Court stated that its denial of the motion to dismiss this claim did not preclude Shell "from raising this motion again after further discovery and factual development." D&O, p. 5 (Apr. 16, 2002).

Upon further pre-trial discovery, it is abundantly clear that Ada is not a consumer as defined under the DTPA.

The purpose of the DTPA is to "protect *consumers* against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty, and to provide efficient and economical procedures to secure such protection." 5 GCA §32108. Establishing a consumer status is an element of a DTPA claim. *See MacDonald v. Texaco, Inc.*, 713 S.W.2d 203, 205 (Tex. Ct. App. 1986) (interpreting a similar Texas statute).

The Guam DTPC defines a "Consumer" as an individual...who seeks or acquires by purchase or lease, any goods or services..."5 GCA §32103(c). Similarly, a "Business Consumer" is defined as "an individual...who seeks or acquires by purchase or lease, any goods or services for commercial or business use..." 5 GCA §32103(a).

In interpreting a similar Texas Deceptive Practices Act statute defining consumer[8], the Court in *Mannan v. G.S.W. Petroleum*, 594 S.W. 2d 222 (Tex. 1980) held that the Plaintiff, an operator of a service station, was not a "consumer" since Defendant (oil company) was able to establish through depositions that the gas was sold on a consignment basis and Defendant was the owner of the gas at all times, until Plaintiffs, as its agent, sold it to the public. *Ibid.* at p. 223. The Court held the provisions of the Deceptive Practices - Consumer Protection Act did not apply since the gas was sold on consignment and the Defendant was at all times the owner of the gasoline. The Plaintiffs were therefore neither purchasers of gasoline nor consumers, but were mere sales agents. *Id.*

In this case, the Agency Agreements confirm that the motor fuel is sold to Ada on a consignment basis as provided at paragraph 4.a. of the Agency Agreements.

Ada has admitted that at all times Shell owned the fuel and that Ada merely sold the fuel for Shell on a consignment basis. Ada Depo. 7/7 Tr. 46:9-10; 49:23-25; 50:1-20; 51:10-25. Ada was clearly an agent for Shell with regard to the sale of fuel.

---

[8] The Texas <u>Deceptive Trade Practices and Consumer Protection Act</u> defines "Consumer" as follows:

(4) "Consumer" means an individual, partnership, corporation, this state, or a subdivision or agency of this state who seeks or acquires by purchase or lease, any goods or services, except that the term does not include a business consumer that has assets of $25 million or more, or that is owned or controlled by a corporation or entity with assets of $25 million or more.

Tex. Bus. & Com. Code Ann, § 17.45(4) (Vernon 2002, WESTLAW through Ch. 290 of the 2005 Regular Session of the 79th Legislature).

With regard to non-fuel products, Ada similarly has no recourse under the DTPA. As stated earlier, the DTPA requires that Ada send notice to Shell prior to the institution of the lawsuit, stating "the consumer's specific complaint in reasonable detail." 5 GCA §32110(a). In the letter to Shell dated May 24, 2001, Ada indicated that his claim was based on Shell's alleged representations to Ada that he was a franchise dealer under the PMPA. Nowhere in Ada's SAC, or in the extensive discovery testimony in this proceeding, has Ada made any claim of deceptive or improper practices with regard to any non-fuel items. Ada's PMPA claims are premised entirely on Shell's non-renewal of the parties' agreements. Ada has not raised any arguments or allegations of violations of the DTPA based any nexus between Shell's actions in not renewing and the fact that Ada happens to sell non-fuel products. In fact, the PMPA offers no protections with regard to the sale of non-fuel products. The PMPA "applies only to the sale of motor fuel under a trademark." *Pride v. Exxon Corp.*, 911 F.2d 251, 254 (9th Cir. 1990) (sale of unbranded gasoline); *see also Gelb v. Amoco Oil Co.*, 29 F.3d 1050, 1057 (6th Cir. 1994) (because PMPA only regulates the termination of "motor fuel marketing" franchises, the termination of a non-gas franchise does not implicate the PMPA preemption clause). The record is completely devoid of any evidence of a violation of the DTPA with regard to Ada's activities in selling non-fuel products, and claims of an alleged violation of the PMPA cannot offer Ada any protections under the DTPA.

## VII. SHELL CANNOT BE ESTOPPED FROM DENYING INAPPLICABILITY OF PMPA

Ada states a claim for equitable estoppel under Count VIII of the Second Amended Complaint[1] Shell is entitled to summary judgment on this Count for three reasons. First, under Guam law, equitable estoppel is a defense and can only be used in a defensive posture. *See Mobil Oil Guam, Inc. v. Young Ha Lee*, 2004 WL 1305314, *5 -6, 2004 Guam 9, ¶ 24 (Guam 2004) ("Unlike promissory estoppel, equitable estoppel is available only as a 'shield' or defense.") (quoting *Estate of Hall v. HAPO Fed. Credit Union*, 869 P.2d 116, 118 (Wash.Ct.App.1994)). Ada's attempt to affirmatively assert a claim for equitable estoppel is simply not permissible under Guam law.

---

[1] In the Second Amended Complaint, Ada identified his claim as one for "Estoppel." Ada asserted a similar claim in its First Amended Complaint. In seeking dismissal of the estoppel claim asserted in the First Amended Complaint, Shell characterized the Ada's claim as one for "promissory estoppel." This Court, in its Decision and Order dated May 10, 2002, corrected Shell by indicating that Shell misconstrued Ada's claim as one for promissory estoppel, when in fact the claim is for equitable estoppel.

Second, if the PMPA does not apply to the relationship between Shell and Ada, Shell cannot be estopped from denying that a franchise relationship did not exist under the PMPA. *See Trigg v. Texaco, Inc.*, 511 F.Supp. 447, 448 (S.D. Tex. 1981).

Third, the doctrine of equitable estoppel has been codified in Guam in Title 6 GCA § 5106(3). The elements needed to prove equitable estoppel are:

(1) the party to be estopped must be apprised of the facts;
(2) he must intend that his conduct will be acted upon, or act in such a manner that the party asserting the estoppel could reasonably believe that he intended his conduct to be acted upon;
(3) the party asserting the estoppel must be ignorant of the true state of the facts; and
(4) he must rely upon the conduct to his injury."

*Mobil Oil Guam, Inc. v. Young Ha Lee*, 2004 WL 1305314, *5 -6, 2004 Guam 9, ¶ 24 (Guam 2004).

Like the fraud claims asserted in Counts I through III of the Second Amended Complaint, Ada argues that Shell is estopped from denying that Ada is a franchise dealer under the PMPA because Ada relied upon Shell's alleged representations to Ada that he was being granted a petroleum franchise. Also like the claims of fraud, Ada has failed to present any evidence proving that he relied upon these representations. *See,* discussion on elements of fraud, *supra.*

Furthermore, the contract between the parties specifically stated that the parties were not obligated to renew the contract. Agreements 15(b). Thus, Ada was not "ignorant of the true state of the facts," nor could he be justified in relying on an alleged representation that he would be a dealer under the PMPA.

**VIII. CONCLUSION**

For the reasons set forth above, Shell prays that summary judgment be granted in its favor as to all claims in the SAC.

Respectfully submitted this 1st day of September, 2005.

CIVILLE & TANG, PLLC

By _____
**G. PATRICK CIVILLE**
*Attorneys for Shell Guam, Inc.*

# EXHIBIT A

RECEIVED
JAN 1 6 2001
GUAM LAW LIBRARY

**IN THE SUPERIOR COURT**

**OF GUAM**

JAN 12  3 46 PM '01

MICHAEL J. E. PARK,                    )          CIVIL CASE NO. CV0844-00
                                       )
                    Plaintiff,         )
                                       )
        vs.                            )          **DECISION AND ORDER**
                                       )
MOBIL OIL GUAM, INC.                   )
                                       )
                    Defendant.         )
_____)

## INTRODUCTION

This matter came before the HONORABLE MICHAEL J. BORDALLO on the 4th day of October, 2000, on the Defendant's Motion to Dismiss or for More Definitive Statement. The Plaintiff, Michael Park was represented by Lawrence Teker. The Defendant, Mobil Oil Guam, Inc., was represented by Thomas Moody and Richard Johnson. The Court granted dismissal of Count IV of the Plaintiff's complaint, and reserved on Counts II, III, and V. The Court now issues the following decision and order.

## BACKGROUND

This action involves a claim for breach of contract, fraud by intentional or negligent misrepresentation, breach of covenant of good faith and fair dealing, deceptive trade practices, and a request for punitive damages. On June 4, 1996, the Plaintiff, Michael Park and the Defendant, Mobil Oil, Guam, Inc., entered into a Franchise Agreement for the sell, purchase, and delivery of petroleum products, including gasoline. The Plaintiff alleges that the Defendant fraudulently breached its contract by failing to deliver gasoline as required by its contract. The Plaintiff further

2

3  alleges that the Defendant fraudulently represented that the deliveries were in accordance with the

4  contract, and that such misrepresentation was a violation of its duty of good faith and fair dealing.

5  .  **DISCUSSION**

6

7  The Defendant moves to dismiss Count II (fraud), Count III (negligent or intentional

8  misrepresentation), and Count V (violation of the Deceptive Trade Practice Act) of the Plaintiff's

9  complaint pursuant to Guam Rules of Civil Procedure, Rule 12(b)(6), or in the alternative for a more

10  definitive statement under Rule 9(b). Rule 9(b) provides, "In all averments of fraud or mistake, the

11

12  circumstances constituting fraud or mistake <u>shall be stated with particularity</u>. Malice, intent,

13  knowledge, and other conditions of mind of a person may be averred generally." (Emphasis added.)

14  A complaint should not be dismissed unless it appears beyond doubt that the plaintiffs can

15

16  prove no set of facts in support of their claim which would entitle them to relief. <u>Johnson v.</u>

17  <u>Knowles</u>, 113 F.3d 1114, 1117 (9th Cir. 1997). When reviewing a dismissal for failure to state a

18  claim pursuant to Rule 12(b)(6) all allegations of material fact are taken as true and construed in the

19  light most favorable to the non-moving party. <u>AlliedSignal, Inc. v. City of Phoenix,</u> 182 F.3d 692

20

21  (9th Cir. 1999). See <u>Jensen v. City of Oxnard</u>, 145 F.3d 1078 (9th Cir. 1998), cert. denied, 119 S.Ct.

22  540, 142 L.Ed.2d 449 (1998). Unlikelihood of success does not, by itself, justify dismissal.

23  <u>AlliedSignal, Inc. v. City of Phoenix, supra,</u> 182 F.3d at 698. Furthermore, the Court when ruling

24

25  on a motion to dismiss must accept well-pleaded factual allegations as true, and may disregard

26  conclusory allegations of law and unwarranted inferences. <u>Pareto v. FDIC</u>, 139 F.3d 696, 699 (9th

27  Cir. 1998). Dismissal without leave to amend is improper unless it is clear that the complaint could

28

- 2 -

not be saved by any amendment. <u>Chang v. Chen</u>, 80 F.3d 1293, 1296 (9ᵗʰ Cir. 1996).

The Defendant moves to dismiss Count II of the complaint. The Defendant alleges that the Plaintiff has failed to plead with particularity the basis for his claim of fraud. The Defendant argues that at a minimum the Plaintiff is required to plead the content of the alleged misrepresentation, the persons involve, and the time, date, and place when the misrepresentations occurred. The Plaintiff argues that the time period plead and the nature of the mass quantities of deliveries is sufficient under Rule 9.

In order to prevail on a claim for fraud, the Plaintiff must prove that the Defendants made a misrepresentation, knowing that the misrepresentation was false, with the intent to induce reliance, that the Plaintiff justifiably relied on the Defendants' misrepresentations, and that the Plaintiffs were damaged by such misrepresentation. <u>Trans Pacific Export Co. vs. Oka Towers Corporation</u>, 2000 Guam 3 (Jan. 12, 2000). GRCP, Rule 9 requires any claim for fraud to be stated with particularity. The Court finds that in order to meet the requirements of Rule 9, a plaintiff must allege factual allegations including time, place, and persons involved in the alleged fraud.

The complaint alleges that the Defendant made misrepresentations, between June 1996 through February 2000, that each delivery of gasoline was complete as per their agreement, that the Defendant knew it was delivering less than what was agreed to, and that the Defendant intentionally billed the Plaintiff for more than was delivered. The Court finds that the facts are sufficiently plead with particularity to support a claim of fraud by misrepresentation. Therefore, the Court denies the Defendant's motion to dismiss.

- 3 -

2

3      The Defendant moves to dismiss Count III of the complaint. The Defendant alleges that

4   where the underlying dispute involves a breach of contract claim, a party is prevented from seeking

5   remedial damages in an action framed in tort, such as a claim for fraud by negligent or intentional

6
    misrepresentation. The Plaintiff concedes that in cases involving breach of contract, an independent
7

8   action in tort is generally disfavored.  However, the Plaintiff alleges that it is permitted to request

9   punitive damages for the breach of contract.   In this case, the Plaintiff has not plead punitive

10  damages based on its claim for breach of contract.   Rather, the Plaintiff has requested relief for

11
    independent torts, wherein the crux of his complaint lies in his claim for breach of contract.  Thus,
12

13  the question before this Court is whether the a plaintiff may seek relief under principles of tort where

14  the facts underlying the allege tort arise from a party's failure to perform under contract.

15
       A contractual obligation, by itself, does not create a tort duty.  Instead, the duty giving rise
16

17  to a tort action must have some independent basis.  <u>Mesmer v. Maryland Auto. Ins. Fund</u>, 725 A.2d

18  1053 (Md., 1999).  While a tort action in favor of a contracting party can be founded upon a duty

19
    arising out of the contractual relationship, the duty giving rise to the tort cause of action must be
20

21  independent of the contractual obligation; mere failure to perform a contractual duty, without more,

22  is not an actionable tort.  <u>Francis v. Lee Enters.</u>, 971 P.2d 707 (Haw., 1999); <u>Freeman & Mills, Inc.</u>

23  <u>v. Belcher Oil Co.</u>, 44 Cal.Rptr.2d 420, 900 P.2d 669 (Cal., 1995); <u>Southwestern Bell Telephone Co.</u>

24
    <u>v. DeLanney</u>, 809 S.W.2d 493, 494 (Tex.1991).  The Court finds that a plaintiff may not bring an
25

26  action in tort where the only action alleged is a failure to perform under a contractual duty; only

27  where there is an independent duty giving rise to a tort action, may a party seek tort remedy in

28

- 4 -

2

3 addition to a claim for breach of contract. *See* Arco Oil and Gas Co. v. Marshall, 2000 WL 1210803

4 (Tex.App., 2000)(tort claim permitted where it is duty of lessor to comply with laws on measurement

5 and metering produced gas).

6

7 The Plaintiff alleges that the complaint should not be dismissed because punitive damages

8 are permitted in cases of breach of contract, where there is an allegation of fraud. Generally,

9 punitive damages are not awarded for breach of contract. Nicholas v. Pennsylvania State University,

10 227 F.3d 133 (3rd Cir., 2000); Epperly v. Johnson, 734 N.E.2d 1066 (Ind.App., 2000); Tevdorachvili

11

12 v. Chase Manhattan Bank, 103 F.Supp.2d 632 (E.D.N.Y., 2000); Slottow v. American Cas. Co. of

13 Reading, Pennsylvania, 10 F.3d 1355 (9th Cir., 1993). To recover punitive damages for breach of

14 contract, the breach must have been tortious, and the breaching party must have "been guilty of

15 oppression, fraud, or malice" Slottow v. American Cas.Co., supra; 20 G.C.A. § 2120. The burden

16

17 rests on the Plaintiff to plead such a cause of action. *See* GRCP, Rule 12(b)(6) and Rule 9.

18 The Court finds that the complaint does not seek punitive damages for breach of contract.

19 Rather, the Plaintiff seeks punitive damages for Count II for fraudulent misrepresentation and Count

20

21 III for tortious breach of contract. Count III seeks a separate and independent remedy based on tort

22 principles. Based on the allegations plead by the Plaintiff in Count III of the Complaint, the Court

23 finds that the facts fail to allege a separate cause of action for oppressive or malicious breach of

24 contract. Although the Plaintiff has plead fraudulent breach of contract by misrepresentation, the

25

26 Court finds that the Plaintiff is not entitled to a separate claim for relief on Count III because any

27 recovery on Count II would essentially be duplicitous. Therefore, the Court grants the Defendant's

28

- 5 -

motion to dismiss Count III of the complaint.

The Defendant lastly moves to dismiss Count V of the complaint. The Defendant alleges that the Plaintiff failed to notify the Defendant of its impending lawsuit pursuant to 5 G.C.A. §32110(a).

5 G.C.A. §32110(a) provides:

> As a prerequisite to filing a suit seeking damages under this chapter against any person by a consumer not represented by the Attorney General, a consumer shall give written notice to the person at least thirty (30) days before filing the suit advising the person, in reasonable detail, of the consumer's specific complaint and the amount of actual damages and expenses, including attorneys' fees, if any, reasonable incurred by the consumer in asserting the claim against the party.

It is undisputed that the Plaintiff did not give pre-suit notice of this action prior to filing his complaint.  . In all cases dealing with statutory construction, the starting point is always the language of the statute itself. Paulino v. Biscoe, 2000 WL 362014, 2000 Guam 13 (Apr. 10, 2000). "[I]f the language of a statute is clear, and there is no ambiguity, then there is no need to 'interpret' the language by resorting to the legislative history or other extrinsic aids." People of Guam v. Angoco, 1998 Guam 10 (Oct. 14, 1998). If the intent of Legislature is clear, the court must give effect to the unambiguously expressed intent of the legislature. Hotels of Marianas, Inc. v. Government of Guam, 71 F.3d 1455 (9th Cir. 1995). Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive. Sacramento Regional County Sanitation Dist. v. Reilly, 905 F.2d 1262, 1268-1269 (9th Cir. 1990). However, in interpreting a statute, a court should not look to isolated sentences but rather to the whole law, and to its object and policy. U.S. ex rel. Hyatt v. Northrop Corp., 91 F.3d 1211 (9th Cir. 1996).

- 6 -

Trade Practices and Consumer Protection Act ("Act") does not provide any remedial measures where a party files suit prior to giving notice of the complaint. The Defendant asserts that the only appropriate remedy for failure to notify a party of a pending suit under the Act is dismissal. Conversely, the Plaintiff alleges that the proper remedy is abatement for thirty (30) days while the Plaintiff gives written notice to the Defendant of its complaint. The Court is mindful that the Act is to be liberally construed to effect the purpose of protecting the consumer, and to provide efficient and economical procedures to secure such protection. 5 G.C.A. §32101 and §32108. The plain language of the statute uses the term "prerequisite." The term prerequisite denotes that the required act must come first. The Court finds that the language of the statute is clear. In order for a party to take refuge in the provisions and remedies of the Deceptive Trade Practices Act, the party must be in compliance with the Act's prerequisites. To conclude otherwise, would defeat the policy and objectives of the Act. Therefore, the Court finds that a failure to comply with the thirty (30) day pre-filing notice results in a dismissal of the suit until such time as the party comes into compliance with the Act.

///

///

-7-

2

3                        **CONCLUSION**

4       Based on the foregoing, the Court finds that the complaint sufficiently states with

5  particularity a basis for fraud.  Therefore, the Court DENIES the Defendant's Motion to Dismiss

6
   Count II of the complaint.  The Court further finds that a contractual duty by itself, or the failure to
7
8  perform a contractual duty, does not create a cause of action in tort.  Therefore, the Court GRANTS

9  the Defendant's Motion to Dismiss Count III of the complaint.

10      Additionally, the Court finds that the Deceptive Trade Practices Act requires a plaintiff to

11
12 give a person thirty days notice of its complaint and demand prior to filing suit, and the failure to

13 give such notice shall result in dismissal of the action.  Therefore, the Court GRANTS the

14 Defendant's Motion to Dismiss Count IV of the complaint.

15      SO ORDERED this 12th day of January, 2001.

16

17

18                                    Honorable Michael J. Bordallo
19                                    Judge, Superior Court of Guam

20

21                    I do hereby certify that the foregoing
                      is a full true and correct copy of the
22                    original on file in the office of the
                      clerk of the Superior Court of Guam
23
                      **JAN 12 2001**
24
                      _____ 20__
25                    Jessica C. Cruz
                      Deputy Clerk, Superior Court of Guam
26

27

28

                              - 8 -