LAW OFFICES OF BRONZE & TANG, P.C.
BankPacific Building, Suite 201
825 South Marine Drive
Tamuning, Guam 96913
Telephone No.: (671) 646-2001
Facsimile No.: (671) 647-7671

RICHARD A. PIPES, ESQ.
LAW OFFICES OF RICHARD A. PIPES
Orlean Pacific Plaza, Suite 201
865 South Marine Corps Drive
Tamuning, Guam 96913
Telephone No.: (671) 646-1222
Facsimile No.: (671) 646-2203

Attorneys for Plaintiff

**FILED**
DISTRICT COURT OF GUAM
SEP 1 5 2005
MARY L.M. MORAN
CLERK OF COURT

## IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| ANTHONY J. ADA, <br><br> Plaintiff, <br><br> v. <br><br> SHELL GUAM, INC., et al., <br><br> Defendants. <br> _____ <br><br> SHELL GUAM, INC., <br><br> Counterclaim <br> Plaintiff, <br><br> v. <br><br> ANTHONY J. ADA, <br><br> Counterclaim <br> Defendant. <br> _____ | CIVIL CASE NO. CV00-00012 <br><br><br><br><br><br><br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO SHELL MOTION FOR SUMMARY JUDGMENT** |

**ORIGINAL**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii-iv

I.      SUMMARY JUDGMENT STANDARDS ................................................................ 1-2

II.     PRIOR RULINGS IN THIS CASE REQUIRE DENIAL OF THE MOTION  2-4

III.    PMPA CLAIMS. ....................................................................................................... 4-10

        A.      The Undisputed Facts Show That The Relationship Between
                Ada And Shell Is Subject To The PMPA. ...................................................... 4-8

        B.      Shell Drafted The Agreements, Understood The Language It Used,
                And The Agreements Define The Relationship Under The PMPA. ....... 8-10

IV.     TERRITORIAL LAW CLAIMS. ............................................................................. 10-16

        A.      Fraud Claims - Accounts III And IV. ........................................................ 10-14

        B.      Negligent Misrepresentation Claim. .................................................................. 14

        C.      If Shell Is Granted Summary Judgment On The PMPA Claims,
                The Remainder Of The Case Must Be Remanded to the Guam Courts. 15-16

V.      BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING. .. 16-18

VI.     ADA HAS CLAIMS UNDER THE
        GUAM CONSUMER PROTECTION ACT. ......................................................... 18-23

VII.    ADA HAS A CAUSE OF ACTION FOR ESTOPPEL AGAINST SHELL. . 23-24

VIII.   CONCLUSION. ............................................................................................................ 25

# TABLE OF AUTHORITIES

**CASES:**

*Anderson v. Liberty Lobby, 477 U.S. 242, 249 (1986)* ..................................................................... 1

*Bator v. State of Hawaii, 910 F. Supp. 479, 483 (D. Haw. 1995)* ....................................................... 1

*Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7 (1988)* ...................................................... 15

*Castner v. First Nat'l Bank of Anchorage, 278 F. 2d 376, 379-380 (9ᵗʰ Cir. 1960)* ......................... 3

*Chevron U.S.A., Inc. v. El-Khoury, 2002 WL 31256160 (C.D. Cal. 2002)* ...................................... 13

*Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816 (1988)* ............................................ 2

*Doe v. Benicia Unified School District, 206 F. Supp. 2d 1048, 1056-7 (E.D. Cal. 2002)* .............. 16

*Eichman v. Fotomat Corp., 880 F. 2d 149, 157 (9ᵗʰ Cir. 1989)* ......................................................... 3

*Fairbank v. Wunderman Cato Johnson, 212 F. 3d 528, 532 (9ᵗʰ Cir. 2000)* ...................................... 3

*Farm Stores, Inc. v. Texaco, Inc., 763 F. 2d 1335, 1340-1345 (11ᵗʰ Cir. 1985)* .............................. 7

*Harm v. Frasher, 181 C.A. 2d 405, 417 (1960)* ............................................................................... 17

*Heise v. Fishing Co. of Alaska, Inc., 79 F. 3d 903, 905 (9ᵗʰ Cir. 1996)* ............................................ 2

*In re Leimer, 724 F. 2d 744 (8ᵗʰ Circuit 1984)* ................................................................................. 13

*Jesinger v. Nevada Federal Credit Union, 24 F. 3d 1127, 1130 (9ᵗʰ Cir. 1994)* ................................ 1

*Moore v. Jas. H. Matthews & Co., 682 F. 2d 830, 834-835 (9ᵗʰ Cir. 1982)* ...................................... 2

*Seaman's Direct Buying Serv. v. Standard Oil, 686 P. 2d 1158, 1167(Cal. 1984) (En Banc)* ......... 18

*Thompson Everett, Inc. v. National Cable Advertising, L.P., 57 F. 3d 1317, 1323 (4ᵗʰ Cir. 1995)* .................. 1

*Toscana v. PGA, 258 F. 3d 978, 982 (9ᵗʰ Cir. 2001)* ......................................................................... 1

# TABLE OF AUTHORITIES

## STATUTES AND RULES:

15 U.S.C. §§2801 et seq. ........................................................................................................ 3

18 G.C.A. §87104 ................................................................................................................... 8

28 U.S.C. §1447(c) ............................................................................................................... 15

5 G.C.A. §32101, et seq. ...................................................................................................... 19

5 G.C.A. §32102(d) .............................................................................................................. 21

CA 9 Rule 36-3(b) ................................................................................................................ 13

Fed. R. Civ. P. 56(c) ......................................................................................................... 1, 3

5 G.C.A. §14 .......................................................................................................................... 7

5 G.C.A. §17 .......................................................................................................................... 7

5 G.C.A. §32102(a) .............................................................................................................. 19

5 G.C.A. §32102(d) .............................................................................................................. 20

5 G.C.A. §32108(a) .............................................................................................................. 19

5 G.C.A. §32110(a) .............................................................................................................. 19

5 G.C.A. §32121 ................................................................................................................... 19

5 G.C.A. §32201 ................................................................................................................... 19

5 G.C.A. §32201(12) ............................................................................................................ 19

5 G.C.A. §87105 .................................................................................................................... 9

5 G.C.A. §87120 .................................................................................................................... 9

iii

# TABLE OF AUTHORITIES

**OTHER AUTHORITIES:**

*Jurisdiction and Related Matters 3d §3739* ..................................................................................................... 15

*Moore's Fed. Prac. 3D §134.22[3][c][i]* ........................................................................................................ 2

*Moore's Fed. Prac. 3D §56.11[1][b]* ............................................................................................................. 2

*Second Contracts §205* ...................................................................................................................................... 17

*Witkin, Summary of Cal. Law. (9th ed.) Contracts §742(b)* .............................................................................. 16

*Wright, Miller & Cooper, Fed. Prac. Proc.* ...................................................................................................... 15

**Anthony J. Ada v. Shell Guam, Inc., et al.**
**Civil Case No. CV00-00012**
**Memorandum of Points and Authorities in Opposition to Shell Motion for Summary Judgment**

On September 1, 2005, Defendant Shell Guam, Inc., ("Shell") filed its Motion for Summary Judgment ("Motion") in this Court asking that summary judgment be granted in its favor as to all claims contained in the Second Amended Complaint ("SAC") filed herein. *See, Memorandum of Points and Authorities in Support of Shell Guam, Inc.'s Motion for Summary Judgment ("Shell Memo"), filed September 1, 2005, at p. 20.* Plaintiff Anthony J. Ada ("Ada") opposes the Motion on the grounds set forth herein and all other pleadings filed herewith.

## I. SUMMARY JUDGMENT STANDARDS.

The Court must deny a motion for summary judgment unless there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(c); Toscana v. PGA, 258 F. 3d 978, 982 (9th Cir. 2001).* In ruling upon a motion for summary judgment, a Court must review the evidence and draw inferences in the light most favorable to the non-movant. *Anderson v. Liberty Lobby, 477 U.S. 242, 249 (1986)* ("evidence of non-movant is to be believed and all reasonable inferences are to be drawn in his favor").

It is not the trial court's function at the summary judgment stage to weigh the evidence and determine the truth of disputed matters, but the Court must only determine that there is a genuine issue for trial. *Anderson, supra, at 249.* ("[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge"); *Jesinger v. Nevada Federal Credit Union, 24 F. 3d 1127, 1130 (9th Cir. 1994).* Rule 56 must be used carefully so as not to improperly foreclose trial. *Thompson Everett, Inc. v. National Cable Advertising, L.P., 57 F. 3d 1317, 1323 (4th Cir. 1995).* A genuine issue of fact exists if sufficient evidence is presented for a reasonable fact-finder to decide the question in favor of the non-movant. *Bator v.*

1

Anthony J. Ada v. Shell Guam, Inc., et al.
Civil Case No. CV00-00012
Memorandum of Points and Authorities in Opposition to Shell Motion for Summary Judgment

*State of Hawaii, 910 F. Supp. 479, 483 (D. Haw. 1995).* Summary Judgment as a matter of law is permitted only if the facts and law will reasonably support only one conclusion. *See, Heise v. Fishing Co. of Alaska, Inc., 79 F. 3d 903, 905 (9th Cir. 1996).* Summary Judgment is appropriate if the facts, although disputed by an opposing party, have been objectively and unquestionably determined in a manner the Court is not free to disregard. *Moore's Fed. Prac. 3D §56.11[1][b].*

## II. PRIOR RULINGS IN THIS CASE REQUIRE DENIAL OF THE MOTION.

The Supreme Court has defined the law of the case as a doctrine that requires that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. *Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816 (1988).* This rule of practice promotes the finality and efficiency of the judicial process by "protecting against the agitation of settled issues." *Id.* The Supreme Court has also held that although a court has the power to revisit its own decisions, it should not do so absent extraordinary circumstances showing that the prior decision was clearly wrong and would work a manifest injustice. *Id.*

When an action is removed from a state court to a federal court, the law of the case doctrine applies to the decisions entered by the state court prior to removal. *Moore's Fed. Prac. 3D §134.22[3][c][i].* Because the purpose of the doctrine is to promote judicial finality, it necessarily follows that the law of the case acts as a bar when the issue in question was actually considered and decided by the first court. *See, Moore v. Jas. H. Matthews & Co., 682 F. 2d 830, 834-835 (9th Cir. 1982)* (explaining that law of the case principles are analogous to res judicata). The doctrine applies to a

2

Anthony J. Ada v. Shell Guam, Inc., et al.
Civil Case No. CV00-00012
Memorandum of Points and Authorities in Opposition to Shell Motion for Summary Judgment

court's "explicit decisions as well as those issues decided by necessary implication". *Eichman v. Fotomat Corp., 880 F. 2d 149, 157 (9th Cir. 1989).*

Only where cogent reasons or exceptional circumstances exist may a judge set aside or reverse a prior ruling by another judge in the same case. *See, Castner v. First Nat'l Bank of Anchorage, 278 F. 2d 376, 379-380 (9th Cir. 1960).* Generally, one judge should not overrule the prior decisions of another sitting in the same case because of the "principles of comity and uniformity [which] . . . preserve the orderly functioning of the judicial process." *Id. at 379-380; also see, Fairbank v. Wunderman Cato Johnson, 212 F. 3d 528, 532 (9th Cir. 2000)* (exceptional circumstances found when summary judgment standard applied in prior ruling was different then required under Rule 56).

In this case, a Decision and Order ("Decision") was entered in this case on May 4, 2000, in which the Court gave its written decision granting Ada's Motion for a Preliminary Injunction, a copy of which is attached hereto as Exhibit "A" and incorporated herein by this reference. The Decision noted that Ada claimed that the plain language of the agreements between the parties expressly stated that the Petroleum Marketing Practices Act, 15 U.S.C. §§2801 et seq. ("PMPA"), was applicable to the relationship between Shell and Ada. *Decision at 2.* The Decision also notes that Shell alleges that the PMPA does not apply because the relationship between the parties is that of principal and agent, and that the parties allegedly amended the agreements to exclude the conspicuous PMPA statement that expressly brings the contract within the PMPA provisions. *Id.* The Court determined that because the contracts between the parties clearly define the franchisor to franchisee relationship as being within the protections of the PMPA, the parties agreed to bring the

3

**Anthony J. Ada v. Shell Guam, Inc., et al.**
**Civil Case No. CV00-00012**
**Memorandum of Points and Authorities in Opposition to Shell Motion for Summary Judgment**

relationship within the PMPA. *Decision at 3*. The Court held that the PMPA requirements apply to the written agreements and relationship between the parties. *Id.*

Shell argues that it is entitled to summary judgment on Counts I and II of the SAC because, as a matter of law, the relationship between Ada and Shell is that of a principal and agent and, therefore, a relationship between Ada and Shell could not come within the PMPA. *Shell Memo at 4-10*. However, this argument is precluded by the law of the case doctrine. As shown above, a prior ruling in this case clearly considered and determined that because of the express and unambiguous language of the written agreements between the parties, the relationship was clearly brought within the scope of the PMPA. Shell's Motion for Summary Judgment on Counts I and II of the SAC is precluded by the Decision earlier made in this case. There exist no cogent reasons or extraordinary circumstances for which this Court may reconsider the ruling previously made in this case. The Decision determined that the relationship between Shell and Ada was within the PMPA and that is the law of the case.

## III. PMPA CLAIMS.

### A. The Undisputed Facts Show That The Relationship Between Ada And Shell Is Subject To The PMPA.

Notwithstanding the clear and unambiguous language in the agreements which indicate that Ada is being granted a franchise under the PMPA, Shell argues, nevertheless, that Ada did not have a franchise under the PMPA and that he was an "agent". *Shell Memo at 4-7*. However, the undisputed facts show otherwise.

4

**Anthony J. Ada v. Shell Guam, Inc., et al.**
**Civil Case No. CV00-00012**
**Memorandum of Points and Authorities in Opposition to Shell Motion for Summary Judgment**

Shell admits that each of the four agreements contained an opening paragraph, in bold language, stating that the contracts were franchise agreements under the PMPA. *Shell Memo at 1.* Ada did not have any input on the preparation of the agreements and Shell understood that Ada was relying upon Shell to prepare the agreements. *Deposition transcript of Philip Stalker, Vol. 2 ("Stalker Depo. 2"), designated representative for Shell Guam, Inc., July 27, 2005, at p. 87, l. 21 through p. 89, l. 23, p. 93, l. 6-12.* (copies of all deposition transcript pages are attached to the Declaration of Richard A. Pipes). Ada reasonably relied upon Shell to prepare agreements that were appropriate for their relationship and Ada expected that Shell would have specialized knowledge with respect to the petroleum fuel industry. *Id.* Shell never intended to allow Ada to draft any of the agreements. *Id.* When each of the agreements was signed, Shell understood that the terms and conditions in the agreements would influence Ada's decision about whether or not to sign the agreements. *Id.* Shell never told Ada before he signed the agreements that Shell did not intend the PMPA language in the agreements to be effective. *Id. at p. 90, l. 18 through p. 91, l. 15.* At the time the agreements were presented to Ada, Shell understood that the PMPA provided protections to dealers. *Id.* Shell understood that when the agreements were presented to Ada the terms were important to him in deciding whether or not to sign the agreements. At the time Ada signed the agreements, Ada had no reason to know that the PMPA language in the agreements was not applicable to him. *Id. at p. 92, l. 15 through p. 93, l. 12.*

In the beginning, all of the Shell stations in Guam were dealer operated. *Deposition Transcript of Fred Keller ("Keller Depo."), designated representative for Shell Guam, Inc., June 29, 2005, p. 43, l. 12 - l. 23.* Because Shell started its retail network using dealer operated stations, Shell was familiar with

5

**Anthony J. Ada v. Shell Guam, Inc., et al.**
**Civil Case No. CV00-00012**
**Memorandum of Points and Authorities in Opposition to Shell Motion for Summary Judgment**

operating stations under the PMPA. *Id. at p. 47, l. 13 - 18.* While Shell argues that it never "intended" on entering into a franchise relationship under the PMPA with Ada, as shown above, Shell was completely aware as to the PMPA requirements for dealers as it had been using such language in its agreements for years before contracting with Ada.

Shell argues that Ada could not possibly be subject to the PMPA because he does not buy fuel or set fuel prices. *Shell Memo at 5-6.* However, there are a number of circumstances which show that Ada does, in fact, take title the fuel delivered at the stations, has risk associated with the sale of fuel, and is properly licensed to sell the fuel. Whenever Ada sells fuel at the stations, the money is deposited in Ada's bank account, which is his alone, and commingled with other funds of his, including those from sales at the convenience store. *Declaration of Anthony J. Ada ("Ada Decl.") at ¶ 2, concurrently filed herein.* Funds for fuel sales deposited into Ada's account are later remitted, in part, to Shell. *Id.* With respect to the sale of fuel, Ada bears the risk for "drive aways", meaning customers who pump gas and drive away without paying, sales of fuel to customers on credit accounts who do not pay or whose checks "bounce", risks associated with credit card sales and the costs incurred by Ada for such sales, and risks for any discrepancies related to missing fuel. *Id.* Also, all employees at both of Ada's stations are his employees and he is solely responsible for their hiring, retention, and payment. *Id.* Since 1993 to the present, Ada has obtained and maintained the business licenses for both stations for the sale of petroleum products, including motor fuel and oils. *Id.*

In addition to the clear and unambiguous PMPA language at the heading of each agreement, the agreements themselves further show the application of the PMPA to the relationship between

6

Anthony J. Ada v. Shell Guam, Inc., et al.
Civil Case No. CV00-00012
Memorandum of Points and Authorities in Opposition to Shell Motion for Summary Judgment

Ada and Shell. The agreements provide that Shell may terminate the franchise on any other ground for which termination is provided in the agreement "or in any related agreements constituting a franchise between Shell and Agent, or is otherwise allowed by the PMPA or other applicable law". *Declaration of Philip Stalker in Support of Shell's Motion for Summary Judgment, Exhibit 1a, §15.a. (5)., filed September 1, 2005, ("Stalker Decl.")*. The agreements typically provide that Ada is "in business independent of Shell" and that neither Ada nor any person performing work at the stations for Ada is "deemed an employee or agent of Shell". *Id. at §17*. Ada is also required to maintain liability insurance, workman's compensation insurance, and fire insurance with extended coverage and Shell is required to be named as an "additional named insured" on all such policies. *Id. at Exhibit 1d, §14*. One of the agreements between Ada and Shell even makes reference to the "Franchise Period" for the term of the agreement. *Id. at Schedule II, p. 18*.

Whether Ada bears some risks with respect to the sale of motor fuel, operates as an independent businessman, bears risk with other operations, hires and fires his own employees, and is required to maintain insurance for the benefit of both Ada and Shell are factors that must be evaluated in determining whether a franchise relationship under the PMPA exists. *See, Farm Stores, Inc. v. Texaco, Inc., 763 F. 2d 1335, 1340-1345 (11th Cir. 1985)*. In its Motion, Shell heavily relies upon the decision in the *Farm Stores* case. However, that case is distinguishable on its facts because the written agreement between the parties contained a clear and unambiguous statement, in bold letters, which indicated that there was **no** franchise relationship between the parties under the PMPA. *Id. at 1338*.

7

**Anthony J. Ada v. Shell Guam, Inc., et al.**
**Civil Case No. CV00-00012**
**Memorandum of Points and Authorities in Opposition to Shell Motion for Summary Judgment**

As shown above, the undisputed facts show that Ada has risk of loss with respect to the sale of fuels and operated independently.

Shell also alleges that Ada operates "free of market risks". *Shell Memo at 6*. However, as shown above, Ada is subject to market risks in the sale of gasoline and other petroleum products. Ada is responsible for any costs associated with "drive aways", which do not depend upon Ada's negligence but upon the intentional criminal act of a third party. Ada bears the costs of selling fuel with respect to credit cards, including the Shell card, and any accounts of credit which Ada extends to customers. These are clearly market risks. Further, Shell has required Ada to implement a promotional program called "Lucky 7" which provides customers with incentives to purchase fuel from Shell stations. *Ada Decl. at ¶ 3*. Under the program, a customer is given a stamp for each five gallons of fuel purchased from a Shell service station, or under special promotions, more than one stamp. *Id.* The customers accumulate stamps on a card and when they have twenty stamps they are entitled to redeem the card at any Shell station for a seven dollar purchase on gas or convenient store items. *Id.* The vast majority of redemptions, in excess of 95%, are used for fuel purchases. *Id.* Shell only reimburses Ada $5.25 per card for those redemptions and Ada, therefore, bears the loss of a $1.75 per card. Those losses are in excess of sixty thousand dollars. *Id.*

### B. Shell Drafted The Agreements, Understood The Language It Used, And The Agreements Define The Relationship Under The PMPA.

Shell argues that because Ada is referred to as an "agent" throughout the agreements and because the "parties inadvertently and contractually incorporated portions of the PMPA" in the

8

**Anthony J. Ada v. Shell Guam, Inc., et al.**
**Civil Case No. CV00-00012**
**Memorandum of Points and Authorities in Opposition to Shell Motion for Summary Judgment**

agreements, that Shell is not bound by the agreements which it prepared. *Shell Memo at 7-8.* However, Shell's argument is based on a little more than speculation and self-serving statements.

Guam law provides that the "language of a contract is to govern its interpretation, if the language is clear and explicit, and does involve an absurdity." *18 G.C.A. §87104.* When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible. *Id. at §87105.* The language of a contract should be interpreted more strongly against the party who caused the uncertainty to exist. *Id. at §87120.*

As shown above, the agreements were prepared by Shell's attorneys and forwarded to Shell management for review prior to signing by the parties. Ada had no input on the preparation of the agreements and Shell understood that Ada was relying upon Shell to prepare the agreements. Ada relied upon Shell's knowledge in the fuel industry in preparing the agreements and Shell never intended to allow Ada to draft any of the agreements. When each of the agreements was signed, Shell understood that the terms and conditions in the agreements would influence Ada's decision about whether or not to sign the agreements. Shell never told Ada before he signed any of the agreements that Shell did not intend the PMPA language to be effective. At the time the agreements were prepared and presented to Ada, Shell understood that the PMPA provided protections to dealers. At the time Ada signed the agreements, Ada had no reason to know that the PMPA language which Shell put in the agreements was not applicable to him.

After the first Mangilao gas station agreement was prepared by Shell's attorneys, it was sent to the general manager at the time, Peter Short, for his review to make sure it incorporated the ideas

9

Anthony J. Ada v. Shell Guam, Inc., et al.
Civil Case No. CV00-00012
Memorandum of Points and Authorities in Opposition to Shell Motion for Summary Judgment

that he wanted in the agreement. *Deposition Transcript of Randy Sager ("Sager Depo."), June 30, 2005, designated representative for Shell Guam, Inc., p. 36, l. 25 to p. 37, l. 21; p. 28, l. 6-16, p. 30, l. 6 to p. 31, l. 7.*

In the beginning, all of the Shell stations in Guam were dealer operated. *Keller Depo., p. 43, l. 12 - l. 23.* Because Shell started its retail network using dealer operated stations, Shell was familiar with operating stations under the PMPA. *Id. at p. 47, l. 13 - 18.* Obviously, since Shell had prepared dealer agreements and operated under dealer arrangements pursuant to the PMPA for years prior to entering into agreements with Ada, Shell knew, or was charged with knowing, the meaning of the PMPA language contained in the agreements it drafted with Ada. Shell's argument that the PMPA language in Ada's agreements was somehow "inadvertent" belies the testimony from Shell's designated representatives that clearly shows Shell well understood operating under the PMPA and dealers when it created the agreements signed by Ada which included PMPA language.

If Shell intends to argue that it did not "intend" to insert the PMPA language in the agreements with Ada, which it has not yet alleged in its Motion papers, the question of "intent" is a question of fact which must be resolved by the jury, and not on summary judgment.

## IV. TERRITORIAL LAW CLAIMS.

### A. Fraud Claims - Accounts III And IV.

While Shell admits that it misrepresented to Ada that he was being granted a franchise under the PMPA, Shell claims that it is entitled a summary judgment because there are no facts in dispute under other elements of fraud. *Shell Memo at 10-13.* However, the undisputed facts in this case show otherwise.

10

**Anthony J. Ada v. Shell Guam, Inc., et al.**
**Civil Case No. CV00-00012**
**Memorandum of Points and Authorities in Opposition to Shell Motion for Summary Judgment**

**1. Misrepresentation.** Shell does not dispute that it "incorrectly" included language in the agreements between Shell and Ada which represented to Ada that he was being granted a franchise under the PMPA. *Shell Memo at 11.* Of course, by "incorrectly" representing to Ada that he was being granted a franchise under the PMPA, Shell is guilty of misrepresentation.

**2. Knowledge of falsity.** Shell argues that Ada has no evidence that Shell either knew or reasonably should have known of the falsity of its misrepresentation at the time it was made. *Shell Memo at 11.* However, facts elicited by Ada during discovery, and reasonable inferences from those facts, show that there is substantial evidence that Shell either knew or should have known its representations regarding the PMPA were false when made.

As shown above, the uncontroverted evidence from the lips of Shell personnel shows that at the time the agreements were drafted by Shell's attorneys, and reviewed by Shell management before being presented to Ada, Shell understood that the PMPA provided protections to dealers, and not agents. Since the agreements were drafted by Shell's attorneys, such attorneys are charged with the knowledge that if Shell did, in fact, intend that Ada only be an agent, that the PMPA would not be applicable to him and it would be a misrepresentation to put such language into the agreements. Shell is chargeable with the knowledge that its attorneys either had or by exercise of reasonable diligence should have had. A reasonable jury can infer that Shell either had this knowledge on its own or through its consultations with counsel. It must also be stressed that Shell had significant experience in dealing with dealers and, as shown above, Shell knew the difference between dealers and agents. Having such knowledge, it is a reasonable inference that Shell knew the difference between a dealer under the PMPA and an agent to which Shell claims the PMPA did not apply.

11

**Anthony J. Ada v. Shell Guam, Inc., et al.**
**Civil Case No. CV00-00012**
**Memorandum of Points and Authorities in Opposition to Shell Motion for Summary Judgment**

**3. No intention to defraud.** Shell argues that there is "no evidence" to support the element of fraud that Shell acted with the intent to induce Ada's reliance on the misrepresentation. *Shell Memo at 11-12.* However, there is clear evidence that that is exactly what Shell intended to do.

Shell admits that Ada reasonably relied upon Shell to prepare agreements that were appropriate for their relationship and Ada expected that Shell would have specialized knowledge with respect to the petroleum fuel industry. *Stalker Depo. 2, p. 87, l. 21 through p. 89 - l. 23, p. 93, l. 6 - 12.* Ada reasonably relied upon Shell's knowledge in the fuel industry in preparing the agreements which were presented to him. When each of the agreements were signed, Shell understood that the terms and conditions of the agreements would <u>influence</u> Ada's decision about whether or not to sign the agreements. *Id.* Shell understood that when the agreements were presented to Ada, the terms were important in deciding whether or not he would sign the agreements. *Id. at p. 92, l. 15 through p. 93, l. 12.* At the time Ada signed the agreements, Ada had no reason to know that Shell believed the PMPA language quoted in each of the agreements was not applicable to him. *Id.* From the beginning of its operations, Shell was operating with dealer stations. *Keller Depo. at p. 43, l. 16 - 23.* At the time the agreements were prepared by Shell, Shell was familiar with the PMPA and operating stations under the PMPA. *Id. at p. 47, l. 13 - 18.*

Based upon the evidence adduced from Shell management personnel in their depositions, it is clear that Shell either knew or should have known that the PMPA language in the Ada agreements was false and that Ada was relying upon the PMPA language, and Shell's representations, when he signed the agreements. Since all reasonable inferences must be drawn in favor of Ada on these issues, it is clear that these matters must be submitted to a jury for trial.

12

Anthony J. Ada v. Shell Guam, Inc., et al.
Civil Case No. CV00-00012
Memorandum of Points and Authorities in Opposition to Shell Motion for Summary Judgment

**4. There is evidence of justifiable reliance.** As shown above, Shell admits that Ada reasonably relied upon Shell and its expertise in the fuel industry in preparing the agreements and putting appropriate language in those agreements for the relationship between the parties. On its own, this evidence supports a finding of justifiable reliance by Ada. Further, while Ada may not have had particular knowledge with respect to the PMPA, he relied upon Shell to draft agreements and felt that the terms and conditions in each of the agreements were important and were to be relied upon by both parties. *Ada Decl. at ¶ 4.* Had Ada been aware that Shell was in the apparent habit of putting language into agreements which it did not intend to comply with, Ada would never have entered into any such agreements with Shell. *Id.*

**5. There are damages.** Shell argues that Ada has not been the damaged and, therefore, this element of fraud cannot be sustained. *Shell Memo at 12.*[1]

Shell is well aware that Ada has asserted claims for damages in this case. Those damages have been quantified in expert reports prepared by Roger Slater, C.P.A., which have been served upon counsel for Shell and claimed actual and compensatory damages in excess of $700,000.00. *Pipes Decl., Exh. "D" "E".* Ada has been damaged to the extent that it was necessary for him to hire

---

[1] In support of its argument that Ada has not been damaged, Shell cites to the unpublished District Court Opinion in *Chevron U.S.A., Inc. v. El-Khoury, 2002 WL 31256160 (C.D. Cal. 2002).* In this Circuit, unpublished decisions "shall not be cited to or by the courts of this Circuit". *CA 9 Rule 36-3(b).* Ada objects to the citation of unpublished authority by Shell in violation of this Court's Rules. Since unpublished memoranda and opinions usually fail to disclose fully the rationale of the court's decision, are not uniformly available to all litigants, and are not published because they are deemed "not be of precedential value", many Courts of Appeals prohibit the citation of unreported decisions in the briefs presented in unrelated cases. *See, In re Leimer, 724 F. 2d 744 (8ᵗʰ Circuit 1984).* Ada has previously objected to Shell's citation of unpublished authority to this court. *See, Memorandum of Points and Authorities in Opposition to Motion to Dismiss, filed August 17, 2001, at 12-13.* Further, this Court has already advised counsel in this case that further failure to abide by the Court's rules will not be tolerated. *See, Order, filed May 2, 2001, at 7.* Shell's continued, willful violation of this Court's Rules should not go unnoticed. Shell's citation to an unpublished decision should be stricken from the pleading and Shell should be admonished.

**Anthony J. Ada v. Shell Guam, Inc., et al.**
**Civil Case No. CV00-00012**
**Memorandum of Points and Authorities in Opposition to Shell Motion for Summary Judgment**

counsel and has incurred costs for attorneys fees and other related costs in excess of $100,000.00 in the case. *Id.* Of course, attorneys fees and costs are also damages. Additionally, Ada has asserted claims against Shell for punitive damages because of its intentional misrepresentations and other conduct which have made Shell liable for punitive damages under the PMPA and Guam law. These amounts are presently unquantified in light of the fact that Shell has yet to comply with this court's order of April 30, 2004 which requires Shell to provide Ada with a certain financial information and statements. Of course, punitive damages are also "damages" that will support such an element of fraud.

As shown above, the evidence presented in this case, and the reasonable inferences drawn therefrom, require denial of the Motion with respect to Count III of the SAC.

### B. Negligent Misrepresentation Claim.

In summary fashion, Shell argues that because the elements of intentional misrepresentation cannot be met, then the elements for negligent misrepresentation are also absent. *Shell Memo at 13.* This argument is clearly wrong.

As shown above, there is ample evidence in the record presented to this court to show the elements of intentional fraud. The only different element under negligent misrepresentation is that Shell have made its PMPA representations without reasonable grounds for believing them to be true. As the undisputed evidence above shows, Shell either knew or should have known that its misrepresentations regarding the PMPA in each of the agreements, which were prepared by Shell's counsel and reviewed by senior Shell management, were untrue when made to Ada, or there were no reasonable grounds for Shell believing that they were true when such misrepresentations were made.

14

**Anthony J. Ada v. Shell Guam, Inc., et al.**
**Civil Case No. CV00-00012**
**Memorandum of Points and Authorities in Opposition to Shell Motion for Summary Judgment**

Clearly, there is undisputed evidence on all elements of negligent misrepresentation, or reasonable inferences drawn from that evidence, to support such elements. Shell's Motion with respect to Count IV of the SAC must be denied.

### C. If Shell Is Granted Summary Judgment On The PMPA Claims, The Remainder Of The Case Must Be Remanded To The Guam Courts.

Shell argues that if the court grants Shell's Motion for Summary Judgment as to Counts I and II of the SAC, the court should retain supplemental jurisdiction of the Guam law claims. *Shell Memo at 8-10*. If the court grants summary judgment to Shell on Ada's PMPA claims, which Ada asserts would be error, the court should remand the remaining Guam law claims to the Superior Court of Guam for determination.

Federal law provides that if at any time before final judgment it appears that the District Court lacks subject matter jurisdiction, the case shall be remanded. *28 U.S.C. §1447(c)*. While the language of Section1447(c) appears to be clear, there has been some debate among the Circuits as to whether remand is mandatory. *Wright, Miller & Cooper, Fed. Prac. Proc.; Jurisdiction and Related Matters 3d §3739*. However, if the jurisdictionally sufficient federal claims are dismissed before the trial commences, the District Court normally should remand the jurisdictionally insufficient supplemental claims to the state court, although the court has some limited discretion to retain and adjudicate them. *Id*. In the usual case in which all federal-law claims are eliminated before trial, the balance of factors points toward declining to exercise jurisdiction over the remaining state-law claims. *Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7 (1988)*.

15

**Anthony J. Ada v. Shell Guam, Inc., et al.**
**Civil Case No. CV00-00012**
**Memorandum of Points and Authorities in Opposition to Shell Motion for Summary Judgment**

In this case, Ada initiated suit in the Superior Court of Guam and it was subsequently removed to this court by Shell, over Ada's objections. The only basis for jurisdiction in this court is federal question based upon claims asserted by Ada under the PMPA. The remainder of the claims in the SAC are all based upon Guam law, which are not matters over which this court has original jurisdiction. In the event that this court grants summary judgment to Shell on the PMPA claims, the only remaining claims would be under Guam law which should be decided by Guam courts. This court should find that upon the considerations of convenience, fairness, and comity, it should exercise its discretion to remand the remaining claims for consideration by the Superior Court of Guam. *See, Doe v. Benicia Unified School District, 206 F. Supp. 2d 1048, 1056-7 (E.D. Cal. 2002)* (summary judgment for defendant's only claim over which court had original jurisdiction which allows court to remand all remaining claims on considerations of convenience, fairness, and comity).

## V. BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING.

Shell argues that it is entitled to summary judgment on Count VI of the SAC, relating to a breach of the covenant of good faith and fair dealing, because this type of claim is not a tort, no punitive damages are allowable, and because there can be no breach of the implied covenant because Shell's conduct in terminating the franchise agreements was authorized. *Shell Memo at 13-15.* Shell's arguments are without merit.

The implied covenant of good faith and fair dealing provides that if the cooperation of the other party is necessary for successful performance of an obligation, a promise to give that cooperation, and not to do anything that prevents realization of the fruits of performance, will often be implied. *Witkin, Summary of Cal. Law. (9th ed.) Contracts §742(b).* The implied covenant of good

16

**Anthony J. Ada v. Shell Guam, Inc., et al.**
**Civil Case No. CV00-00012**
**Memorandum of Points and Authorities in Opposition to Shell Motion for Summary Judgment**

faith and fair dealing not only imposes upon each contracting party the duty to refrain from doing anything which would render performance of a contract impossible by any act of his own, but also the duty to do everything that the contract presupposes that he will do to accomplish its purpose. *Id.* (citing *Harm v. Frasher, 181 C.A. 2d 405, 417 (1960).* Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement. *Restatement, Second Contracts §205.*

Good faith "performance" is explained in Comment d in the Restatement: "subterfuges and evasions violate the obligation of good faith and performance even though the actor believes his conduct to be justified. But the obligation goes further: bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. A complete catalog of types of bad faith is impossible, but the following types are among those which have been recognized in judicial decisions: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other parties performance."

Good faith in "enforcement" is explained in Comment e and it is violated by dishonest conduct "such as conjuring up a pretended dispute, asserting an interpretation contrary to one's own understanding, or falsification of facts. . . . . other types of violation have been recognized in judicial decisions: . . . . abuse of a power to determine compliance or to terminate the contract."

In this case, as shown above, Shell has admittedly misrepresented to Ada the law applicable to the subject agreements, and is attempting to use that misrepresentation to deny Ada his rights under the PMPA, even though such rights were guaranteed to Ada under the clear and unambiguous

17

**Anthony J. Ada v. Shell Guam, Inc., et al.**
**Civil Case No. CV00-00012**
**Memorandum of Points and Authorities in Opposition to Shell Motion for Summary Judgment**

language in the agreements. Further, Shell is attempting to evade the clear spirit of the bargain by denying the applicability of the PMPA and is attempting to use its own mistake in drafting the documents in order to deny Ada his rights under the PMPA with respect to termination for cause. Further, by denying the applicability of the PMPA, Shell is attempting to conjure up a pretended dispute and is asserting an interpretation contrary to the clear and unambiguous language contained in the agreements which granted Ada a franchise under the PMPA. This conduct on Shell's part constitutes a breach of the performance and enforcement provisions of the implied covenant of good faith and fair dealing and there is reasonable evidence to be presented to a jury for such a finding.

With respect to Shell's claim that a breach of the implied covenant of good faith and fair dealing is solely limited to a contract action, a party to a contract may incur tort remedies, when in addition to breaching the contract, such party seeks to shield itself from liability by denying, in bad faith and without probable cause, that the contract exists. *Seaman's Direct Buying Serv. v. Standard Oil, 686 P. 2d 1158, 1167(Cal. 1984) (en banc)*. In this case, while Shell is not denying that the agreements exist, they are denying that one of the major considerations for entering into the contract, and a clear and unambiguous representation by Shell of the applicability of the PMPA, is nothing more than a "mistake", such conduct being in bad faith and without probable cause, as shown by the evidence discussed above. Under such circumstances, Shell can be liable for a breach of the implied duty of good faith and fair dealing both under contract and tort law.

18

**Anthony J. Ada v. Shell Guam, Inc., et al.**
**Civil Case No. CV00-00012**
**Memorandum of Points and Authorities in Opposition to Shell Motion for Summary Judgment**

## VI. ADA HAS CLAIMS UNDER THE
## GUAM CONSUMER PROTECTION ACT.

Shell argues that it is entitled to summary judgment on Count VII of the SAC because Ada's claim is allegedly barred by the statute of limitations, Ada allegedly failed to give proper notice of his claims before filing suit, and that Ada is not a "consumer" under Guam law. *Shell Memo at 15-19.* These arguments are equally without merit.

Ada's claims are brought under the Deceptive Trade Practices - Consumer Protection Act (the "Act"), 5 G.C.A. §32101, et seq. The Act is to be liberally construed in favor of the consumer and shall be applied to promote its underlying purposes, which are to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty, and to provide efficient and economic procedures to secure such protection. *Id. at §32108(a).* The Act requires that a consumer shall give written notice to the person at least thirty days before filing a lawsuit advising the person, "in reasonable detail", of the consumer's specific complaint and the amount of actual damages and expenses, including attorneys fees, if any, reasonably incurred by the consumer in asserting the claim against the party. *Id. at §32110(a).*

All actions brought under the Act must be commenced within three years after the date on which the false, misleading, or deceptive act or practice occurred or within three years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act. *Id. at §32121.* Under the Act, false, misleading, or deceptive acts or practices, including, but not limited to those listed in the Act, are declared unlawful and are subject to action by any person as permitted pursuant to the Act or other provisions of Guam law. *Id. at §32201.*

19

Anthony J. Ada v. Shell Guam, Inc., et al.
Civil Case No. CV00-00012
Memorandum of Points and Authorities in Opposition to Shell Motion for Summary Judgment

The provisions of the Act are to be liberally construed in favor of the consumer. *Id.* The term "false, misleading, or deceptive acts or practices" includes, but is not limited to, "knowingly representing that an agreement confers or involves rights, remedies, or obligations which it does have or involve." *Id. at §32201(12).* A "business consumer" is a person who acquires by purchase any goods or services for commercial or business use. *Id. at §32102(a).* Under the Act, a "consumer" means an individual who acquires by purchase any goods or services, except that the term does not include "business consumer" that has assets of $25,000,000.00 or more. *Id. at §32102(d).* Accordingly, a "consumer" includes any "business consumer" that does not have assets of $25,000,000.

Shell argues that Ada's claims under the Act are foreclosed by the statute of limitation because Ada knew since at least February 1, 1996, of Shell's deceptive business practices. However, Shell admits that it never told Ada before he assigned any of the agreements that Shell did not intend the PMPA language in the agreements to be effective. *Stalker Depo. 2 at p. 90, l. 18 though p. 91, l. 15.* Further, Shell admits that at the time Ada signed the agreements, Ada had no reason to know that the PMPA language in the agreements was not applicable to him. *Id. at p. 92, l. 15 through p. 93, l. 12.* In fact, Ada did not become aware that Shell repudiated the clear and unambiguous PMPA language in the agreements it prepared until he had retained counsel in February, 2000, and suit was filed in court. *Ada Decl. at ¶ 5.* Shell claims that it was unaware of the PMPA language in Ada's agreements until at least 1998 or 1999. *Stalker Depo 2, p. 97, l. 14 to p. 98, l. 1.*

Based on these undisputed facts, Ada could not in the exercise of reasonable diligence have discovered Shell's false and deceptive practice relating to the PMPA language in the agreements it

20

**Anthony J. Ada v. Shell Guam, Inc., et al.**
**Civil Case No. CV00-00012**
**Memorandum of Points and Authorities in Opposition to Shell Motion for Summary Judgment**

prepared until February, 2000. Ada filed his initial Complaint in this case, in the Superior Court of Guam, on February 23, 2000. Such Complaint did not contain any claims under the Act. However, on May 24, 2001, counsel for Ada delivered a written notice to counsel for Shell indicating that Ada intended on pursuing the claims under the Act and would moving to amend the Complaint in the near future. *Pipes Decl. at ¶ 6, Exhibit "F".* Ada filed his First Amended Complaint on July 24, 2001, which contains a claim under the Act, only fifteen months from the date Ada learned of Shell's misleading and deceptive practices. Clearly, Ada's claims under the Act are not barred by the statute of limitation.

Next, Shell argues that Ada failed to comply with the notice requirement under the Act. However, it is undisputed that Ada gave written notice of his intent to pursue claims under the Act by his counsel's letter of May 24, 2001, which was sixty days prior to the filing of the First Amended Complaint in which those claims were asserted. *See, Pipes Decl. at Exhibit "F".* The written notice provided to Shell and its counsel identified, in reasonable detail, Shell's deceptive practices relating to Shell's representations to Ada that he was a franchise dealer under the PMPA and Shell's later assertion that he was not a dealer and had no rights under the PMPA, Shell's "bait and switch" tactics relating to business trade accounts that Shell encourages Ada to accept but which could not qualify for the Shell Card program, and Shell's unilateral termination of Ada's contractual right to commissions. *Id.* The written notice to Shell further indicates that Ada intends on seeking actual damages and expenses of not less than five hundred thousand dollars and attorneys fees of not less than twenty five thousand dollars, as well as exemplary and punitive damages of not less than two million dollars. *Id.* Neither Shell nor its attorneys made any response to Ada's written notice under

21

Anthony J. Ada v. Shell Guam, Inc., et al.
Civil Case No. CV00-00012
Memorandum of Points and Authorities in Opposition to Shell Motion for Summary Judgment

the Act. Further, neither Shell nor its attorneys made any request for further information or documents relating to Ada's claims under the Act. *Id.* Clearly, Ada has complied with the written notice requirements under the Act.

Finally, Shell argues that Ada is not a "consumer" under the Act and, therefore, cannot maintain any claims thereunder. However, as shown above, Ada clearly has standing under the Act. While Ada may be a business consumer, Ada does not have assets of twenty five million dollars or more. *Ada Decl. at ¶ 6.* As such, Ada qualifies as a "consumer" under the Act. *See, 5 G.C.A. §32102(d).*

Shell makes a convoluted argument that Ada could not be a "consumer" because all of the products which Ada sold at his stations were sold on consignment. However, this argument is patently false.

From the inception of his relationship with Shell in 1993, to the present, Ada has purchased from Shell all types of motor oil, coolants, 2-cycle oils, grease, de-watering fluids, brake fluids, automatic transmission fluids, hand cleaners, and battery water under the terms of the agreements. *Ada Decl. at ¶ 7.* Ada purchases all such products from Shell for his own account and resells them to the general public at prices he sets. *Id.* Shell's written agreements with Ada require him to purchase all such lubricating oils from Shell during the terms of the agreements. *See, e.g., Stalker Decl. at Exh. "1d", p. 1-3* ("Motor fuels" means gasoline, "lubricating oils" means all other lubricating oils, "petroleum products" means lubricating oils and motor fuels, Ada is required to purchase from Shell and maintain a full selection of lubricating oils for sale).

22

**Anthony J. Ada v. Shell Guam, Inc., et al.**
**Civil Case No. CV00-00012**
**Memorandum of Points and Authorities in Opposition to Shell Motion for Summary Judgment**

Further, with respect to gasoline, Ada is more than a consignee. As discussed above, the express terms of the agreements between Shell and Ada indicate that Ada is in business independent of Shell. Also, Ada has business licenses for the retail sale of fuel, all funds from the sale of fuel are deposited into Ada's own account and not Shell's, all credit card charges are into Ada's own account and not Shell's, and Ada is required to assume all risk of collecting on checks and credit card charges. *Ada Decl. at ¶ 2.*

Even assuming the gasoline that Ada received can be described as "on consignment", all the other petroleum products and lubricating oils, and automotive products which Ada offers for sale and at the price he sets clearly qualify him as a business consumer under the Act. The products are bought from Shell pursuant to the agreements that are the subject of Shell's false, misleading, and deceptive practices. Ada clearly has standing to make claims under the Act against Shell.

## VII. ADA HAS A CAUSE OF ACTION FOR ESTOPPEL AGAINST SHELL.

Finally, Shell argues in summary fashion that Ada cannot assert a claim for estoppel for several reasons. *Shell Memo at 19-20.* However, these claims were previously addressed by this Court in a ruling on Shell's Motion to Dismiss this case. In the court's Order of April 16, 2002, wherein the court determined that Ada had asserted a request for equitable estoppel "which is permitted under the PMPA". *See, Order, filed April 16, 2002, at 6.* As discussed above, the court has determined that Ada has a cause of action for estoppel and such decision has become the law of the case. Shell is precluded from arguing otherwise.

23

Anthony J. Ada v. Shell Guam, Inc., et al.
Civil Case No. CV00-00012
Memorandum of Points and Authorities in Opposition to Shell Motion for Summary Judgment

However, even if the court were to agree to revisit this issue, which it should not, based upon the evidence shown above, Ada has presented the facts which support each of the necessary elements to prove estoppel.

As shown above, Shell either knew or should have known that under its belief that Ada was an agent instead of a dealer that the PMPA did not apply and the PMPA language should not have been included in the agreements which Shell and its attorneys drafted. As also shown above, Shell expected that Ada would rely upon its preparation of the agreements and its expertise in the fuel industry and that Ada reasonably relied upon Shell to this extent. Further, Shell admits that Ada had no reason to believe, at the time he signed any of the agreements, that the PMPA language included by Shell in such agreements did not apply to him. And, finally, it is undisputed that Ada has relied upon the agreements drafted by Shell and its attorneys as defining the rights and obligations of the parties and that Shell is now asserting that rights guaranteed Ada by the clear and unambiguous language in such agreements was nothing more than a "mistake". Ada clearly relied, to his detriment, on the agreements prepared by Shell and its attorneys. As such, Ada has presented evidence, and reasonable inferences from such evidence, that support each of the elements of estoppel.

//
//
//
//
//

24

Anthony J. Ada v. Shell Guam, Inc., et al.
Civil Case No. CV00-00012
Memorandum of Points and Authorities in Opposition to Shell Motion for Summary Judgment

## VIII. CONCLUSION.

For the reasons stated herein, Shell's Motion must be denied in its entirety.

Dated this 15th day of September 2005.

LAW OFFICES OF RICHARD A. PIPES
Attorneys for Plaintiff

By: _____

RICHARD A. PIPES

RAP/fdm

25

# EXHIBIT "A"

RECEIVED
Law Office of
Cesar C. Cabot, P. C.
Date: 5.9.00
Time: 9:45 am
Initials: TCA

**IN THE SUPERIOR COURT**

**OF GUAM**

FILED
SUPERIOR COURT
OF GUAM

MAY 4   3 17 PM '00

ALFRED G.
CIVIL CASE NO. CV0282-00

ANTHONY J. ADA,

       Plaintiff,

   vs.

SHELL GUAM, INC., and
DOES I through XX, Inclusive,

       Defendants.

**DECISION AND ORDER**

## INTRODUCTION

This matter came before the HONORABLE MICHAEL J. BORDALLO on the 29th day of February 2000, on Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction. Richard A. Pipes represented the Plaintiff, Anthony J. Ada. The Defendant, Shell Guam ("Shell") and Mariana Acquisition Corporation ("MAC") was represented by Steven Zamsky. The Court now issues the following Decision and Order.

## BACKGROUND

On February 23, 1993, Shell and Anthony J. Ada ("Ada") entered into a written franchise agreement which allowed the Plaintiff to use in connection with the sale of motor fuels and lubricants a trademark that is owned and controlled by Shell at Shell Service Station in Mangilao. The franchise agreement was for a term of one year, ending on February 28, 1994. On March 1, 1994, Shell and the Plaintiff entered into a written franchise agreement for a term of five years, ending on February 28, 1999, for the operation of the Shell Service Station in Mangilao. The franchise agreements conspicuously stated that the Petroleum Marketing Products Act ("PMPA") applied to the relationship. On March 18, 1999, Shell and Ada executed an amendment to the franchise agreement. In the amendment, the parties agreed that Ada would continue to operate the facility until February 29, 2000.

On February 1, 1995, Shell and Ada entered into a written franchise agreement to operate the Shell Service Station in Barrigada for a term of one year, ending January 31, 1996. On February 1, 1996, Shell and Ada entered into a written franchise agreement to operate the Shell Service Station

in Barrigada for a term of three years, ending January 31, 2001. The franchise agreements conspicuously stated that the Petroleum Marketing Products Act ("PMPA") applied to the relationship. On March 18, 1999, Shell and Ada executed an amendment to the franchise agreement. In the amendment, the parties agreed that Ada would no longer operate the Mangilao facility as of February 29, 2000.

On December 10, 1999, Shell's regional marketing manager, Fred Keller gave notice to Ada that the franchise agreement was expired as of February 28, 2000, and that Shell was exercising its option not to renew the franchise agreement. On February 23, 2000, the Plaintiffs' filed their complaint for Declaratory Judgment, Unlawful Termination of Petroleum Franchise, Exemplary Damages, Preliminary and Permanent Injunctions, and Damages against Shell. Count two of the complaint alleges that Shell has attempted to unlawfully terminate the franchise agreement in violation of the Petroleum Marketing Practices Act. 15 U.S.C. §2801 et. seq. On February 25, 2000, the Court granted the Plaintiff a temporary restraining order, which expired on March 9, 2000. On February 29, 2000, the Court granted the Plaintiff's motion for preliminary injunction. The Court now issues its written Decision and Order.

## DISCUSSION

The Plaintiff moves this Court to issue a preliminary injunction alleging that the PMPA applies to its relationship with Shell, and that Shell has intentionally and willfully failed to comply with the termination and non-renewal provisions of the PMPA. The Plaintiff contends that its relationship with Shell constitutes a franchise, which would bring the parties contract within the protections of the PMPA. The Plaintiff further argues that the plain language of the contract between the parties expressly states that the PMPA is applicable to their relationship. The Defendant, however, alleges that the PMPA does not apply because the relationship between the parties is that of principal and agent, and that the parties amended the agreement to exclude the conspicuous statement expressly bringing the contract within the PMPA provisions.

- 2 -

15 U.S.C. §2801(1)(A) and (1)(B) define "franchise" to mean:

> . . . any contract (i) between a refiner and a distributor, (ii) between a refiner and a retailer, (iii) between a distributor and another distributor, or (iv) between a distributor and a retailer, under which a refiner (as the case may be) authorizes or permits a retailer or distributor to use, in connection with the sale, consignment, or distribution of motor fuel, a trademark which is owned or controlled by such refiner or by a refiner which supplies motor fuel to the distributor which authorizes or permits such use.

> . . . The term "franchise" includes (i) any contract under which a retailer or distributor (as the case may be) is authorized or permitted to occupy leased marketing premises, which premises are to be employed in connection with the sale, consignment, distribution of motor fuel under a trademark which is owned or controlled by such refiner or by a refiner which supplies motor fuel to the distributor which authorizes or permits such occupancy; (ii) any contract pertaining to the supply of motor fuel which is to be sold, consigned or distributed under a trademark owned or controlled by a refiner. . .

However, this Court need not even reach the determination of the nature of the Plaintiff and Defendant's relationship, because the contracts between the parties clearly define the franchisor to franchisee relationship as being within the protections of the PMPA. Only where the contract provision is contrary to the PMPA should the Court enforce the protections of the PMPA. _Farm Stores, Inc. v. Texaco, Inc._, 763 F2d 1335 (11th Cir. 1985)(contract exclusion defining relationship as outside the scope of PMPA upheld because the relationship was not the type Congress intended to protect.) Because the parties agreed to bring the relationship within the PMPA, the Court finds that the PMPA requirements applies to the agreement.

Franchisees may obtain preliminary injunctive relief if (1) they establish that the franchise has been terminated and that "there exists sufficiently serious questions going to the merits to make such questions a fair ground for litigation," and (2) the court determines that, on balance, the hardships imposed upon the franchisor by issuance of preliminary injunctive relief are less than the hardships that would be imposed upon the franchisee in the absence of such relief. *15 U.S.C. §2805(b)(2)(A) and (B)*. The test for the issuance of a preliminary injunction under the PMPA is more liberal than that in the general run of cases. Once a franchisee establishes that he will incur the greater hardship, he need only show "a reasonable chance of success on the merits." Khorenian v. Union Oil Co. of

- 3 -

California, 761 F.2d 533 (9th Cir. 1985). In contrast to Rule 65 of the Rules of Civil Procedure, the PMPA does not require the franchisee to make a showing of irreparable harm. More importantly, nor does the PMPA require a plaintiff to show the likelihood of success on the merits as he would be required under Rule 65. The Act provides that once the franchisee establishes that the franchise relationship has been terminated or that it has not been renewed, the franchisor "shall bear the burden of going forward with evidence to establish as an affirmative defense that such termination or non-renewal was permitted" under one of the statutorily enumerated grounds. *15 U.S.C. § 2805(c)*. Reading section 2805 as a whole, a franchisee is entitled to a preliminary injunction if the balance of hardship tips in his favor and there is a "reasonable chance" that the franchisor will be unable to prove that the termination was permissible under the Act. In short, in order to rebut the franchisor's showing, the franchisee need show only the existence of "sufficiently serious questions" as to the propriety of the termination under the Act to present a "fair ground" for litigation. Upon a finding that a party is entitled to a preliminary injunction, the Court may require the party to post a bond. *15 U.S.C. § 2805(b)(3)*.

The Plaintiff alleges that Shell did not comply with the requirements for notification of termination and non-renewal. The PMPA requires that prior to termination of any franchise or nonrenewal of any franchise relationship, the franchisor is required to notify the franchisee not less than 90 days prior to the date on which the termination or nonrenewal takes effect. 15 U.S.C. §2804(a). 15 U.S.C. §2804(c) requires that notification be in writing; posted by certified mail or personally delivered to the franchisee; and contain a statement of intention to terminate the franchise or not to renew the franchise relationship, together with the reasons therefor; the date on which such termination or nonrenewal takes effect; and the summary statement prepared by the Secretary of Energy under the provisions of 15 U.S.C. §2804(d).

On December 10, 1999, Shell gave notice to Ada of its intent to terminate the franchise. No reason for termination was given, other than Shell is exercising its option not to renew the agreement. The notice was effective on February 28, 2000, eighty days from the notice of termination. The

- 4 -

service stations and convenience stores attached to the stations are operated by the Plaintiff, and are treated as a family operated business. Plaintiff has no other significant source of income. The Plaintiff has operated and purchased inventory for the convenience stores located within the service station. Relinquishment of the service station would result in lost income and lost inventory. The Court finds that there exists sufficiently serious questions going to the merits to make such questions a fair ground for litigation; whether there exists a franchisor to franchisee relationship, and whether the franchisor complied with the required notice of termination. Additionally, the Court finds that the hardships tip in favor of the Plaintiff. Therefore, the Court grants the Plaintiff's motion for preliminary injunction; no bond will be required for the issuance of the preliminary injunction.

## CONCLUSION

Based on the foregoing, the Court finds that Anthony Ada has met the evidentiary burden set out by the Petroleum Marketing Products Act. Furthermore, the Court finds that there exists a sufficiently serious question for litigation on the issue of whether Shell is entitled to terminate and/or fail to renew the franchise. Therefore, the Court GRANTS the Plaintiff's Motion for Preliminary Injunction; no bond will be required for the issuance of the preliminary injunction.

SO ORDERED this 4th day of May, 2000

Honorable Michael J. Bordallo
Judge, Superior Court of Guam