LAW OFFICES OF BRONZE & TANG, P.C.
BankPacific Building, Suite 201
825 South Marine Drive
Tamuning, Guam 96913
Telephone No.: (671) 646-2001
Facsimile No.: (671) 647-7671

RICHARD A. PIPES, ESQ.
LAW OFFICES OF RICHARD A. PIPES
Orlean Pacific Plaza, Suite 201
865 South Marine Corps Drive
Tamuning, Guam 96913
Telephone No.: (671) 646-1222
Facsimile No.: (671) 646-2203

Attorneys for Plaintiff



FILED
DISTRICT COURT OF GUAM
SEP 22 2005
MARY L.M. MORAN
CLERK OF COURT

IN THE DISTRICT COURT OF GUAM

| ANTHONY J. ADA, | ) | CIVIL CASE NO. CV00-00012 |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | |
| SHELL GUAM, INC., et al., | ) | |
| Defendants. | ) | **DECLARATION OF ANTHONY J. ADA IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| SHELL GUAM, INC., | ) | |
| Counterclaim Plaintiff, | ) | |
| v. | ) | |
| ANTHONY J. ADA, | ) | |
| Counterclaim Defendant. | ) | |

I, ANTHONY J. ADA, do hereby declare as follows:

1. I am over the age of eighteen years and competent to make this Declaration. I have

ORIGINAL

personal knowledge of the matters stated herein and would be competent to testify thereto if called as a witness to these proceedings. I am the Plaintiff in this matter.

2. I understand that Shell argues that I could not possibly be subject to the Petroleum Marketing Practices Act ("PMPA") because I do not buy fuel from Shell or set fuel prices. However, there are a number of circumstances which show that I do, in fact, take title the fuel delivered at the stations, have risk associated with the sale of fuel, and I am the person properly licensed to sell the fuel. Whenever I sell fuel at the stations, the money is deposited in my bank accounts, which are mine alone, and commingled with other funds of mine, including those from sales at the convenience store. Funds from station operations are deposited into my accounts and are later remitted, in part, to Shell. With respect to the sale of fuel, I bear the risk for "drive aways", meaning customers who pump gas and drive away without paying, sales of fuel to customers on credit accounts who do not pay or whose checks "bounce", risks associated with credit card sales and the costs incurred by me for such sales, and risks for any discrepancies related to missing fuel. Also, all employees at both of my stations are my employees and I am solely responsible for their hiring, retention, and payment. Since 1993 to the present, I have obtained and maintained the business licenses for both stations for the sale of petroleum products, including motor fuel and oils. Attached hereto as Exhibit "A" are true and correct copies of the business licenses currently issued to me for sale of motor fuel and petroleum products at my stations.

3. Shell has required me to implement a promotional program called "Lucky 7" which provides customers with incentives to purchase fuel from Shell stations. Under the program, a customer is given a stamp for each five gallons of fuel purchased from a Shell service station or, under special promotions, more than one stamp. The customers accumulate stamps on a card and when they have

have twenty stamps they are entitled to redeem the card at any Shell station for a seven dollar purchase on gas or convenient store items. The vast majority of redemptions, in excess of 95%, are used for fuel purchases. Shell only reimburses me $5.25 per card for those redemptions and I, therefore, bear the loss of a $1.75 per card. Those losses are in excess of sixty thousand dollars. Shell has claimed that I have to pay for part of the program because it will generate sales at the convenience store, but this has not been the case, as described above. Customers redeeming the Lucky 7 cards are just buying gas so the promotion causes me to be damaged.

4. In March, 1999, Shell prepared an "Amendment of Agency" ("Amendment") that purports to amend certain provisions of the second Mangilao agreement and second Barrigada agreement to change the terms and to delete certain sections from such Agreements, which contained the rights and obligations of the parties with respect to termination and non-renewal, and certain other rights guaranteed by the PMPA. Prior to the signing of the Amendment, Shell representatives told me that Shell was not going to renew my franchise at the Mangilao station, even though it had no cause to terminate as required under the PMPA. Being unaware of my rights under the PMPA, I felt that I had no other choice than to sign the Amendment, which Shell presented as a "take it or leave it" proposition. Shell made it clear to me that if I did not sign the Amendment prepared by Shell, the Mangilao franchise would be terminated immediately and would not be extended. I was unaware, at the time I signed the Amendment, that the PMPA prohibited Shell from conditioning the renewal or extension of the Mangilao station franchise upon a waiver of my rights under the PMPA.

5. I understand that Shell is arguing that because I was not completely aware of what the PMPA was when I signed the subject franchise agreements I have no rights under the PMPA. While I may not have understood the PMPA language at the heading of the Agreements, I assumed that all

of the terms and conditions contained in the Agreements were important and were to be relied upon by both parties. I relied upon Shell to prepare the Agreements because it had specialized knowledge in the petroleum fuel industry. Had I known that there were provisions in the Agreements which Shell felt were not applicable to me, I would never have entered into any of the Agreements with Shell. I did not have any "mistake" as to the applicability of the PMPA to the Agreements and my relationship with Shell. I felt that all of the terms and conditions in the Agreements were applicable and were binding as to the rights and obligations of both parties. All of the Agreements were prepared by Shell and I had no input into the drafting of the Agreements. I did not negotiate any of the terms of the Agreements and the Agreements were presented to me, in their final form, for signing. I made no amendments to any of the Agreements.

I declare under penalty of perjury under the laws of the United States and Guam that the foregoing is true and correct.

Executed this _____ day of September, 2005.

_____
ANTHONY J. ADA

RAP/nsh

# EXHIBIT "A"



**BUSINESS LICENSE** SRL NO. 063536...

**DEPARTMENT OF REVENUE AND TAXATION**
GOVERNMENT OF GUAM
P.O. Box 23607
Sole Proprietorship    Retail    ACCOUNT NO. 30-00093593-003 R

ISSUED TO: LINDA ANTHONY
EXPIRES: JUNE 30, 2006
DOING BUSINESS AS: SHELL BARRIGADA SERVICE STATION
TYPE OF LICENSE: SALE OF PETROLEUM PRODUCTS, TIRES, LUBRICATION & AUTO CARE ACCESSORIES
BUSINESS LOCATION: 766 WEST ROUTE 8, BARRIGADA, GUAM
MAILING ADDRESS: 766 WEST ROUTE 8, BARRIGADA, GUAM 96913
TELEPHONE: 477-6178

FEE 40.00
PENALTY .00
TOTAL FEE 40.00

PAID JUN 28 2005
Treasurer of Guam
CASHIER #7
6/28/05

DIRECTOR OF REVENUE AND TAXATION



**DEPARTMENT OF REVENUE AND TAXATION**
**GOVERNMENT OF GUAM**
P.O. Box 23607
G.M.F. Barrigada, Guam 96921

# BUSINESS LICENSE

SRL. NO: 0635368

ISSUED TO: AIA, ANTHONY J.
Sole Proprietorship
EXPIRES: JUNE 30, 2006

ACCOUNT NO. 30-000093593-002　　Retail　　R

DOING BUSINESS AS: SHELL MANGILAO

TYPE OF LICENSE: SALE OF PETROLEUM PRODUCTS

BUSINESS LOCATION: LOT 5370-2-3-1-NEW MANGILAO GUAM
BLOCK/MUNICIPALITY

MAILING ADDRESS: P O BOX 4478
HAGATNA, GUAM　　ZIP: 96932

TELEPHONE: HOME　　　BUSINESS: 734-5866

| FEE | PENALTY | TOTAL FEE |
|---|---|---|
| 40.00 | 00 | 40.00 |

PAID　JUN 28 2005　TREASURER OF GUAM CASHIER #7

6/28/05

Artemio B. Ilagan
DIRECTOR OF REVENUE AND TAXATION

---

**AUTHORITY:** TITLE XVII, GOVT CODE OF GUAM LICENSE MUST BE PRODUCED UPON DEMAND TO ANY AUTHORIZED GOVT OFFICIAL. KEEP POSTED IN A CONSPICUOUS PLACE.