LAW OFFICES OF BRONZE & TANG, P.C.
BankPacific Building, Suite 201
825 South Marine Drive
Tamuning, Guam 96913
Telephone No.: (671) 646-2001
Facsimile No.: (671) 647-7671

RICHARD A. PIPES, ESQ.
LAW OFFICES OF RICHARD A. PIPES
Orlean Pacific Plaza, Suite 201
865 South Marine Corps Drive
Tamuning, Guam 96913
Telephone No.: (671) 646-1222
Facsimile No.: (671) 646-2203

Attorneys for Plaintiff

FILED
DISTRICT COURT OF GUAM
SEP 22 2005
MARY L.M. MORAN
CLERK OF COURT

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| ANTHONY J. ADA,<br><br>            Plaintiff,<br><br>v.<br><br>SHELL GUAM, INC., et al.,<br><br>            Defendants.<br><br>SHELL GUAM, INC.,<br><br>            Counterclaim<br>            Plaintiff,<br><br>v.<br><br>ANTHONY J. ADA,<br><br>            Counterclaim<br>            Defendant. | CIVIL CASE NO. CV00-00012<br><br><br><br><br><br><br><br><br><br>**DECLARATION OF<br>WILLIAM J. BLAIR** |

I, WILLIAM J. BLAIR, do hereby declare as follows:

1.     I am over the age of eighteen years and competent to make this Declaration. I have



Anthony J. Ada v. Shell Guam, Inc., et al.-Civil Case No. CV00-00012
Declaration of William J. Blair
Page 2 of 3 pages

personal knowledge of the matters stated herein and would be competent to testify thereto if called as a witness to these proceedings. I am an attorney admitted to practice before the Courts of Guam and am a shareholder in the Guam law firm of Klemm Blair Sterling & Johnson, P.C.

2. Attached hereto as Exhibit "A" is a true and correct copy of a letter dated May 4, 1995 ("Tissot letter"), from Paul Tissot, Vice President/Marketing Manager of Shell Guam, Inc, ("Shell") to Tom Torres. At the time the Tissot letter was sent Mr. Torres, he was Vice President of J. P. Torres Enterprises, Inc.("Torres"), the holder of a Franchise Agreement with Shell for the operation of a gas station in Guam. The Tissot letter indicates that Shell is terminating dealers, moving to a "network of agencies", and is providing information pursuant to, and purportedly in compliance with, the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. §§ 2801, et seq.

3. After receiving the Tissot letter, my firm was retained by Torres to represent it in its dealings with Shell. Attached hereto as Exhibit "B" is a true and correct copy of my letter to Mr. Tissot dated September 11, 1995, in which I advise him, among other things, that Shell's attempted termination of the Torres dealer franchise was in violation of the PMPA.

4. After my letter to Mr. Tissot, my client was able to negotiate a settlement with Shell by which the franchise agreement was terminated for additional consideration to Torres.

I declare under penalty of perjury under the laws of the United States and Guam that the foregoing is true and correct.

Executed this 22nd day of September, 2005.

_____
WILLIAM J. BLAIR

RAP/nsh

# EXHIBIT "A"



## Shell Guam, Inc.

Your Reference:

Our Reference: a:\tumon\nrw\jpl.doc

Date: May 4, 1995

A Guam Corporation

Capitol Plaza, Suite 102
120 Father Duenas Ave.
Agana, Guam 96910

Telex No. (721) 6709 Shell GM
Facsimile No. (671) 477-4353

Telephone (671) 477-4348-52

Mr. Tom Torres
PO Box 2565
Agana, Guam 96910

Subject: **NON-RENEWAL OF DEALER SALES AGREEMENT EFFECTIVE 9/30/95**

Dear Tom:

Shell believe it is in the interest of both parties to keep communications open so we write to you, given we have had real difficulty contacting you by phone over the past several weeks. Retail Area Manager Marc Pido has called and left messages at both the JP Torres office and the Shell Tumon Service Station. Staff at both locations have repeatedly been asked to pass messages on to you.

As you are aware, the Guam economy and market place have been undergoing major changes during the past year. Politically, the cash-strapped government is looking for ways to decrease its spending in order to reduce its budget deficit. Further, the US military downsizing is imparting additional economic pressure on the government and the people of Guam.

The competition in the oil industry is increasing at a furious pace. Our competitors are adding value to their offerings to the public in anticipation of an economic slow-down. Exxon has obviously elevated and adjusted the level of service and merchandising at its sites. BHP/Gas Express has eliminated its driveway Mini-Service, in what appears to be an effort to reduce costs.

Mobil is also increasing its competitiveness by moving toward a network of agencies rather than dealers, and is currently undertaking an extensive network-wide renovation, upgrading existing sites and building new stations. It has come to our attention that Mobil has entered into negotiations with the Triple J real estate brokers to build an ultra-modern service station at the K-Mart location which, if built, will directly impact on Shell Tumon.

1

EXHIBIT A

In response to these ever increasing market pressures, Shell has reviewed its position in Guam and Saipan. The tightening economy and extremely competitive market place have dictated the necessity for Shell to move to a network of agencies. Agencies are operated in a lean fashion, and in such a way that they can respond rapidly to market movements. We believe that restructuring in this manner will offer the consumers a uniform and elevated level of professional merchandising, prompt service, and consistent promotion, at a sustainable operating cost and with an adequate return for Shell and its agent, relative to each party's investment in dollars and effort.

As you know from our meeting of several weeks ago, Shell is moving toward a network of agencies vis-a-vis dealers. We have determined in good faith this movement is necessary to Shell's continued profitable existence in the retail market on Guam. This letter serves as written notification (supportive of our earlier verbal notification) that Shell intends not to renew your dealer agreement at Shell Tumon upon its expiration on September 30, 1995.

As required by the Petroleum Marketing Practices Act (PMPA) we provide you with the following:

(1) a statement of our intention not to renew your contract along with the reason for this action;

(2) the date the non-renewal will take effect and;

(3) a copy of the Summary of the Petroleum Marketing Practices Act (see attached).

While Shell will not renew your dealer agreement, we are open to discussions about you taking up a one-year agency agreement. We provide a very brief overview of the different requirements of an agency compared to a dealer operation. The list is not in any way exhaustive nor detailed, but simply to be read as an indicator of differences.

**Fuel Payment and Revenues**
    <u>Agent</u>    Agents do not pay for, thus do not own, their fuel at time of delivery. Fuel pump sales are remitted at the end of each day's trading to Shell. It is usual for agents to earn a monthly cents-per-gallon commission (which are variable period to period) based on gallons sold.

**Rent**
    <u>Agent</u>    Agent does not pay rent on fuel facilities, but may pay a rental on associated facilities, such as shops and car wash areas, or alternatively, they pay a monthly commission on gross retail store and workshop sales. Commissions will vary dependent on market conditions and facility performance.

2

Case 1:00-cv-00012   Document 178   Filed 09/22/2005   Page 5 of 10

### Gains and Losses
<u>Agent</u>    In order to gain maximum focus on stock control, agents are required to reimburse Shell for month-end losses beyond 0.5% in the case of gasoline and 0.25% for diesel.

### Financial Statements
<u>Agent</u>    In order to maximize effective operations and minimize operational expenses, agents provide Shell with monthly profit and loss statements on a quarterly basis, which Shell uses to evaluate the business performance and set rental/commissions, etc. Agents are also required to provide a copy of their monthly Rev & Tax BR20 form.

If you wish, we can provide a sample agency agreement for your review. We point out that the level of Shell interaction in the business, the provision of information to Shell, the requirement for new capital investment, and the agent's commitment and managerial focus, will need to be substantially increased compared to your current dealer operation. Further, there will be a substantial realignment of available profitability.

In order to enable the proper planning and ensuing formalities to take place in regard to our good faith non-renewal of your dealer agreement and your possible undertaking of an agency operation, we ask that you give us a firm response as to your future directions by May 22, 1995.

We will ensure that upon change over to the party nominated as agent, that all matters for which Shell are responsible, both financial and procedural, will be professionally managed.

Yours faithfully,
for SHELL GUAM, INC.

PAUL TISSOT
Vice President/Marketing

Enclosures

3

# EXHIBIT "B"

LAW OFFICES
# KLEMM, BLAIR, STERLING & JOHNSON
A PROFESSIONAL CORPORATION

J. BRADLEY KLEMM
WILLIAM J. BLAIR
THOMAS C. STERLING
RICHARD L. JOHNSON
ELIZABETH ROBERTSON
VINCENT E. LEON GUERRERO
KELLY O. CLARK
THOMAS C. MOODY
JEHAN 'AD G. MARTINEZ

OF COUNSEL
WILLIAM B. CLEARY

SUITE 1008 PACIFIC NEWS BUILDING
238 ARCHBISHOP F.C. FLORES STREET
AGAÑA, GUAM 96910

TELEPHONES: (671) 477-7857
(671) 477-7558
(671) 477-4212

FACSIMILE: (671) 472-4290
(671) 477-2804

September 11, 1995

VIA FACSIMILE
(671) 477-4353

Mr. Paul P. Tissot
Marketing Manager
SHELL GUAM INC.
Capitol Plaza, Suite 102
120 Father Duenas Avenue
Agana, Guam 96910

RE: J.P. TORRES ENTERPRISES, INC.

Dear Mr. Tissot:

Our firm has been retained by J.P. Torres Enterprises, Inc. ("Torres"), in connection with Shell Guam Inc.'s ("Shell") decision not to renew Torres' franchise agreement. Mr. Tom Q. Torres, Vice President of Torres, approached us in part because of our firm's experience with the Petroleum Marketing Practices Act ("PMPA"), the federal law which governs the relationship between Shell and Torres.

In connection with this problem, we have reviewed the Franchise Agreement between Shell and Torres; the Notice of Non-Renewal, dated May 4, 1995; the Agency Sales/Trial Franchise Agreement proffered to Torres; certain correspondence previously exchanged by Shell and Torres; and the Termination Agreement executed by you on behalf of Shell and submitted to Torres.

Based upon our review, we have concluded the following:

1. The grounds asserted by Shell as the basis for non-renewal are inadequate to support Shell's decision not to renew;

2. Assuming Shell's grounds were sufficient (which is disputed), Shell was obliged to offer to sell or assign to Torres Shell's leasehold interest in the marketing premises, which Shell has failed to do; and


EXHIBIT B

3. Shell's decision not to renew the Franchise Agreement is in violation of the PMPA and entitles Torres to pursue the remedies provided for by the PMPA.

In the notice of non-renewal, Shell states that the basis for its decision not to renew the Franchise Agreement was that it had decided to move "to a network of agencies vis-a-vis dealers." Shell asserts this decision was made "in good faith" and was "necessary to Shell's continued profitable existence in the retail market in Guam." Shell attempts to justify this decision by reference to alleged competitive market forces at play in Guam.

Under 15 U.S.C. § 2802(b)(3)(D), one of the permitted grounds for non-renewal of a franchise relationship is where the franchisor has made a determination in good faith and in the normal course of business that, inter alia, renewal of the franchise relationship is "likely to be uneconomical to the franchisor despite any reasonable changes or reasonable additions to the provisions of the franchise which may be acceptable to the franchisee." 15 U.S.C. § 2802(b)(3)(D)(i)(IV). 15 U.S.C. § 2802(b)(3)(D)(ii) specifically provides, however, that a determination made pursuant to § 2802(b)(3)(D)(i)(IV) cannot be made for the purpose of converting the leased marketing premises to operation by employees or agents of the franchisor or for the franchisor's own account.

The notice of non-renewal states quite clearly that Shell's decision not to renew Torres' Franchise Agreement was made so that Shell can convert the leased marketing premises to an agency operation. As just noted, the U.S. Congress determined that this reason is inadequate, as a matter of law, to support a decision not to renew.

Even assuming it was, Shell was obliged under 15 U.S.C. § 2802(b)(3)(D)(iii), within 90 days after the notice of non-renewal was given, to make a bona fide offer to sell, transfer or assign Shell's interest in the marketing premises to Torres. Because Shell failed to do so, Shell cannot rely on the purported grounds for non-renewal, even putting aside the fact that Shell's stated motivation is to shift to an agency operation.

Given that Shell's decision not to renew the franchise is in violation of the PMPA, Torres is entitled to the remedies provided for by the PMPA. Such remedies would include

recovery of Torres' actual damages and attorney's fees. We believe this would also be an appropriate case for imposition of exemplary damages, given Shell's willful disregard of the requirements of the PMPA. We believe we would be able to establish the willfulness of Shell's disregard in light of the fact that Shell has been previously advised, in connection with Shell's refusal to renew another franchise in order to convert to agency operations, that the grounds upon which it relied were legally inadequate. Despite having been apprised of the legal inadequacy of the grounds that it has asserted for non-renewal, Shell has deliberately pursued a program of ousting its franchisees in favor of agency operations, in direct contravention of the basic purpose of the PMPA and the rights of the franchisees.

Mr. Torres and his company would be willing to discuss possible terms under which his company would waive its PMPA rights and agree to surrender its franchise, but Torres will not execute the Termination Agreement which has been proffered to it by you. As the current term of the Franchise Agreement is due to expire on September 30, 1995, and the notice of non-renewal takes effect October 1, 1995, Shell and Torres should get together as soon as possible, if this matter is to be resolved amicably. Otherwise, if Shell has not rescinded the notice of non-renewal and offered a renewal of the Franchise Agreement as required by the PMPA, we will be obliged to initiate appropriate action in federal court to preserve Torres' rights.

If you have any questions, please contact the undersigned or Brad Klemm of this office.

Very truly yours,

KLEMM, BLAIR, STERLING & JOHNSON
A Professional Corporation

*[signature]*

WILLIAM J. BLAIR

cc: Mr. Tom Q. Torres

G49:52:22\36676-01
WJB\LTR\377.AJC