CIVILLE & TANG, PLLC
SUITE 200, 330 HERNAN CORTEZ AVENUE
HAGÅTÑA, GUAM 96910
TELEPHONE: (671) 472-8868
FACSIMILE: (671) 477-2511

*Attorneys for Shell Guam, Inc.*
FILED
DISTRICT COURT OF GUAM
SEP 22 2005
MARY L.M. MORAN
CLERK OF COURT

## IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| ANTHONY J. ADA,<br><br>      Plaintiff,<br><br>vs.<br><br>SHELL GUAM, INC.,<br><br>      Defendant.<br>_____<br>SHELL GUAM, INC.,<br><br>      Counterclaim Plaintiff,<br><br>vs.<br><br>ANTHONY J. ADA,<br>      Counterclaim Defendant.<br>_____ | CASE NO. CV00-00012<br><br><br><br><br><br>**SHELL GUAM, INC.'S REPLY TO ANTHONY ADA'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT** |

**ORIGINAL**

1.  **The Superior Court's grant of a preliminary injunction to Ada does not implicate the law of the case doctrine.** Contrary to Ada's assertions, comments by the Superior Court judge during the hearing on the preliminary injunction or in his decision regarding the application of the PMPA are not law of the case and this Court is not bound by those comments. "Decisions on preliminary injunctions require the district court to assess the plaintiff's likelihood of success on the merits, not whether the plaintiff has actually succeeded on the merits." *Southern Oregon Barter Fair v. Jackson County, Oregon*, 372 F.3d 1128, 1136 (9th Cir. 2004). Furthermore, "decisions on preliminary injunctions are just that – preliminary – and must often be made hastily and on less than a full record." *Id.* Thus, "decisions on preliminary injunctions 'are not binding at trial on the merits,' *id.*, and do not constitute the law of the case." *Id.* (citations omitted). This principle has been applied to preliminary injunctions entered in the state court prior to removal. *See Dial Temporary Help Service, Inc. v. Shrock*, 946 F. Supp. 847, 852 (D. Or. 1996).

2.  **There are no material facts in dispute which could support a finding that the relationship between Shell and Ada was governed by the PMPA.** From pages 4 through 10 of his opposition memorandum, Ada argues that there are facts in dispute which support his PMPA claim. Looked at more carefully, it becomes clear there are no *material* facts in dispute. "Material facts are those which might affect the outcome of the suit." *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). Mostly Ada complains about the inclusion of PMPA language in the Agreements. He rightly points out that such inclusion was Shell's fault, and this is not in dispute. Ada goes on, however, to ascribe ill motives to Shell's mistake. *See* Ada's Opposition at pp. 5, 10; *see also* Ada's Opposition at p. 11-12, 18. Shell very definitely disputes those allegations. While the allegations regarding Shell's improper motives are disputed, they are not material to the issue of the applicability of the PMPA. In determining which facts are material, "it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986) ("As to materiality, the substantive law will identify which facts are material."). The case law is clear that it is the nature

of the relationship between the parties and not the just the words in the contract which determine the applicability of the PMPA. *See Sigmon v. Widenshouse Service, Inc.*, 638 F. Supp. 808, 813 (M.D.N.C. 1986) (finding that contract language referencing the PMPA "inconclusive at best," and explaining that "it is the relationship established by the entire contract and the subsequent performance of it that is relevant to the PMPA's application."); *Automatic Comfort, Corp. v. D & R Service, Inc.*, 620 F. Supp. 1349, 1355 (D.C. Conn. 1985); *Chatila v. Aranco Oil Corp.*, 2003 WL 1145501, * 2 (D.N.H. 2003) (agreeing with the defendant that "incorporation by reference of provisions of the PMPA in the lease does not determine whether a cause of action exists under the PMPA."). Measured by this standard there are no material facts in dispute relevant to the applicability of the PMPA.

Ada's reliance on 18 G.C.A. § 87104 ("language of contract to govern its interpretation..."), Ada's Opp. at p. 9, misses the point. Shell, by virtue of its mistake, incorporated provisions of the PMPA into the Agreements, which may have created a contractual obligation requiring Shell to follow PMPA procedures. Ada may arguably have a cause of action against Shell for breach of contract if Shell violated the terms of the contract. The issue on this motion is whether Ada has a cause of action for breach of federal law, and the answer is quite clearly "no." The language of the contract does not control the question of whether Ada has a federal cause of action; ultimately it is the nature of the relationship of the parties which determines that question, *see See Sigmon*, 638 F. Supp. at 813, and on this point there are no material issues of fact in dispute to support Ada's PMPA claim.

Ada takes a stab at identifying genuine issues of fact regarding his relationship with Shell that could be resolved in favor of PMPA coverage. Again he is wrong. Ada claims there is dispute regarding whether he buys the fuel from Shell and whether title to the fuel passes to him. He cites no facts to support this claim, and there are none. The Agreements specify that Shell will deliver fuel to the stations Ada operates. *See* Agreements § 4(a), Decl. of Philip Stalker, filed Sept. 1, 2005, in Support of Shell's Motion for Summary Judgment ("Stalker Decl."), Exs. 1(a)-1(d). *Compare*, Agreements §4(d), Stalker Decl, Exs. 1(a)-1(d) (Ada agrees to "purchase" lubricant from Shell).

Shell sells fuel to dealers, it does not sell fuel to agents. *See* Stalker Decl., ¶ 13. Ada never buys the fuel, and the fuel never becomes his to do with as he pleases. Stalker Decl. ¶ 6. Ada collects the money from fuel sales and reconciles the amounts sold on daily basis, and remits to Shell not less than four (4) times weekly the money collected from the fuel sales. Agreements §§ 5(a)(5)-5(a)(6), Stalker Decl, Exs. 1(a)-1(d). In return he receives a commission. Stalker Decl. ¶¶ 8-11. Dealers, which are considered franchisees under the PMPA, on the other hand buy the fuel and keep proceeds of the sales. *See* 15 U.S.C. § 2801(7) (defining a retailer and thus a franchisee as "any person who purchases motor fuel for sale to the general public for ultimate consumption."); *see also Farm Stores, Inc. v. Texaco, Inc.*, 763 F.2d 1335, 1339-1340 (11th Cir. 1985) (identifying "paying for the gasoline inventory until it was sold," "tak[ing] title," and "retain[ing] any funds from the sale of the gasoline to motorists," as factors indicative of being a retailer under the PMPA).

Ada does not dispute the fact that Shell sets the prices for the fuel. This is a bright line distinction between dealers and agents. *See Farm Stores, Inc. v. Texaco, Inc.*, 763 F.2d 1335, 1339-1340 (11th Cir. 1985) (identifying the ability to "set the price or assume the market risk in fluctuations in gasoline prices" as one indicator of retailer-status under the PMPA). Shell sets prices for agent operated stations because it owns the fuel. Dealers buy the fuel, own the fuel and set their own pump price.

Ada claims that he has market risk because he bears the loss of "drive aways," bounced checks, and bad credit. These aspects of Ada's business do not show entrepreneurial risk regarding the sale of fuel as required for PMPA applicability. Ada is not required to accept check payments or to extend credit. *See* Agreements, § 5(a)(3). The alleged risk to Ada with the "drive aways" is not entrepreneurial risk. Ada is a consignee of Shell's fuel, and like any other consignee, Ada's responsibility for "drive aways" relates only to his conduct in not being careful with the product consigned to him. This type of risk is managerial, that is, it is attributable to bad management in the handling of the fuel in Ada's possession, and is not an entrepreneurial risk related to the "sale" of fuel. Stalker Supp. Decl. ¶ 4.

Ada claims he undertakes a risk because he is responsible for the costs of selling fuel with

-3-
Case 1:00-cv-00012   Document 180   Filed 09/22/2005   Page 4 of 11

respect to the Shell Card. Ada's Opposition, at p. 8. Ada, in fact, has virtually no responsibility over any losses attributable to Shell Card payments. Stalker Supp. Decl. ¶ 5. As long as Ada complies with the rules of the Shell Card program, he has no risk at all. Stalker Supp. Decl. ¶ 5. Ada also claims that Shell required him to implement a "Lucky 7" program and that he assumes a risk under the program. This argument does not withstand scrutiny. As an initial matter, the "Lucky 7" program is not part of the lawsuit, and is not part of Ada's PMPA claim. Ada attempted to amend his complaint to add the "Lucky 7" claim to his complain, but the court denied Ada's request. See 8/29/05, Order. Ada's "Lucky 7" allegations should be rejected. Ada's role in the "Lucky 7" program does not involve entrepreneurial risk. Participation in the program is completely voluntary, and the program is specifically designed and intended to benefit the C-Store sales. Stalker Supp. Decl. ¶ 6.

Ada claims that he suffers the risk with regard to employees. This is also erroneous. Shell is responsible for paying the wages of the employees. Amended Agreements, Sheet 1, Stalker Decl., Ex. 2(a), 2(b). Ada's responsibilities with regard to the employees relates solely to his status as Shell's agent, and to his agent responsibilities, and does not evidence an entrepreneurial risk with regard to the sale of fuel necessary for PMPA protection.

Ada also claims that it has a risk because he has business license to sell petroleum products. This license may cover the sale of lubricants and C-store items, but it cannot be deemed to cover fuel. The purpose of obtaining a business license under Guam law, 11 GCA § 70130, is to ensure the payment of gross receipts taxes. *See EIE Guam Corp. v. Long Term Credit Bank of Japan, Ltd.*, 1998 Guam 6, ¶ 17 ("The purpose of 11 GCA § 70130 is to obtain compliance and collection of gross receipts taxes."). Shell pays the Gross Receipts Tax and the Liquid Fuel Tax for fuel sales. Agreements, ¶ 5(e). Ada's claim that he holds a business license to sell "petroleum products" does not, by itself, reveal any entrepreneurial risk associated with the sale of fuel in which Ada is merely a consignee and agent, and *not* a dealer or retailer.

In his Declaration, Ada claims that he relied on Shell to draft the agreements that were appropriate for the parties relationship, and that he relied on the PMPA language in the Agreements. Ada's Decl. In Opp. To Shell's Motion to SJ, ¶ 4. This, however, misdirects the analysis in this case.

It is the nature of the relationship itself that governs the applicability of the PMPA. Reliance on Shell's expertise or on language of the Agreements mistakenly referencing the PMPA does not control where the relationship when viewed in its entirely clearly indicates that there was no franchise arrangement between the parties. Pursuant to this latter circumstance, the PMPA does not apply.

3. **Damages.** There are no material facts in issue to support Ada's claims for damages. Ada has not been damaged since he has remained in possession of the stations pursuant to the preliminary injunction. *See Chevron U.S.A. Inc. v. El-Khoury*, 2002 WL 31256160, at *3 (C.D.Cal. 2002)[1] ("Defendant cannot logically claim actual damages on the basis of PMPA violations, since, by virtue of the parties' 'standstill agreement and the stay order issued by this Court, Defendant has remained in possession at all times and his franchise has not actually been terminated.").

At page 13 of his opposition Ada refers to a damage claim in excess of $700,000. When broken down, however, it becomes apparent that the largest portion of this claim (amounts for fuel differential) is based on a theory dreamed up by Ada's expert, for which there is utterly no factual support. The reimbursement model, which has been in effect since 1996, is a mutually agreed upon change in the manner in which Ada was compensated for fuel sales. Instead of being paid on a cents-per-gallon basis, and paying the costs of operating the stations out of his own pocket, Shell and Ada agreed in writing that Shell would pay Ada a monthly management fee and either directly pay or reimburse Ada for the costs of operating the station. *See*, Amendment to Agency Sales

---

[1] In footnote 1 on page 13 of his Memorandum, Ada excoriates Shell for citing this district court opinion, purportedly in violation of Ninth Circuit Rule 36-3(b), and requests that the citation be stricken and Shell be admonished to abide by this Court's rules. Ada is flat wrong. Ninth Circuit Rule 36-3(b) applies only to Ninth Circuit opinions. Ada states that "[i]n this Circuit, unpublished decisions 'shall not be cited to or by the courts of this Circuit." Ada Mem. at 13 n.1. Rule 36-3(b), which Ada selectively quotes, actually reads as follows:

> (b) Citation. Unpublished dispositions and orders of this Court may not be cited to or by the courts of this circuit, except in the following circumstances.

U. S. Ct. of App. 9th Cir. Rule 36-3, 28 U.S.C.A., CTA9 Rule 36-3 (West WESTLAW through Amendments received to 07-31-05). The Ninth Circuit held as much in *Renick v. Dun & Bradstreet Receivable Management Services*, 290 F.3d 1055, 1058 (9th Cir. 2002), when it rejected a motion to strike portions of a brief for citing an unpublished order to the District Court for the Southern District of California. ("Ninth Circuit Rule 36-3 quite clearly prohibits citations only of our unpublished dispositions; it does not apply to unpublished dispositions issued by any other courts within our circuit or elsewhere. See Ninth Cir. R. 36-3.").

Agreements, 8/19/05 Stalker Decl. **Ex. 2(a) and (b)**. Shell has faithfully paid Ada the agreed upon amount of reimbursement under this agreement.

> Q. Is Shell current in its payments to you under the reimbursement agreement?
>
> A. Under that reimbursement agreement, yes.

Ada Tr., 7/18/05 at 101, Decl. of Patrick Civille in Support of Shell's Motion for Summary Judgment filed Sept. 1, 2005 ("Civille Decl."), Ex. B.

Ada's expert claims Ada was injured in relation to the commission on fuel sales was the what Slater termed a "dollar differential claim," which he valued at about $375,000. The basis for this claim is Slater's conclusion that, if Ada had stayed on a cents-per-gallon commission model instead of switching to a reimbursement model, and if the cents per gallon commission had gone up proportionally to the rise in the pump price of fuel, Ada would have received more money. This claim, which is not alleged anywhere in the complaint, has no factual support. First, Ada agreed to switch to the reimbursement model, so there has been no breach of contract based on a failure to pay him on a cents per gallon basis. There are no facts in dispute on this point. Second, even when the fuel commission Shell paid to Ada was based on the cents-per-gallon model, it was never linked to the pump price of the fuel. **Stalker Decl. ¶ 8**; 7/18/05 Ada Depo Tr. at 106:14-17. Ada was initially paid a commission of .18 cents per gallon, which later went up to .21 cents per gallon. The cents per gallon was based on an estimate of how much it would cost to provide Ada with a certain level of income per station. The amount of the commission did not rise or fall with the pump price, and the pump price was not a consideration in setting the commission. **Stalker Decl. ¶ 8**. Ada admits that his fuel commission has never been linked to the price of fuel, so he has no basis for claiming unpaid commissions.

> Q. Am I correct there was never an agreement by Shell to pay you more than 21 cents per gallon when your commission was based on sales per gallon? I'm sorry, a commission per gallon sold?
>
> A. A written agreement, no.
>
> Q. Did you ever have an oral agreement that you would be paid more than 21 cents a gallon?

> A. It was a trust that they would ask -- as the prices went up that I trusted that they would be adjusted accordingly. The 21 cents.
>
> Q. Did you ever have a discussion with Shell about that?
>
> A. No.

7/18/05 Ada Tr. at 26:19-25-27:1-6.

Ada claims that he suffered damages from not being paid properly for participating in Shell's Lucky 7 Program, Citibank Discount Program and Shell Serve Program. These claims are disputed by Shell, but the dispute is not material to any issues raised in the Second Amended Complaint. Ada's claims relating to these promotional programs had nothing to do with the non-renewal of the Agreements. The promotional programs did not even exist at the time Ada flied is complaint on February 2, 2000.[2] Not only are these claims not true, but they are not even part of this lawsuit. Claims relating to these programs are nowhere to be found in the Second Amended Complaint. Ada recently tried to amend his complaint to add these claims, but his motion to amend was denied. See 8/29/05 Order.

Ada states that he has incurred attorneys' fees and costs and that"[o]f course, attorneys fees and costs are also damages." Ada Mem. at 14. What seems an obvious legal point to Ada, however, is not the law. Ada may have a claim for attorneys fees if he prevails on his lawsuit, but such a claim is not for damages. Attorneys fees are not damages. 20 G.C.A. § 2225, formerly Guam Civil Code § 3333, provides that:

> For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by Titles 13, 14, 18, 19 20 and 21 of this Code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not.

In *Fleming v. Quigley*, 2003 Guam 4, 2003 WL 554665 (Guam Feb. 28, 2003), the Guam Supreme Court found that under Section 2225 attorney's fees are not recoverable as damages proximately caused by a defendant's tortious acts. The Court stated that 20 G.C.A. 2225 "mirrors

---

[2] The Citibank discount program went into effect April 24, 2000, the Lucky 7 loyalty promotional program went into effect in March, 2002, and the Shell Serve promotional program went into effect in January 15, 2004. Stalker Supp. Decl. ¶ 12.

California Civil Code § 3333," 2003 Guam 4, ¶ 23, 2003 WL 554665, at *7, and that "[w]e find persuasive the cases in which California courts have held that attorneys' fees cannot be awarded as an element of damages under their identical statute." *Ibid.* After reviewing California precedent and the American Rule regarding attorneys' fees, *see* 2003 Guam 4, ¶¶ 24-26, 2003 WL 554665, at **7-8, the Court held that "we interpret 20 G.C.A. § 2225 consistently with the American Rule, and hold that the statute does not authorize the award of attorney's fees to Fleming as compensatory damages." 2003 Guam 4, ¶ 26, 2003 WL 554665, at *8.

Ada next asserts that punitive or exemplary damages can suffice as damages for the requirement that the plaintiff sustain actual damages. Again he is mistaken. Title 20 G.C.A. § 2120, formerly Guam Civil Code § 3294, provides that:

> In an action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, express or implied, the plaintiff, <u>in addition to the actual damages</u>, may recover damages for the sake of example and by way of punishing the defendant. [Emphasis added]

In interpreting the language in this section to the effect that punitive damages may be assessed against "a defendant" only if the defendant is guilty of oppression, fraud or malice, the Guam Supreme Court in *Park v. Mobil Oil Guam, Inc.*, 2004 Guam 20, 2004 WL 2595897 (Guam Feb. 16, 2004), stated that "[t]his language is identical to the pre-1980 version of California Civil Code section 3294 and therefore, cases construing the prior version of section 3294 lend guidance to our consideration of whether punitive damages may be assessed against Mobil under the facts of this case." 2004 Guam 20, ¶ 22, 2004 WL 2595897, at *5. Similarly, 20 G.C.A. § 2120 is identical, in whole to Section 3294(a) as it is currently written and Section 3294 as it existed before subdivision designations were inserted and new subdivisions added. *See* Cal. Civ. Code Ann., § 3294, Historical and Statutory Notes (West, WESTLAW through Ch. 234 of 2005 Reg.Sess. urgency legislation & Governor's Reorganization Plans No. 1 & 2 of 2005).

California courts have long held that under Civil Code § 3294 that "exemplary damages are not recoverable in any case, unless plaintiff establishes his right to compensatory damages." *Chavez v. Times-Mirror Co.*, 237 P. 1085, 1086-87 (Cal. Ct. App. 1925). This is based on the language of

the statute which provides, like the Guam statute, that "in addition to actual damages" a plaintiff may recover punitive damages where the defendant has been guilty of oppression, fraud or malice. *See Pickwick Stages, Northern Division v. Board of Trustees of City of El Paso De Robles,* 215 P. 558, 558 (Cal. Ct. App. 1921); *see also Sasser v. Miles & Sons Trucking Service,* 259 P.2d 488, 490 (Cal. Ct. App. 1953).

> As stated in *Mother Cobb's Chicken Turnovers v. Fox,* 73 P.2d 1185,1186 (Cal.1937):
>
>> The rule is stated in *Gilham v. Devereaux,* 67 Mont. 75, 214 P. 606, 33 A.L.R. 381, with annotation at page 384, as follows: 'The foundation for the recovery of punitive or exemplary damages rests upon the fact that substantial damages have been sustained by the plaintiff. Punitive damages are not given as a matter of right, nor can they be made the basis of recovery independent of a showing which would entitle the plaintiff to an award of actual damages. Actual damages must be found as a predicate for exemplary damages.

*See also Kizer v. County of San Mateo,* 806 P.2d 1353, 1357-1358, 279 Cal.Rptr. 318,322- 23 (Cal. 1991) ("In California, as at common law, actual damages are an absolute predicate for an award of exemplary or punitive damages.") (citations omitted). Ada is not entitled to punitive damages because he has suffered no actual damages as shown above. Because Ada cannot prove actual damages, he will not be entitled to punitive damages. *See id.*

**4. The Deceptive Trade Practices-Consumer Protection Act does not apply.** Ada attacks Shell's argument that Ada is not a consumer due to his consignee status as "convoluted." Ada's Opposition, at p. 22. The Deceptive Trade Practices-Consumer Protection Act ("DTPA") only protects consumers. *See* Title 5 GCA §32108. Establishing a consumer status is an element of a DTPA claim. *See MacDonald v. Texaco, Inc.,* 713 S.W.2d 203, 205 (Tex. Ct. App. 1986) (interpreting a similar Texas statute). Ada sells fuel on consignment as an agent of Shell. He thus is not a consumer, which is defined as an "individual...who seeks or acquires by purchase or lease, any goods or services..."5 GCA §32103(c); *see also* 5 GCA §32103(a) (similarly defining a "Business Consumer" as "an individual...who seeks or acquires by purchase or lease, any goods or services for commercial or business use..."). There is nothing convoluted about this argument. The argument was stated explicitly by the court in *Mannan v. G.S.W. Petroleum,* 594 S.W. 2d 222 (Tex. 1980), in interpreting the applicability of their similar Deceptive Trade Practices Act. *See Mannan,*

-9-

594 S.W. 2d at 223 (holding that the provisions of the Deceptive Practices - Consumer Protection Act did not apply since the gas was sold on consignment and the Defendant was at all times the owner of the gasoline, and that the Plaintiffs were therefore neither purchasers of gasoline nor consumers, but were mere sales agents).

Ada further argues that he is a consumer with regard to the non-fuel items. This allegation does not, however, entitle him to protection under the DTPA. Ada's DTPA claim is premised entirely on Shell's alleged actions in representing that the PMPA applies to the parties agreement (an allegation which Shell denies). The PMPA "applies only to the sale of motor fuel under a trademark." *Pride v. Exxon Corp.*, 911 F.2d 251, 254 (9th Cir. 1990) (sale of unbranded gasoline); *see also Gelb v. Amoco Oil Co.*, 29 F.3d 1050, 1057 (6th Cir. 1994) (because PMPA only regulates the termination of "motor fuel marketing" franchises, the termination of a non-gas franchise does not implicate the PMPA preemption clause). Thus, Ada's status as a consumer of non-fuel products has no relation to his DTPA claim which is premised on the PMPA. A person cannot claim they are a consumer because they happen to purchase items and then claim a violation of the DTPA with regard to practices that have nothing to do with that consumer status.

Ada is simply not a consumer of motor fuels under the DTPA, and Ada's DTPA claim, implicating the PMPA, cannot be premised on his alleged status as a consumer of goods that are not covered under the PMPA.

### III. CONCLUSION

For the foregoing reasons, Shell respectfully requests that the court grant its Motion for Summary Judgment as to all claims in the Second Amended Complaint.

Respectfully submitted this 22nd day of September, 2005.

CIVILLE & TANG, PLLC

By: _____

**G. PATRICK CIVILLE**
*Attorneys for Shell Guam, Inc.*