LAW OFFICES OF BRONZE & TANG, P.C.
BankPacific Building, Suite 201
825 South Marine Drive
Tamuning, Guam 96913
Telephone No.: (671) 646-2001
Facsimile No.: (671) 647-7671

RICHARD A. PIPES, ESQ.
LAW OFFICES OF RICHARD A. PIPES
Orlean Pacific Plaza, Suite 201
865 South Marine Corps Drive
Tamuning, Guam 96913
Telephone No.: (671) 646-1222
Facsimile No.: (671) 646-2203

Attorneys for Plaintiff

**FILED**
DISTRICT COURT OF GUAM

OCT - 7 2005 𝒫

**MARY L.M. MORAN
CLERK OF COURT**

## IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| ANTHONY J. ADA,           ) | CIVIL CASE NO. CV00-00012 |
|                   ) | |
|        Plaintiff,    ) | |
|                   ) | |
|    v.            ) | |
|                   ) | |
| SHELL GUAM, INC., et al.,    ) | |
|                   ) | |
|        Defendants.    ) | **TRIAL BRIEF OF** |
| ——————————————————) | **ANTHONY J. ADA** |
|                   ) | |
| SHELL GUAM, INC.,      ) | |
|                   ) | |
|        Counterclaim    ) | |
|        Plaintiff,    ) | |
|                   ) | |
|    v.            ) | |
|                   ) | |
| ANTHONY J. ADA,       ) | |
|                   ) | |
|        Counterclaim    ) | |
|        Defendant.    ) | |
| ——————————————————) | |

**ORIGINAL**

# TABLE OF CONTENTS

**Pages:**

TABLE OF AUTHORITIES ........................................................................ ii, iii

I.     FACTUAL CONTENTIONS ........................................................... 1-10

II.    LEGAL BRIEF ............................................................................ 10-18

      A.  Issues Of Law. ..................................................................... 10-16

      B.  Evidentiary Problems. .......................................................... 16-17

      C.  Attorneys' Fees. ................................................................... 18

      D.  Abandonment Of Issues. ...................................................... 18

# TABLE OF AUTHORITIES

**CASES:** **Pages:**

*Farm Stores, Inc. v. Texaco, Inc., 763 F. 2d 1335(11ᵗʰ Cir. 1985)* ...................................................... 11

*Fox v. Pollack, 226 Cal. Rptr. 532(Ct. App. 1986)* ........................................................................... 13

*Lim v. The TV Corp. Int'l., 121 Cal. Rptr. 2d 333(Ct. App. 2002)* .......................................... 12-13

*Mobil Oil Guam, Inc. v. Young Ha Lee, 2004 Guam 9* ...................................................................... 16

*Seamen's Direct Buying Service v. Standard Oil, 686 P. 2d 1158 (Cal. 1984) (en banc)* ..................... 14

*Transpacific Export, Co. v. Oka Towers, Corp., 2000 Guam 3, ¶ 23* .................................................. 12


**STATUTES AND RULES:** **Pages:**

*15 U.S.C. §§2801* ...................................................................................................................................... 2

*15 U.S.C. §2801(1)(B)* ............................................................................................................................ 11

*15 U.S.C. §2801(2)* ................................................................................................................................. 11

*15 U.S.C. §2801(4)* ................................................................................................................................. 11

*15 U.S.C. §2801(7)* ................................................................................................................................. 11

*15 U.S.C. §2802* ....................................................................................................................................... 5

*15 U.S.C. §2804* ....................................................................................................................................... 5

*15 U.S.C. §2804(a)* ........................................................................................................................... 11, 16

*15 U.S.C. §2804(c)* ................................................................................................................................. 12

*15 U.S.C. §2804(d)* ................................................................................................................................. 12

*15 U.S.C. §2805(d)* ............................................................................................................................. 6, 12

*15 U.S.C. §2805(d)(1)(C)* ................................................................................................................ 18

*15 U.S.C. §2805(f)* ..................................................................................................................... 4, 12

*5 G.C.A. §32102(a)* ....................................................................................................................... 15

*5 G.C.A. §32102(d)* ...................................................................................................................... 15

*5 G.C.A. §32108(a)* ....................................................................................................................... 14

*5 G.C.A. §32109* ............................................................................................................................. 9

*5 G.C.A. §32110(a)* ....................................................................................................................... 14

*5 G.C.A. §32121* ........................................................................................................................... 15

*5 G.C.A. §32201* ........................................................................................................................... 15

*5 G.C.A. §32201(12)* ..................................................................................................................... 15

*5 G.C.A. §§32101* ............................................................................................................................ 9

*6 G.C.A. §5106(3)* ......................................................................................................................... 16

*Federal Rules of Evidence, Rule 401* ............................................................................................. 17

*Federal Rules of Evidence, Rule 403* ............................................................................................. 17

## OTHER AUTHORITIES:                                                          Pages:

*Restatement, Second-Contracts §205* ............................................................................................. 14

*Witkin, Summary of Cal. Law (9ᵗʰ ed.) Contracts §742(b)* ............................................................ 13

## I.

## FACTUAL CONTENTIONS

Plaintiff Anthony J. Ada ("Ada") is a resident of Guam. Defendant Shell Guam, Inc. ("Shell") is a Guam corporation, with its principal place of business in Guam. Shell is a seller and distributor of petroleum products in Guam and other Micronesian islands. Virtually all of the shares of Shell are owned by holding companies of the Royal Dutch Shell Company.

On or about February 23, 1993, and March 1, 1994, Shell and Ada entered into written petroleum franchise agreements, titled Agency Sales Agreements (the "Mangilao Agreements"), pursuant to which Ada was authorized to use in connection with the sale of motor fuels and lubricants, a trademark that is owned and controlled by Shell and to operate the Mangilao Shell service station.

On or about February 1, 1995, and February 1, 1996, Shell and Ada entered into written petroleum franchise agreements, titled Agency Sales Agreements (the "Barrigada Agreements"), pursuant to which Ada was authorized to use in connection with the sale of motor fuels and lubricants, a trademark that is owned and controlled by Shell and to operate the Shell Barrigada service station.

The Mangilao and Barrigada Agreements are collectively referred to herein as the "Agreements". Each of the Agreements, with only a slight variation, contains an opening

1

paragraph, in bold and capital letters, which states that Ada is being granted a franchise under the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. §§2801, et seq. The term of the Mangilao Agreements ran through 1999 and the term of the Barrigada Agreements ran through 2001. The language in each of the Agreements which grants a PMPA franchise to Ada is substantially the same as that used by Shell in its Dealer Lease and Franchise Agreements for dealers under the PMPA. The Agreements were prepared by Shell's attorney, Steven A. Zamsky. Shell understood that its operations through dealers were regulated and defined by the PMPA.

The Agreements were prepared by Shell counsel and forwarded to Shell management for review. Ada did not have any input in the preparation of the Agreements and Shell understood that Ada was relying upon Shell to prepare the Agreements. Shell is affiliated with the Royal Dutch Shell Company, a large, multi-national corporation that has significant experience in the fuel and petroleum industry. Ada reasonably relied upon Shell to prepare agreements that were appropriate for their relationship and Ada expected that Shell would have specialized knowledge with respect to the petroleum fuel industry. Ada relied upon Shell's knowledge in the fuel industry in preparing the Agreements. Shell never intended to allow Ada to draft any of the Agreements. When each of the Agreements was signed, Shell understood that the terms and conditions in the Agreements would influence Ada's decision about whether or not to sign the Agreements.

2

Shell never told Ada before he signed any of the Agreements that Shell did not intend the PMPA franchise language not to be effective. At the time the Agreements were presented to Ada, Shell understood that the PMPA provided protections to dealers. Shell understood that when the Agreements were presented to Ada the terms were important in deciding whether or not to sign the Agreements. At the time Ada signed the Agreements, Ada had no reason to know that the PMPA language in each of the Agreements was not, according to Shell, applicable to him.

Pursuant to the Agreements, and a preliminary injunction earlier entered by the court in this case, Ada has operated the Shell Barrigada and Mangilao service stations located in Guam continuously from February 1, 1993, to the present date.

On or about March 18, 1999, Shell and Ada signed a document titled Amendment of Agency ("Agency Amendment"), which purported to amend certain provisions of the Agreements. According to its terms, the Agency Amendment purported to amend the term of the Mangilao Agreement to expire on February 29, 2000, instead of February 28, 1999. Further, the Agency Amendment purported to amend the Barrigada Agreement to provide that its term would expire on February 29, 2000, instead of January 31, 2001. The Agency Amendment also wrongfully and illegally attempted to delete Section 15 from the Mangilao Agreement titled "termination and non-renewal" which contained the rights and obligations

3

of the parties with respect to termination and non-renewal and certain rights guaranteed by the PMPA.

However, the Agency Amendment itself violates the PMPA. The PMPA prohibits any franchisor, from requiring, as a condition of entering into or renewing the franchise relationship, the franchisee to release or waive any right that the franchisee has under the PMPA. *15 U.S.C. §2805(f)*. Prior to the signing of the Agency Amendment, Shell representatives told Ada that Shell was not going to renew his franchise at the Mangilao station, even though it had no cause to terminate as required under the PMPA. Being unaware of his rights under the PMPA, Ada felt that he had no other choice than to sign the Agency Amendment, which Shell presented as a "take it or leave it" proposition. Shell made it clear to Ada that if he did not sign the Agency Amendment prepared by Shell, the Mangilao franchise would be terminated immediately and would not be extended. Ada was unaware, at the time he signed the Agency Amendment, that the PMPA prohibited Shell from conditioning the renewal or extension of the Mangilao station franchise upon a waiver of his rights under the PMPA.

By letter dated December 10, 1999, Shell attempted to notify Ada that the alleged "agency" relationship for the operation of the petroleum franchises at the Mangilao Shell and Barrigada Shell service stations would be terminated and not renewed as of February 28, 2000. The December 10, 1999, letter from Shell does not comply with the requirements of

4

the PMPA for termination. Shell's attempted termination of Ada's franchises was not in accordance with the PMPA because Shell did not, as required by 15 U.S.C. §§2802, 2804, provide Ada with a required written notice of the termination or non-renewal and that no grounds for such termination or non-renewal were contained in the purported notice of non-renewal.

Shell's unlawful termination of Ada's franchises, as described above, was willful in that Shell intentionally and knowingly failed and refused to notify Ada of the grounds for such alleged termination or non-renewal of the petroleum franchises for the Mangilao and Barrigada stations, all clearly in violation of the PMPA. Further, Shell either knew or reasonably should have known that its actions were clearly in violation of the PMPA. These actions and conduct demonstrate a willful disregard of the requirements of 15 U.S.C. §2804.

Ada filed suit against Shell and obtained a Preliminary Injunction against Shell enjoining it from terminating the Agreements with Ada. The Decision and Order issued by the Court granting the injunction concluded that the Agreements between Ada and Shell "clearly define the franchisor to franchisee relationship as being within the protections of the PMPA". *Decision and Order, filed May 4, 2000.* The Decision and Order further states that "(b)ecause the parties agreed to bring the relationship within the PMPA, the Court finds that the PMPA requirements applies (sic) to the Agreement".

5

As a direct and proximate result of Shell's unlawful attempts to terminate Ada's PMPA franchises, Ada has sustained actual and compensatory damages in amounts to be proven at trial in excess of $700,000.00. Ada has incurred, and will incur, reasonable attorneys fees, experts fees, and costs in this action, which are recoverable under the terms of the PMPA. *15 U.S.C. §2805(d)*. Ada has suffered and will continue to suffer irreparable harm and injury unless the above-described acts of Shell are enjoined and Ada will seek to have this Court make the existing injunction permanent.

Ada is also seeking damages, attorneys fees, and costs from Shell on the grounds of fraudulent inducement. In addition to the matters stated above, Shell made admittedly false representations, or failed to disclose material facts, to Ada relating to Shell's belief that Ada had no rights under the PMPA, even though the Agreements authored by Shell specifically indicate that Ada is entitled to such rights, information which had it been disclosed would have resulted in Ada not entering into the Agreements with Shell. Shell, through its authorized representatives, represented to Ada that he would be granted dealer franchises to operate the Shell Mangilao and Barrigada service stations, like other existing dealers in Guam at the time, even though such representations were known by the Shell representatives, or reasonably should have been known, to be false at the time they were made and were made with the intent of inducing Ada into entering into the Agreements. Such statements were fraudulent because, at the time such statements were made, Shell neither intended nor

6

considered Ada to be a dealer under the PMPA so as to avoid the attendant duties and

obligations Shell would have to Ada under the PMPA. Shell's representations were known

by it to be false when made, or were made recklessly without the knowledge of the truth, and

were made as positive assertions. As a result of Shell's fraudulent statements and omissions,

Ada has been damaged and is entitled to damages proximately resulting therefrom, including

costs and attorneys fees. Additionally, Ada is entitled to exemplary or punitive damages in

amounts to be proven at trial because of the oppressive, intentional, and malicious conduct

of Shell.

Ada is also seeking damages from Shell based upon intentional misrepresentation. In

addition to the evidence described above, Ada will prove that when Shell made the

representations to Ada concerning the applicability of the PMPA and Ada's rights

thereunder, Shell knew the falsity of such representations and made the representations with

the intent to induce Ada to enter into the Agreements. At the time Ada entered into

Agreements, Ada was ignorant of the falsity of the representations made by Shell and,

believing them to be true, relied on such representations in deciding to enter into the

Agreements. Had Ada known that such representations were untrue, he would not have

entered into the Agreements with Shell. As a result of the intentional misrepresentations of

Shell, Ada has been damaged in amounts that will be proven at trial. In addition, Ada is

entitled to exemplary or punitive damages in amounts to be proven at trial because of the

7

oppressive, intentional, and malicious misrepresentations of Shell. Additionally, Ada is entitled to his reasonable attorneys fees, expert fees, and costs.

Ada is also seeking damages from Shell on the grounds of negligent misrepresentation. In addition to the evidence described above, Ada will prove that when Shell made the representations concerning the applicability of the PMPA and Ada's rights under the PMPA, Shell had no reasonable ground for believing that the representations were true and made the representations with the intent induce Ada to enter into the Agreements. As a result of the negligent misrepresentations of Shell, Ada has been damaged in amounts that will be proven at trial. Additionally, Ada is entitled to exemplary or punitive damages in amounts to be proven at trial because of the oppressive, intentional, negligent, and maliciousness representation of Shell. Additionally, Ada is entitled to his reasonable attorneys fees, expert fees, and costs.

Ada also seeks damages from Shell on grounds of breach of duty of good faith and fair dealing. In addition to the matters that will be proved above, Ada will show that an imbalance of bargaining power in Shell's favor is conferred upon Shell by the terms of the Agreements. Shell owes Ada the common-law duty of good faith and fair dealing. As shown above, Shell has breached its duty of good faith and fair dealing to Ada. Ada has been damaged by Shell's actions and is entitled to actual and compensatory damages resulting from the breach in amounts to be proven at trial. Likewise, Ada is entitled to

8

attorneys fees, expert fees, and costs. Additionally, because Shell's actions were done intentionally, with conscious indifference to the rights of Ada, and maliciously, Ada is entitled to exemplary or punitive damages in amounts to be proved at trial.

Ada seeks damages from Shell for violation of Guam's Deceptive Trade Practices - Consumer Protection Act ("DTPCPA"), 5 G.C.A. §§32101, et seq. Shell's intentional acts and practices as described above are deceptive trade practices and acts that violate the DTPCPA, thereby causing harm to Ada. Shell's acts alleged above were committed knowingly and as a regular business practice of Shell. Ada is entitled to actual damages for such harm in amounts to be proven at trial. Likewise, Ada is entitled to attorneys fees pursuant to 5 G.C.A. §32109. Additionally, because such acts were intentional and malicious, Ada is entitled to exemplary or punitive damages in amounts to be proven at trial.

Shell should be estopped to deny that Ada has no rights under the PMPA. As shown above, Shell represented to Ada that he was being granted a PMPA franchise and Ada believed and relied upon such representations. As a result thereof, Shell ought to be and is now estopped from denying that Ada is a franchise dealer under the PMPA and from asserting that Ada has no rights under the PMPA.

Ada has performed all conditions, covenants, and promises required by him on his part to be performed in accordance with the terms of the Agreements. On or about 1995 to the present date, Shell breached the Agreements by unilaterally amending and/or

9

disregarding the terms of the Agreements, which require Shell to pay Ada a commission on each gallon of gasoline sold at his stations, and instead imposing on Ada a monthly expense reimbursement. Additionally, Ada was entitled to a commission amount that bore a relationship to the amount that was being charged for fuel as the price has risen throughout the years. Additionally, on or about 2000 to the present date, Shell breached the Agreements by requiring Ada to participate in promotional programs and marketing discounts, including those associated with the use of Citibank Visa cards at Shell stations, the Shell Serve program, and the Lucky 7 program, and refusing to pay Ada for implementing such programs or to reimburse Ada for costs incurred by Ada for participating in such programs. Ada has suffered the damages by reason of Shell's conduct in amounts to be proven at trial in excess of $700,000.00. Ada is entitled to recover his attorneys fees, expert fees, and all costs incurred in the enforcement of the Agreements.

## II.

## **LEGAL BRIEF**

### A. Issues Of Law.

Under the PMPA claims, a "franchise" includes any contract under which a retailer is authorized or permitted to occupy leased marketing premises, which premises are employed in connection with the sale of motor fuel under a trademark which is owned or controlled by a refiner or any contract pertaining to the supply of motor fuel which is to be sold, consigned

10

or distributed under a trademark owned or controlled by a refiner. *15 U.S.C. §2801(1)(B).* The term "franchise relationship" means the respective motor fuel marketing or distribution obligations and responsibilities of a franchisor and a franchisee which result from the marketing of motor fuel under a franchise. *15 U.S.C. §2801(2).* The term "franchisee" means a retailer or distributor who is authorized or permitted, under a franchise, to use a trademark in connection with the sale, consignment, or distribution of motor fuel. *15 U.S.C. §2801(4).* The term "retailer" means any person who purchases motor fuel for sale to the general public for ultimate consumption. *15 U.S.C. §2801(7).* The determination of whether a person is a "retailer" is largely a question of fact dependent upon the circumstances and whether that person bears some risk with respect to the sale of motor fuel, operates as an independent businessman, bears risk with other operations, hires and fires his own employees, and is required to maintain insurance for the benefit of those involved. *See, Farm Stores, Inc. v. Texaco, Inc., 763 F. 2d 1335, 1340-1345 (11th Cir. 1985).*

Ada will prove that Shell did not comply with the requirements for notification of termination and non-renewal under the PMPA. The PMPA requires that prior to termination of any franchise or non-renewal of any franchise relationship, the franchisor is required to notify the franchisee not less than ninety days prior to the date on which the termination or non-renewal takes effect. *15 U.S.C. §2804(a).* The PMPA requires that a notification be in writing, posted by certified mail or personally delivered to the franchisee,

and contain a statement of intention to terminate the franchise or not to renew the franchise relationship, together with the reasons therefore, the date on which such termination or non-renewal takes effect, and the summary statement prepared by the Secretary of Energy under the provisions of 15 U.S.C. §2804(d). *15 U.S.C. §2804(c).* In this case, Shell admits that the December 10, 1999, letter that it gave to Ada does not comply with the notice of termination provisions of the PMPA.

If a franchisor fails to comply with the requirements of the PMPA, a franchisee may maintain a civil action against such franchisor for actual damages, exemplary damages, reasonable attorney and expert witness fees, and costs. *15 U.S.C. §2805(d).* The question of whether to award exemplary damages and the amount of any such award shall be determined by the Court and not by a jury. *Id.*

No franchisor shall require, as a condition of entering into or renewing a franchise relationship, a franchisee to release or waive any right that the franchisee has under the PMPA or any right that the franchisee may have under any valid and applicable state or territorial law. *15 U.S.C. §2805(f).*

The elements of fraud are: (1) a misrepresentation; (2) knowledge of falsity; (3) intent to defraud to reduce reliance; (4) justifiable reliance; and (5) damages. *Transpacific Export, Co. v. Oka Towers, Corp., 2000 Guam 3, ¶ 23.* The tort of intentional misrepresentation has the same elements as fraud. *See, e.g., Lim v. The TV Corp. Int'l, 121 Cal. Rptr. 2d 333, 339 (Ct.*

*App. 2002).* As discussed above, Ada has ample evidence to prove all of the elements of intentional misrepresentation and fraud.

The elements of a cause of action for negligent misrepresentation are: (1) a misrepresentation of a past or existing material fact; (2) without reasonable grounds for believing it to be true; (3) with intent to induce anothers' reliance on the fact misrepresented; (4) ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed; and (5) damages. *Fox v. Pollack, 226 Cal. Rptr. 532, 537 (Ct. App. 1986).* As shown above, there is ample proof that Shell did not have reasonable grounds for believing the misrepresentations made to Ada that he was being granted a franchise under the PMPA.

The implied covenant of good faith and fair dealing provides that if the cooperation of the other party is necessary for successful performance of an obligation, a promise to give that cooperation, and not to do anything that prevents realization of the fruits of performance, will often be implied. *Witkin, Summary of Cal. Law (9th ed.) Contracts §742(b).* The implied covenant of good faith and fair dealing not only imposes upon each contracting party the duty to refrain from doing anything which would render performance of a contract impossible by any act of his own, but also the duty to do everything that the contract presupposes that he would do to accomplish its purpose. *Id.* Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.

13

*Restatement, Second-Contracts §205.* A party to a contract may incur tort remedies, when in addition to breaching the contract, such party seeks to shield itself from liability by denying, in bad faith and without probable cause, that the contract exists. *Seamen's Direct Buying Service v. Standard Oil, 686 P. 2d 1158, 1167 (Cal. 1984) (en banc).* In this case, Shell is denying that one of the major considerations for entering into the contract, and a clear and unambiguous representation by Shell of the applicability of the PMPA, is nothing more than a "mistake", such conduct being in bad faith and without probable cause, as shown by the evidence discussed above. Under such circumstances, Shell can be liable for a breach of the implied duty of good faith and fair dealing both under contract and tort law.

The DTPCPA is to be liberally construed in favor of the consumer and shall be applied to promote its underlying purposes, which are to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty, and to provide efficient and economic procedures to secure such protection. *5 G.C.A. §32108(a).* The DTPCPA requires that a consumer shall give written notice to the person at least thirty days before filing a lawsuit advising the person, "in reasonable detail", of the consumer's specific complaint and the amount of actual damages and expenses, including attorneys fees, if any, reasonably incurred by the consumer in asserting the claim against the party. *5 G.C.A. §32110(a).*

14

All actions under the DTPCPA must be commenced within three years after the date on which the false, misleading, or deceptive act or practice occurred or within three years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of false, misleading, or deceptive acts. *5 G.C.A. §32121.* Under the DTPCPA, false, misleading, or deceptive acts or practices, including, but not limited to those listed in the DTPCPA, are declared unlawful and are subject to action by any person as permitted pursuant to the DTPCPA or other provisions of Guam law. *5 G.C.A. §32201.*

The provisions of the DTPCPA are to be liberally construed in favor of the consumer. *Id.* The term "false, misleading, or deceptive acts or practices" includes, but is not limited to, "knowingly representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve". *5 G.C.A. §32201(12).* A "business consumer" is a person who acquires by purchasing any goods or services for commercial or business use. *5 G.C.A. §32102(a).* Under the DTPCPA, a "consumer" means an individual who acquires by purchase any goods or services, except that the term does not include a "business consumer" that has assets of $25 million or more. *5 G.C.A. §32102(d).* Accordingly, a "consumer" includes any "business consumer" that does not have assets of $25 million or more. Ada is a "consumer" under the DTPCPA.

In this Court's order of April 16, 2002, the Court determined that Ada has asserted a request for equitable estoppel "which is permitted under the PMPA". *See, Order, filed April 16, 2002, at 6.* The Court has determined that Ada has a cause of action for estoppel as

15

pleaded in the Second Amended Complaint. Under the doctrine of equitable estoppel the elements are: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct will be acted upon, or act in such a manner that the party asserting the estoppel could reasonably believe that he intended his conduct to be acted upon; (3) the party asserting the estoppel must be ignorant of the true state of the facts; and (4) he must rely upon the conduct to his injury. *Mobil Oil Guam, Inc. v. Young Ha Lee, 2004 Guam 9, ¶ 24.* Whenever a party has, by his own declaration, act or omission, intentionally and deliberately led another to believe a particular thing true, and to act upon such belief, he cannot, in any litigation arising out of such declaration, act or omission be permitted to falsify it. *6 G.C.A. §5106(3).* Shell is estopped to deny that Ada is a franchise dealer under the PMPA.

## B. Evidentiary Problems.

Shell has argued to this Court and has attempted to present alleged evidence that Ada has certain problems related to his tax and self-employment returns. *See, Motion to Modify Preliminary Injunction; Memorandum of Points and Authorities in Support Thereof, filed August 19, 2005 (under seal), at 4-10.* Shell will be issuing a new notice of termination to Ada, pursuant to the PMPA, based upon such allegations. Because of the termination notice requirements under the PMPA, the new notice will not be effective until after the trial in this case has taken place. *See, 15 U.S.C. § 2804(a)(2)* (90 days' written notice required). It is possible that Shell will attempt to present evidence at trial related to Ada's alleged tax problems.

16

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *Federal Rules of Evidence ("FRE"), Rule 401.* Relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case. *Id., Notes.* It is submitted that Ada's alleged tax problems have absolutely no tendency to make the existence of any fact of consequence to the claims in this case more or less probable. Evidence of Ada's alleged tax problems are irrelevant and all such evidence should be excluded.

Further, even assuming that such evidence may have some limited relevance, which Ada denies, the prejudicial effect of such evidence far outweighs any limited probative value. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *FRE, Rule 403.* "Unfair prejudice" means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one. *Id., Notes.* The test under Rule 403 calls for balancing the probative value of and need for the evidence against the harm likely to result from its admission. *Id.* It is further submitted that any limited probative value of Ada's alleged tax problems is far outweighed by the unfair prejudice to, confusion, and misleading of the jury that will occur if Shell is allowed to introduce such evidence at trial.

17

### C. Attorneys' Fees.

Ada is entitled to attorneys fees and expert fees and costs on all claims under the

PMPA. *15 U.S.C. §2805(d)(1)(C).* Additionally, each of the Agreements between Ada and

Shell contains a provision regarding the award of attorneys fees to the prevailing party, as

follows:

> "If any legal action, suit or other proceeding is brought for the
> enforcement of this Agreement, or because of any alleged dispute, breach or
> default in connection with any of the provisions of this Agreement, the
> successful or prevailing party shall be entitled to recover reasonable attorney's
> fees and Court costs incurred in the action, suit or proceeding, in addition to
> any other remedy or relief to which it may be entitled."

*See, Declaration of Philip Stalker in Support of Shell's Motion for Summary Judgment, filed September 1,*

*2005, Exhibit 1d at 12.*

All of Ada's claims asserted in the Second Amended Complaint are brought for

enforcement of the Agreements, or because of disputes, breaches or defaults in connection

with such Agreements and, therefore, Ada is entitled to his attorneys fees and Court costs

incurred in bringing this action.

### D. Abandonment Of Issues.

Ada has not abandoned any issues stated in his pleadings.

//

//

//

18

Dated this 7th day of October, 2005

LAW OFFICES OF RICHARD A. PIPES
Attorneys for Plaintiff

By: _____
RICHARD A. PIPES

RAP/fdm

19